Filed in District Co...
State of Minneso...
8/19/2020 11:21 A...

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**
Case Type: Other Contracts

---

Life Time, Inc., LTF Club Operations
Company, Inc., LTF Operations Holdings,
Inc., LTF Club Management Company, LLC
and Bloomingdale LIFE TIME Fitness, LLC,

     Plaintiffs,

  v.

Zurich American Insurance Company,

     Defendant.

Court File No.: _____


**SUMMONS**

---

THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT:

    1.    **YOU ARE BEING SUED**. The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    2.    **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Rikke Dierssen-Morice
        Maslon LLP
        3300 Wells Fargo Center
        90 South Seventh Street
        Minneapolis, MN 55402.

    3.    **YOU MUST RESPOND TO EACH CLAIM**. The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

    4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of

the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.   **LEGAL ASSISTANCE.**  You may wish to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance.  **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.   **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an Alternative Dispute Resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

                                                    **MASLON LLP**

Dated:  August 19, 2020                    By:

                                                    Rikke Dierssen-Morice (#0237826)
                                                    Margo S. Brownell (#0307324)
                                                    Bryan R. Freeman (#0387154)
                                                    Peter K. Doely (#0395341)
                                                    Judah A. Druck (# 0397764)

                                                    3300 Wells Fargo Center
                                                    90 South Seventh Street
                                                    Minneapolis, MN  55402-4140
                                                    Telephone:  (612) 672-8200
                                                    Facsimile:  (612) 672-8397
                                                    Email:   rikke.morice@maslon.com
                                                                margo.brownell@maslon.com
                                                                bryan.freeman@maslon.com
                                                                peter.doely@maslon.com
                                                                judah.druck@maslon.com

                                                    **ATTORNEYS FOR PLAINTIFFS LIFE TIME, INC., LTF CLUB OPERATIONS COMPANY, INC., LTF OPERATIONS HOLDINGS, INC., LTF CLUB MANAGEMENT COMPANY, LLC, BLOOMINGDALE LIFE TIME FITNESS, LLC**

Filed in District Co...
State of Minneso...
8/19/2020 11:21 A

**STATE OF MINNESOTA**

**COUNTY OF HENNEPIN**

**DISTRICT COURT**

**FOURTH JUDICIAL DISTRICT**
Case Type: Other Contracts

---

| | |
|---|---|
| Life Time, Inc., LTF Club Operations Company, Inc., LTF Operations Holdings, Inc., LTF Club Management Company, LLC, and Bloomingdale LIFE TIME Fitness, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Zurich American Insurance Company, <br><br> Defendant. | Court File No. _____ <br><br><br> **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

## COMPLAINT

For their Complaint against Zurich American Insurance Company ("Zurich"), Life Time, Inc., LTF Club Operations Company, Inc., LTF Operations Holdings, Inc., LTF Club Management Company, LLC, and Bloomingdale LIFE TIME Fitness, LLC (collectively "Life Time" and "Plaintiff-Insureds") state and allege as follows:

## NATURE OF THE ACTION

1.      The governmental suspension orders issued around the country in response to COVID-19 have visited financial ruin on businesses nationwide. Consumer-facing businesses like health and fitness centers, restaurants, hotels and retail have been hit especially hard, suffering billions of dollars in business interruption loss due to the suspension of business.

2.      Life Time is one of those businesses, having suffered more than $200 million in interruption losses and damage as a result of the varied, state-by-state and local governmental suspensions necessarily put in place due to the spread and threat of COVID-19, a communicable disease. These varied governmental suspension orders have prohibited access to all or portions of

Filed in District Co
State of Minnes
8/19/2020 11:21 /

Life Time's nearly 150 health and fitness centers throughout the United States ("centers" or "clubs"), as well as its related fitness, work, and other facilities, such as Life Time Swim School and Life Time Work (collectively, "Insured Locations"), leading to huge losses, expenses, and damages.

3.      While a battle has begun in the nation's courts between insurance companies and policyholders over insurance coverage for losses caused by COVID-19, even leading insurance executives to take to national media outlets to try to persuade the public that standardized virus exclusions in some policies categorically bar coverage for COVID-19 related losses, this case is different.

4.      For the December 15, 2019 to December 15, 2020 policy period, Life Time purchased $350,000,000 in limits under Zurich's "EDGE Global" Policy,   Policy No. *********9091 ("the 2020 Zurich Policy"), which is an insurance product Zurich holds out as providing policyholders with "higher limits, broader coverage and greater flexibility."[1] **The 2020 Zurich Policy that Life Time purchased specifically includes special coverage limits for "Interruption By Communicable Disease."** (Exhibit A.)

5.      But when governmental suspension orders began to be issued in states and locales around the country, Zurich denied coverage for the full amount of Life Time's mounting losses, offering just $1,000,000 in coverage to Life Time, a measly quarter of one percent (.28 percent) of the 2020 Zurich Policy's overall limit. According to Zurich, even though the 2020 Zurich Policy was issued to cover all of Life Time's clubs and locations—more than 150 in all—$1,000,000 is the maximum amount of insurance coverage available.

---

[1] *See* Zurich Press Release Announcing Product Release (April 22, 2008) (available at: www.zurichservices.com/zus/zna_config.nsf/pages/9123da88864cd81485257433006ed710!Ope nDocument&Click=) (last accessed on August 18, 2020).

Filed in District Co...
State of Minnes...
8/19/2020 11:21 /...

a 33⅓% ownership interest in Bloomingdale LT, while BSC Land and CD Health each have a 33⅓% ownership interest in Bloomingdale LT.[2]

11.    Upon information and belief, Zurich is an insurance company organized under New York law with its principal place of business in Schaumburg, Illinois.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over the matter alleged herein.

13.    The 2020 Zurich Policy states: "Any disputes arising hereunder will be exclusively subject to the jurisdiction of a court of competent jurisdiction within the USA."

14.    Jurisdiction and venue are proper in Hennepin County, Minnesota under Minnesota Statutes §§ 484.01, 542.01, 542.09 and 543.19, including because the Plaintiff-Insureds' claims or some part thereof arose in Hennepin County, Minnesota. With 13 Life Time centers and additional related facilities located in Hennepin County, there is no other county in the United States with more insured Life Time locations suffering COVID-19 interruption losses than Hennepin County.

15.    Upon information and belief, Zurich regularly conducts its insurance business in Hennepin County, including having issued an insurance policy to Life Time in Minnesota covering Plaintiffs-Insureds' properties in Hennepin County.

---

[2] Life Time has also suffered construction project losses in connection with COVID-19, including delay losses sustained by insured LTF Construction Company, LLC. Claims for insurance coverage for these losses have been made to Zurich under a separate Builder's Risk policy purchased from Zurich for the 2019-2020 policy period as well as the 2020 Zurich Policy. On August 7, Zurich issued a coverage position on the Builder's Risk coverage, which Life Time is evaluating. Accordingly, Life Time has not included the construction-related claims in this Complaint. Upon receipt of all construction-related coverage positions from Zurich, Life Time reserves the right to amend this Complaint and/or to commence a separate lawsuit as to coverage for the construction-related losses.

6.    In fact, the 2020 Zurich Policy does not say anywhere that the promised coverage for "Interruption By Communicable Disease" has an aggregate limit of $1,000,000. Rather, the 2020 Zurich Policy provides $1,000,000 of coverage per Insured Location, for the more than 150 Life Time clubs and related facilities impacted by the governmental suspension orders.

7.    In this insurance-coverage action, Life Time seeks a declaration of its rights and Zurich's responsibilities under the 2020 Zurich Policy, and an award for more than $130,000,000 in damages caused by Zurich's breaches of contract and the covenant of good faith and fair dealing in connection with its wrongful failure to cover Life Time's losses, expenses, and damages.

## THE PARTIES

8.    Life Time, Inc., LTF Club Operations Company, Inc., and LTF Operations Holdings, Inc. have their principal places of business in Chanhassen, Minnesota, and are organized under Minnesota law.

9.    LTF Club Management Company, LLC has its principal place of business in Chanhassen, Minnesota, and is organized under Delaware law. Its members are residents of the state of Minnesota.

10.    Bloomingdale LIFE TIME Fitness, LLC ("Bloomingdale LT") has its principal place of business in Bloomingdale, Illinois, and is organized under Illinois law. Bloomingdale LT is a joint venture among three members—Life Time, Inc., Bloomingdale Sports Center Land Company ("BSC Land"), an Illinois corporation; and an Illinois corporation that is an affiliate of Central Du Page Health ("CD Health") (collectively, "members")—with respect to the Life Time club in Bloomingdale, IL ("Bloomingdale Life Time"). Life Time, Inc. manages the club and has

## FACTUAL BACKGROUND

### *Zurich's Promise To Provide "Interruption By Communicable Disease" Coverage*

16.     On or about December 15, 2019, Life Time entered into a contract of insurance with Zurich, whereby Life Time agreed to make payments to Zurich in exchange for Zurich's promise to provide insurance protection to the Plaintiff-Insureds for losses, including, but not limited to, Life Time's business income losses at Insured Locations across the United States.

17.     Life Time, Inc. is the "First Named Insured" under the 2020 Zurich Policy.

18.     All of the Plaintiff-Insureds are insureds under the 2020 Zurich Policy.

19.     A schedule of Life Time's Insured Locations is attached as Exhibit B (the "Schedule"). Columns of this Schedule unrelated to this business interruption loss have been removed so that the Schedule is easier to read.

20.     The Insured Locations listed in the Schedule are covered under the 2020 Zurich Policy.

21.     Pursuant to a written management agreement, Life Time, Inc. agreed as Manager exercising its management control on behalf of Bloomingdale LT to procure property insurance for the property. The Bloomingdale Life Time is an Insured Location listed on the Schedule attached to the 2020 Zurich Policy. With the consent and approval of BSC Land and CD Health, this suit therefore seeks recovery for all interruption loss at the Bloomingdale Life Time location on behalf of the full, undivided interest of Bloomingdale LT in the Insured Location.

22.     The 2020 Zurich Policy is currently in full effect, with Life Time having faithfully paid policy premiums to Zurich to cover the Insured Locations and protect Life Time from losses to property, business personal property and business income, as well as extra expense.

Filed in District Co
State of Minneso
8/19/2020 11:21 /

23.     Zurich promised to provide coverage to Life Time for "Interruption by Communicable Disease," a special coverage under the 2020 Zurich Policy.

24.     The 2020 Zurich Policy was a renewal of the insurance policy issued by Zurich for the prior year, from December 15, 2018 to December 15, 2019 (the "2019 Zurich Policy").

25.     Both the 2020 Zurich Policy and the prior 2019 Zurich Policy, which was the first year that Zurich insured Life Time, provide that the "Policy insures an Insured Location unless otherwise provided" and both provide Life Time with an annual Policy Limit of "$350,000,000 for the total of all coverages combined regardless of the number of **Locations** involved."

26.     For interruption and loss caused by communicable disease, both the 2020 Zurich Policy and the prior 2019 Zurich Policy identify in their "Limit of Liability" sections that there is coverage of "$1,000,000 Interruption By Communicable Disease," and further indicate a "Qualifying Period" for "Interruption by Communicable Disease 48 Hours."

27.     The 2020 Zurich Policy does not state that the $1,000,000 coverage amount listed for "Interruption By Communicable Disease" is an aggregate limit.

28.     Other than the two identified references in paragraph 26 of this Complaint, neither the 2020 Zurich Policy nor the prior 2019 Zurich Policy further define or limit the "Interruption by Communicable Disease" coverage provided and promised to Life Time.

29.     Neither the 2020 Zurich Policy nor the prior 2019 Zurich Policy include reference to an "Interruption by Communicable Disease" endorsement.

30.     Zurich did not include or attach an "Interruption by Communicable Disease" endorsement to the 2020 Zurich Policy or the prior 2019 Zurich Policy that Zurich bound and issued to Life Time.

31.     Accordingly, as issued, the 2020 Zurich Policy and the Prior Zurich Policy granted the broadest possible coverage to Life Time for business interruption at Insured Locations caused by Communicable Disease, without further applicable definitions or exclusions.

32.     And, even if the endorsements Zurich now seeks to retroactively add to the 2020 Zurich Policy are considered, the endorsements as drafted by Zurich further support Life Time's entitlement to $1,000,000 per Insured Location "Interruption by Communicable Disease" coverage.

### *Life Time's Interruption By Communicable Disease*

33.     Life Time's business focus is on helping people lead healthy and happy lives. Life Time operates nearly 150 full-service health and fitness centers throughout the United States, providing a wide range of healthy living services to its members and guests. These include traditional fitness classes and training, pools, racquet sports, healthy cafes, salons and spas, kids academies, and more. Life Time also operates various facilities focused on particular activities, such as co-working spaces, or facilities focused on particular sports such as swimming or soccer.

34.     Prior to the onset of COVID-19, Life Time's national membership totaled approximately 1.68 million people. Life Time's members and guests include people of all age demographics.

35.     COVID-19 is a communicable disease that leads to sickness, injury, and death. According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is believed to spread mainly from person to person, primarily through respiratory droplets produced when an infected person coughs, sneezes, or talks, with spread being more likely when people are in close contact with one another.

Filed in District Co
State of Minnes
8/19/2020 11:21 /

36.   On March 11, 2020, COVID-19 was declared a pandemic by the World Health Organization.

37.   Thereafter, state and local government authorities began to issue quarantine and suspension orders across the country. These governmental orders have had a serious impact on Life Time's business, members, and guests, prohibiting access to and use of Life Time's Insured Locations, including its many services.

38.   The severe business interruption Life Time has suffered because of the spread of COVID-19 and the governmental orders has resulted in more than $200 million in interruption loss, expense, and damage, including physical damage to insured property. By way of non-exhaustive examples only, Life Time's losses, expenses, and damages have arisen from lost membership revenue and earnings, including membership dues credits, uncharged dues during closures, memberships cancelled or placed on hold, and fewer new memberships; lost revenue and earnings from in-club services, including sales of personal training, kids programs, spa services, and food and beverage sales at cafes; and costs and expenses that would not otherwise have been incurred, including expenses to clean and remediate the Insured Locations and to develop and implement new safety protocols for Insured Locations upon limited reopenings. These are only some examples of how the interruption has impacted Life Time.

### Zurich's Breach of Contract and Denial of Full Coverage to Life Time

39.   On March 24, 2020, Life Time submitted notice of losses to Zurich, requesting all available coverage on account of its interruption by communicable disease.

40.   Without mentioning Life Time's notice, by email of April 8, 2020, Zurich attempted to unilaterally modify the Policy by retroactively adding a "Communicable Disease Endorsement" and "Crisis Management Endorsement" to the 2020 Zurich Policy and 2019 Zurich

Filed in District Co
State of Minneso
8/19/2020 11:21 /

Policy, sending an email with the endorsements to Life Time's broker and stating that the absence of the endorsements in the bound and issued 2020 Zurich Policy and 2019 Zurich Policy "was a clerical error."

41.   Life Time's broker responded to Zurich by advising that it would not simply accept the changes and did not know whether Zurich had the legal right to make unilateral changes and modify the insurance policy terms.

42.   A week later on April 15, 2020, Zurich responded to Life Time's notice and request for coverage, sending Life Time its reservation of rights letter.

43.   Zurich's coverage letter did not even mention the communication with Life Time's broker advising of Zurich's view that mistakes were made on the 2020 Zurich Policy.

44.   Instead, Zurich asserted that the 2020 Zurich Policy "contains an Endorsement for Interruption by Communicable Disease" providing as follows:

Endorsement Number 03

The following is added to SECTION B- Special Coverages & Described Causes of Loss

INTERRUPTION BY COMMUNICABLE DISEASE

The company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at any Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.

This Policy also covers the reasonable and necessary cost incurred for the cleanup, removal and disposal of the actual not suspected presence of substances(s) [sic] causing the spread of such communicable disease and to restore the locations in a manner so as to satisfy such authorized governmental agency.

The Coverage will only apply when the period of time that access is prohibited exceeds the time shown as the **Qualifying Period in the Qualifying Period** clause

Filed in District Co
State of Minnes
8/19/2020 11:21 /

of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

This Coverage will not apply to loss or damage that is payable under any other provisions in this Policy.

(Zurich's April 15, 2020 Reservation of Rights Letter at pages 5-6.)

45.    In characterizing the scope of coverage for "Interruption By Communicable Disease" available to Life Time under the 2020 Zurich Policy, Zurich's April 15, 2020 letter advised:

> In order for coverage to apply under the Interruption by Communicable Disease provision, the insured must demonstrate, among other things, a suspension of the insured's operations caused by an order of an authorized governmental agency to enforce a law or ordinance regulating communicable disease and that the order results in a declaration that all or a portion of the location is declared uninhabitable as a result of the threat of the spread of communicable disease, such that access to the location or portions of the location is prohibited.

46.    In addition to quoting an "Endorsement No. 03" that was not referenced in or attached to the 2020 Zurich Policy, Zurich's letter did not mention the $350,000,000 total amount of the coverage under the 2020 Zurich Policy. Nor did Zurich mention the grant of "$1,000,000 Interruption By Communicable Disease" coverage for the 150-plus Insured Locations affected by the governmental orders and COVID-19 pandemic. Zurich's letter was entirely silent on the amounts of insurance potentially available to Life Time. (*Id.* at pages 1-7.)

47.    Zurich also failed to even address or explain why it believed that an Endorsement No. 03 was a part of the 2020 Zurich Policy, when no such endorsement was referenced or attached in the 2020 Zurich Policy issued to Life Time. (*Id.*)

48.    Life Time responded to Zurich's April 15, 2020 Reservation of Rights letter and addressed the absence of coverage terms for the "Interruption by Communicable Disease" coverage in the issued 2020 Zurich Policy as follows:

> The Policy's "FORMS ATTACHED TO THE POLICY" does not include reference to an "Interruption by Communicable Disease" form or endorsement and none was attached to the Policy. Although Zurich sought on April 8, 2020 by e-mail communication to Life Time's broker, Willis Tower Watson Midwest ("Willis"), to add "Interruption by Communicable Disease" and "Crisis Management" endorsements to the Policy ("Proposed Endorsements"), Life Time reserves all rights regarding whether the Proposed Endorsements can be retroactively added to the Policy, which presently has no terms limiting these coverage grants. We understand that Zurich claims that the Proposed Endorsements were "inadvertently left off" Life Time's policies for the 2018-19 policy year ([********]99-00) and the 2019-20 policy year (the Policy) as a "clerical error." However, because at this time Life Time and Willis continue to investigate this issue, as I requested in our telephone call on April 6, 2020, we would like to review all of Zurich's "Communicable Disease" and "Crisis management" coverage extensions, endorsements, or other wording issued over the last two years.

(Life Time's May 13, 2020 Letter to Zurich at page 2.)

49.    Zurich's response to Life Time's May 13, 2020 letter did not address the lack of a "Interruption by Communicable Disease" endorsement in the issued 2020 Zurich Policy, stating only:

> This claim hit my follow up diary today. So thank you for the letter and understand.

> Also, we too are still reviewing coverage. If any new updates come up on the claim please let us know.

> In the meantime, if you have any questions let me know.

(Zurich's May 13, 2020 E-mail to Life Time.)

50.    On May 29, 2020, Zurich emailed the following one-sentence statement regarding its view of coverage for "Interruption by Communicable Disease" under the 2020 Policy: "Per my

Filed in District Court
State of Minnesota
8/19/2020 11:21 AM

voicemail today, please note that we are proceeding with coverage under the 'Communicable

Disease' Limit of insurance $1,000,000."

51.    On June 25, 2020, after Life Time requested a more fulsome written coverage

position, Zurich communicated the following regarding its view of the amount of coverage for

"Interruption By Communicable Disease" under the 2020 Zurich Policy:

> 1.) *Coverage-I explained we are extending coverage under the Communicable Disease Provision up to $1,000,000.*
> 2.) You inquired above including all locations "losses" under one Occurrence-As pointed out under Section 7.45 Occurrence-All loss(es) or damage that is attributable directly or indirectly to one cause or a series of
> similar or related causes. All such loss(es) or damage will be treated as one **Occurrence**. However, if **Occurrence** is specifically defined anywhere in this Policy, that definition will apply to the applicable coverage provided. *Hence, all locations will be treated as one Occurrence.*
> 3.) The Policy excludes virus a "Contaminant" exclusion under section 3.03.01.01.
> 4.) Contamination Definition is amended in the LA Endorsement to not include Virus. Please note Lifetime does not have any locations within Louisiana so this modification would not be applicable.
> 5.) Life Time is (not subject) to the full limit of the policy $350,000,000 as the main policy as mentioned above excludes virus as a covered cause of loss. *Virus is Endorsed in the policy by the "Interruption of Communicable Disease" Coverage Provision. As such, the coverage cause of loss is "Communicable Disease" again subject to a $1,000,000 limit.*

(Zurich's April 25, 2020 E-mail to Life Time (formatted as in original with emphasis added).)

52.    Like its April 25, 2020 Reservation of Rights letter, Zurich again ignored and failed

to address the absence of limiting coverage terms or endorsements for "Interruption By

Communicable Disease" under the 2020 Zurich Policy as bound and issued to Life Time.

53.    In addition to representing that Zurich had bound and issued its 2020 Zurich Policy

with a limiting endorsement for "Interruption By Communicable Disease," when it had not,

Zurich's coverage communications, likewise, failed to address the provisions in the 2020 Zurich

Filed in District Co
State of Minneso
8/19/2020 11:21 A

Policy that preclude Zurich from making unilateral changes to the 2020 Zurich Policy terms, including by notice to an agent.

54.     These "POLICY MODIFICATION" provisions of the 2020 Zurich Policy state:

6.17.01     This Policy contains all of the agreements between the Insured and the Company concerning this insurance. *The Insured and the Company* may request changes to this Policy. Only endorsements issued by the Company and made a part of this Policy can change this Policy.

6.17.02     *Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of the Policy* or prevent the Company from asserting any rights under the Policy.

(Emphasis added.)

55.     Zurich's coverage position under the 2020 Zurich Policy is that the added endorsement for "Interruption By Communicable Disease" shows that there is an aggregate total of $1,000,000 in coverage available for all business interruption loss regardless of the number of Life Time Insured Locations affected. But Zurich's position is contradicted by the terms of the very endorsements Zurich seeks to impose.

56.     As described above, Zurich seeks to add two endorsements to the Policy, an "Interruption by Communicable Disease" endorsement and a "Crisis Event Management" endorsement.

57.     The proposed Endorsement No. 03, Interruption by Communicable Disease is attached as Exhibit C. It indicates that it is a change to "Limits/Exposures" and it expressly references and covers the "**Suspension** of the Insured's business activities at *an Insured Location*" (emphasis added) if caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases. The 2020 Zurich Policy and the newly proposed endorsement for Interruption by Communicable Disease do not include an "Annual Aggregate

13

Filed in District Court
State of Minnesot
8/19/2020 11:21 A

Limit of Liability" for this Insured Location coverage, nor do they reference any "per occurrence" aggregate or applicable deductible. (*Id.*)

58.    In contrast to the Insured Location coverage provided by Endorsement No. 03, Zurich's newly proposed Endorsement No. 04, Crisis Event Management, that Zurich also retroactively seeks to add to the 2020 Zurich Policy, <u>does</u> provide for a limit of $1,000,000 per occurrence with an applicable $100,000 deductible. That Endorsement is attached as <u>Exhibit D</u>. It expressly advises Life Time in the endorsement that:

> The most the Company will pay for this added coverage in excess of the deductible is $1,000,000 *per occurrence*.
>
> The deductible applying to this coverage is $100,000.

*Id.* (emphasis supplied).

59.    Accordingly, even if both Endorsement No. 03 and Endorsement No. 04 were determined by this Court to have been properly added by Zurich to the Policy, Zurich's wording further demonstrates that the Endorsement No. 03 Interruption by Communicable Disease coverage applies on a per Insured Location basis with $1,000,000 in limits available for each Insured Location. In contrast, the Endorsement No. 04 Crisis Event Management coverage applies on a "per occurrence" basis with $1,000,000 as "[t]he most the company will pay for this added coverage in excess of the deductible."

60.    Therefore, Zurich's position that an aggregate limit of $1,000,000 is available under the 2020 Zurich Policy for all of Life Time's business interruption loss at all of Life Time's Insured Locations combined is erroneous, as evidenced by, *e.g.*, the Policy itself and the terms of the proposed Endorsement Nos. 03 and 04 that Zurich seeks to graft onto the 2020 Zurich Policy.

## COUNT ONE
### (Declaratory Judgment)

61.    Life Time incorporates and reasserts herein all of the foregoing paragraphs.

62.    The 2020 Zurich Policy is a valid and enforceable contract of insurance between Zurich and Life Time.

63.    Pursuant to the terms and conditions of the 2020 Zurich Policy, Life Time is entitled to $1,000,000 in "Interruption by Communicable Disease" coverage for each Insured Location up to a total aggregate policy limit of coverage of $350,000,000.

64.    Zurich has advised Life Time of its position that the 2020 Zurich Policy only provides an aggregate limit of $1,000,000 in "Interruption by Communicable Disease" coverage across all Insured Locations.

65.    An actual, justiciable controversy exists between the parties, with Life Time seeking a declaration that it is entitled to up to $1,000,000 in "Interruption by Communicable Disease" coverage for each of Life Time's Insured Locations, subject to the $350,000,000 aggregate limit of liability under the 2020 Zurich Policy.

## COUNT TWO
### (Breach of Contract)

66.    Life Time incorporates and reasserts herein all of the foregoing paragraphs.

67.    The 2020 Zurich Policy is a contract.

68.    Under the 2020 Zurich Policy, Zurich promised to pay Life Time for $1,000,000 in "Interruption by Communicable Disease" coverage at any Insured Location up to the Policy Limit of $350,000,000 "for the total of all coverages combined regardless of the number of **Locations** involved."

69.    Life Time has sustained covered "Interruption by Communicable Disease" loss at its more than 150 Insured Locations and seeks up to the $1,000,000 per Insured Location coverage from Zurich at each Insured Location.

70.     Zurich has refused to provide Life Time with coverage up to $1,000,000 for each Insured Location for "Interruption by Communicable Disease." Instead, Zurich has advised Life Time that it will only pay an aggregate total of $1,000,000 in business interruption costs across all of Life Time's Insured Locations.

71.     By refusing to provide Life Time with $1,000,000 "Interruption by Communicable Disease" coverage for each Insured Location, and by refusing and failing to pay Life Time what is owed under the 2020 Zurich Policy, Zurich has breached the 2020 Zurich Policy.

72.     As a result of Zurich's breach of contract, Life Time has suffered damages over $130,000,000, exclusive of interest and costs.

## COUNT THREE
### (Breach of the Covenant of Good Faith and Fair Dealing)

73.     Life Time incorporates and reasserts herein all of the foregoing paragraphs.

74.     The 2020 Zurich Policy is a contract.

75.     The covenant of good faith and fair dealing is implicit and contained within all contracts, including the 2020 Zurich Policy.

76.     One of the purposes of the insurance protection Zurich promised to provide to Life Time under the 2020 Zurich Policy is to protect Life Time from business interruption losses. Such insurance protection comes not just from Life Time's receipt of money, but also from receipt of insurance proceeds promptly, so that when business suspensions and closures occur, as Life Time has experienced and continues to experience, the business can weather the interruption and get back on its feet as soon as possible.

77.     Zurich has failed to provide clear, timely, and accurate coverage communications to Life Time.

16

Filed in District Co
State of Minnes
8/19/2020 11:21 A

78.     On April 8, 2020, Zurich attempted to unilaterally revise the 2020 Zurich Policy by sending new endorsements to Life Time's broker without notice or explanation to Life Time about the requested changes.

79.     On April 15, 2020, Zurich then issued a reservation of rights letter that failed to mention its purported policy revisions.  Zurich's reservation of rights letter also failed to address any alleged limits in the Policy, omitting any reference to the aggregate cap of $350,000,000 in total coverage and failing to set forth its position that there is a $1 million aggregate cap on the coverage available for "Interruption By Communicable Disease" losses at all of Life Time's Insured Locations.

80.     On May 13, 2020, after Zurich failed to respond to an oral request for them, Life Time requested in writing from Zurich all of its "Communicable Disease" and "Crisis Management" coverage extensions, endorsements, or other wording issued over the last two years, while reserving all rights as to Zurich's attempted unilateral retroactive policy revision.  Zurich failed to provide such documents.

81.     For months after Life Time's notice of loss, Zurich failed to set forth in writing its position that there is an aggregate policy limit of $1 million available to Life Time under the 2020 Zurich Policy for "Interruption by Communicable Disease," first notifying Life Time by voicemail and a short email on May 29, 2020 that Zurich is "proceeding with coverage under the 'Communicable Disease' Limit of insurance $1,000,000" and then, only after Life Time requested a more fulsome written coverage position, by another email on June 25, 2020 clarifying and confirming Zurich's view that "all locations will be treated as one Occurrence."

82.     Through its handling of Life Time's insurance claim and conduct, including its refusal to provide Life Time with $1,000,000 "Interruption by Communicable Disease" coverage

for each Insured Location, Zurich has breached the covenant of good faith and fair dealing in the 2020 Zurich Policy.

83.      As a result of Zurich's breach of contract and breach of the covenant of good faith and fair dealing, Life Time has suffered damages, including consequential damages, of over $130,000,000, exclusive of interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Life Time requests judgment in its favor and against Zurich, providing Life Time with the following:

a.      A judicial declaration that Life Time is entitled to $1,000,000 in coverage for each Insured Location in "Interruption by Communicable Disease" coverage under the 2020 Zurich Policy, subject to the $350,000,000 Policy Limit "for the total of all coverages combined regardless of the number of **Locations** involved";

b.      An award of compensatory damages resulting from Zurich's breach of its duty to pay Life Time in an amount to be proven at trial under the 2020 Zurich Policy;

c.      All damages allowed by law, including all consequential damages flowing from Zurich's breach of its duties under the 2020 Zurich Policy, the covenant of good faith and fair dealing, and applicable law;

d.      All interest on the above-described amounts allowed by law, including but not limited to all prejudgment interest due under Minn. Stat. § 60A.0811;

e.      All attorneys' fees, costs, and expenses allowed by law; and

f.      Such other and further relief as the Court deems necessary, just, or proper.

## DEMAND FOR JURY TRIAL

Life Time hereby demands a trial by jury on all matters and issues so triable.

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

## RESERVATION OF RIGHT TO AMEND

Life Time reserves the right to amend its Complaint under Minn. Stat. § 604.18.

Dated:  August 19, 2020

Respectfully submitted,

By:

**MASLON LLP**
Rikke Dierssen-Morice (#0237826)
Margo S. Brownell (#0307324)
Bryan R. Freeman (#0387154)
Peter K. Doely (#0395341)
Judah A. Druck (# 0397764)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel:  (612) 672-8200
rikke.morice@maslon.com
margo.brownell@maslon.com
bryan.freeman@maslon.com
peter.doely@maslon.com
judah.druck@maslon.com

**ATTORNEYS FOR LIFE TIME, INC., LTF
CLUB OPERATIONS COMPANY, INC., LTF
OPERATIONS HOLDINGS, INC., LTF CLUB
MANAGEMENT COMPANY, LLC,
BLOOMINGDALE LIFE TIME FITNESS, LLC**

## MINN. STAT. § 549.211 ACKNOWLEDGMENT

The parties on whose behalf the attached document is served acknowledge through their

undersigned counsel that sanctions, including reasonable attorney fees and other expenses, may be

awarded to the opposite party pursuant to Minn. Stat. § 549.211.

Rikke Dierssen-Morice

Filed in District Co
State of Minneso
8/19/2020 11:21 /



# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

1

U-GU-873-A CW (06/11)
Page 1  of 1

Filed in District Co...
State of Minneso...
8/19/2020 11:21 A...



# Disclosure Statement

**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

2

U-GU-874-A CW (06/11)
Page 1  of  1

Filed in District Court
State of Minnesota
8/19/2020 11:21 /



**ZURICH**®

# The Zurich EDGE
# Global Policy



Exhibit A to Complaint

State of Minneso
8/19/2020 11:21 /



# Illinois Civil Union Act Policyholder Notice

On June 1, 2011, Public Act 96-1513, the Religious Freedom Protection and Civil Union Act ("the Act") became effective.   Under the Act, both same-sex and opposite-sex couples may enter into a civil union.  A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law.   A marriage between persons of the same sex, a civil union, or a substantially similar legal relationship other than common law marriage, legally entered into in another jurisdiction, shall be legally recognized in Illinois as a civil union.

**CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE:**
Illinois law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, the Employee Retirement Income Security Act of 1974, a federal law known as "RISA"controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer' enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However,governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under "OBRA"for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights.

4

Filed in District Co
State of Minneso
8/19/2020 11:21 /

# Notice To Policyholder
# Revised Definition of Spouse



California law provides that registered domestic partners have the same rights, protections, and benefits, and are subject to the same responsibilities, obligations, and duties under law as are granted to and imposed upon spouses. This applies whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses. Existing law requires, where necessary to implement the rights of registered domestic partners, gender-specific terms referring to spouses to be construed to include domestic partners.

U-GU-1227-A CA  (03/17)

5

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

Insured Name:          Life Time, Inc.

Reference Number:      

Effective Date:        12/15/2019


**ZURICH**®

### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION
# RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
|---|
| ████████ |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

### B. Disclosure of Federal Participation in Payment of Terrorism Losses

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

### C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

### D. Availability

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

### E. Definition of Act of Terrorism under TRIA

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

6

Copyright ©2015 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

Exhibit A to Complaint

Filed in District Co
State of Minneso
8/19/2020 11:21 /

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

7

Copyright ©2015 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

Filed in District Co
State of Minneso
8/19/2020 11:21 A

# SANCTIONS EXCLUSION ENDORSEMENT


**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

8

Exhibit A to Complaint

U-GU-1191-A CW  (03/15)
Page 1 of 1

State of Minnesota
8/19/2020 11:21 A

# Important Notice - In Witness Clause



In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                         Corporate Secretary

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email:** info.source@zurichna.com

9

Exhibit A to Complaint

U-GU-319-F (01/09)
Page 1  of  1

## THE ZURICH EDGE-GLOBAL TABLE OF CONTENTS

Page No.

DECLARATIONS PAGE

    NAMED INSURED AND MAILING ADDRESS ........................................................ 1D
    POLICY PERIOD ........................................................................................
    PREMIUM ................................................................................................

SECTION I - POLICY APPLICABILITY ........................................................... 3D

1.01. INSURING AGREEMENT ..........................................................................
1.02. APPLICATION OF POLICY PERIOD ...........................................................
1.03. TERRITORY .........................................................................................

SECTION II - DECLARATIONS ..................................................................... 4D

2.01. INSURED LOCATION
2.02. CURRENCY
2.03. POLICY LIMITS OF LIABILITY
2.04. QUALIFYING PERIOD
2.05. DEDUCTIBLES

SECTION III - PROPERTY DAMAGE

3.01. COVERED PROPERTY ............................................................................. 1
3.02. PROPERTY NOT COVERED ...................................................................... 1
3.03. EXCLUSIONS ........................................................................................ 2

SECTION IV - TIME ELEMENT ...................................................................... 6

4.01. LOSS INSURED ...................................................................................... 6
4.02. TIME ELEMENT COVERAGES ................................................................... 6
    4.02.01. GROSS EARNINGS ......................................................................... 6
    4.02.02. EXTENDED PERIOD OF LIABILITY ................................................... 7
    4.02.03. EXTRA EXPENSE ........................................................................... 8
    4.02.04. LEASEHOLD INTEREST .................................................................. 8
    4.02.05. GROSS PROFIT ............................................................................. 9
    4.02.06. EXCLUSIONS ................................................................................ 9
4.03. PERIOD OF LIABILITY ........................................................................... 10

SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS ............... 12

5.01. OPERATION OF SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS: ......... 12
5.02. DESCRIPTION OF SPECIAL COVERAGES ................................................... 12
    5.02.01. ACCOUNTS RECEIVABLE ............................................................... 12
    5.02.02. AMMONIA CONTAMINATION ........................................................ 13
    5.02.03. CIVIL OR MILITARY AUTHORITY .................................................. 13
    5.02.04. COMPUTER SYSTEMS DAMAGE ...................................................... 14
    5.02.05. CONTINGENT TIME ELEMENT ....................................................... 14
    5.02.06. DEBRIS REMOVAL ......................................................................... 15
    5.02.07. DECONTAMINATION COSTS ........................................................... 15
    5.02.08. DEFERRED PAYMENTS .................................................................. 16
    5.02.09. ERRORS AND OMISSIONS ............................................................. 16
    5.02.10. EXPEDITING COSTS ..................................................................... 16
    5.02.11. FINE ARTS .................................................................................. 17
    5.02.12. FIRE DEPARTMENT SERVICE CHARGE ........................................... 17
    5.02.13. IMPOUNDED WATER .................................................................... 17

10

5.02.14. INCREASED COST OF CONSTRUCTION ........................................................ 17
5.02.15. INGRESS/EGRESS ........................................................................................... 18
5.02.16. LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL .......... 18
5.02.17. LAND IMPROVEMENTS ................................................................................... 19
5.02.18. MISCELLANEOUS PERSONAL PROPERTY ......................................................... 19
5.02.19. MISCELLANEOUS UNNAMED LOCATIONS ........................................................ 19
5.02.20. NEWLY ACQUIRED ......................................................................................... 20
5.02.21. OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME
          ELEMENT LOSS ............................................................................................. 20
5.02.22. PROFESSIONAL FEES ...................................................................................... 21
5.02.23. PROTECTION AND PRESERVATION OF PROPERTY ............................................. 21
5.02.24. RADIOACTIVE CONTAMINATION ..................................................................... 21
5.02.25. RESEARCH AND DEVELOPMENT ...................................................................... 21
5.02.26. RESEARCH ANIMALS ...................................................................................... 22
5.02.27. SPOILAGE ..................................................................................................... 22
5.02.28. TENANTS PROHIBITED ACCESS ....................................................................... 22
5.02.29. TRANSIT ........................................................................................................ 23
5.02.30. VALUABLE PAPERS AND RECORDS .................................................................. 24
5.02.31. NEW CONSTRUCTION AND ADDITIONS ............................................................ 24
5.02.32. OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION ..................... 25
5.02.33. CURRENCY DEVALUATION .............................................................................. 25
5.02.34. DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS ....................................... 25
5.02.35. FINANCIAL INTEREST OF THE FIRST NAMED INSURED ...................................... 26
5.02.36. TAX LIABILITY .............................................................................................. 27
5.02.37. TENANTS AND NEIGHBORS LIABILITY ............................................................. 28

5.03. DESCRIBED CAUSES OF LOSS .................................................................................. 28
      5.03.01 BREAKDOWN OF EQUIPMENT ........................................................................ 28
      5.03.02 EARTH MOVEMENT ....................................................................................... 28
      5.03.03 FLOOD ......................................................................................................... 29
      5.03.04 NAMED STORM ............................................................................................. 29

SECTION VI –GENERAL POLICY CONDITIONS ....................................................................... 30

6.01. AGGREGATION-INTERNATIONAL CONDITION ........................................................... 30
6.02. CANCELLATION/NON-RENEWAL .............................................................................. 30
6.03. CERTIFICATES OF INSURANCE ................................................................................ 31
6.04. CONCEALMENT, MISREPRESENTATION, FRAUD ....................................................... 31
6.05. CONTROL OF DAMAGED GOODS .............................................................................. 31
6.06. CURRENCY FOR LOSS PAYMENT .............................................................................. 32
6.07. INSPECTIONS AND SURVEYS .................................................................................... 32
6.08. JOINT LOSS .......................................................................................................... 32
6.09. JURISDICTION ....................................................................................................... 34
6.10. LENDERS LOSS PAYABLE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS ...... 34
6.11. LIBERALIZATION ................................................................................................... 35
6.12. LOSS ADUSTMENT/LOSS PAYABLE .......................................................................... 35
6.13. LOSS CONDITIONS ................................................................................................. 35
      6.13.01. DUTIES IN THE EVENT OF LOSS OR DAMAGE ................................................. 35
      6.13.02. DUTIES IN THE EVENT OF LOSS OR DAMAGE IN A PROHIBITED JURISDICTION .... 36
      6.13.03. ABANDONMENT ........................................................................................... 36
      6.13.04. SUBROGATION ............................................................................................. 36
      6.13.05. APPRAISAL .................................................................................................. 37
      6.13.06. SUIT AGAINST THE COMPANY ....................................................................... 37
6.14. NON - ADMITTED INSURANCE ................................................................................. 37
6.15. NO REDUCTION BY LOSS ........................................................................................ 37
6.16. OTHER INSURANCE ................................................................................................ 38
6.17. POLICY MODIFICATION .......................................................................................... 38
6.18. PRIVILEGE TO ADJUST WITH OWNER ...................................................................... 38
6.19. SETTLEMENT OF CLAIMS ....................................................................................... 39
6.20. SUSPENDED PROPERTY .......................................................................................... 39

11

6.21. TITLES ............................................................................................................................................ 39
6.22. TRANSFER OF RIGHTS AND DUTIES ....................................................................................... 40
6.23. VALUATION ..................................................................................................................................... 40


SECTION VII - DEFINITIONS ................................................................................................................... 42

12

EDGE-455-C (06/14)
Page 3  of 5

<u>FORMS ATTACHED TO THE POLICY</u>

| | |
|---|---|
| EDGE-401-B | The Zurich EDGE Global Policy (Cover Page) |
| U-GU-1110-B IL | Illinois Civil Union Act Policyholder Notice |
| U-GU-1227-A CA | Notice To Policyholder Revised Definition of Spouse |
| U-GU-630-D CW | Disclosure of Important Information Relating to Terrorism Risk Insurance Act |
| U-GU-1191-A CW | SANCTIONS EXCLUSION ENDORSEMENT |
| U-GU-319-F | Important Notice - In Witness Clause |
| EDGE-455-C | The Zurich Edge Global Table of Contents |
| EDGE-D-101-B | The Zurich Edge Global Declarations |
| EDGE-101-B | The Zurich Edge Global Body of Form |
| EDGE-450-B | Appendix A - Earth Movement/Earthquake Zones for USA including its Commonwealths and Territories |
| EDGE-451-D | Appendix B - Earth Movement/Earthquake Zones Worldwide except USA its Commonwealths and Territories |
| EDGE-452-B | Appendix C - Named Storm Zones for USA including its Commonwealths and Territories |
| EDGE-453-E | Appendix D - Named Storm Zones Worldwide except USA and its Commonwealths and Territories |
| EDGE-201-B | Amendatory Endorsement - Alaska |
| EDGE-207-F | Amendatory Endorsement - Connecticut |
| EDGE-210-D | Amendatory Endorsement - Florida |
| EDGE-211-A | Amendatory Endorsement - Georgia |
| EDGE-214-C | Amendatory Endorsement - Illinois |
| EDGE-215-A | Amendatory Endorsement - Indiana |
| EDGE-217 B | Amendatory Endorsement - Kansas |
| EDGE-218-B | Amendatory Endorsement - Kentucky |
| EDGE-219-C | Amendatory Endorsement - Louisiana |
| EDGE-221-C | Amendatory Endorsement - Maryland |
| EDGE-222-C | Amendatory Endorsement-Massachusetts |
| EDGE-220-B | Amendatory Endorsement - Maine |
| EDGE-224-B | Amendatory Endorsement - Minnesota |
| EDGE-225-B | Amendatory Endorsement - Mississippi |
| EDGE-226-A | Amendatory Endorsement - Missouri |
| EDGE-227-B | Amendatory Endorsement - Montana |
| EDGE-232-B | Amendatory Endorsement - Nebraska |

13

Filed in District Co
State of Minneso
8/19/2020 11:21 A

<u>FORMS ATTACHED TO THE POLICY</u>

| | |
|---|---|
| EDGE-229-B | Amendatory Endorsement - Nevada |
| EDGE-233-B | Amendatory Endorsement - New York |
| EDGE-236-A | Amendatory Endorsement - Ohio |
| EDGE-237-B | Amendatory Endorsement - Oklahoma |
| EDGE-240-A | Amendatory Endorsement - Rhode Island |
| EDGE-241-B | Amendatory Endorsement - South Carolina |
| EDGE-242-C | Amendatory Endorsement - South Dakota |
| EDGE-243-B | Amendatory Endorsement - Tennessee |
| EDGE-246-B | Amendatory Endorsement - Vermont |
| EDGE-252-A VA | Amendatory Endorsement - Virginia |
| EDGE-248-B | Amendatory Endorsement - Washington |
| EDGE-249-A | Amendatory Endorsement - West Virginia |
| EDGE-250-A | Amendatory Endorsement - Wisconsin |
| EDGE-251-A | Amendatory Endorsement - Wyoming |
| EDGE-309-A | Endorsement Limited Coverage for Electronic Data  Programs or Software |
| U-GU-767-B CW | Cap on Losses From Certified Acts of Terrorism |

14

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

**Policy Number**

██████████████

**Named Insured and Mailing Address**
Life Time, Inc.
2902 Corporate Pl
Chanhassen, MN  553174560

hereafter referred to as the **First Named Insured**.

The following are all hereafter referred to as the "Insured", including legal representatives.

**The First Named Insured**; and

any subsidiary of the **First Named Insured**.  The **First Named Insured**'s interest in any partnership, joint venture or other legal entity in which the **First Named Insured** has management control or ownership as now constituted or hereafter is acquired.

When any Insured described above is a party to a written contract or agreement on file, that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to insured property which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any Time Element Coverage to the legal entity, except as provided under Leasehold Interest Coverage of this policy or as specifically endorsed to the policy.

**Producer**
WILLIS TOWERS WATSON MIDWEST,
8400 NORMANDALE LAKE BLVD STE
1700
BLOOMINGTON, MN  554373837

**Policy Period**
Begins December 15, 2019 at 12:01 AM; Ends December 15, 2020 at 12:01 AM

**Insurance is provided by the following Stock Company**
Zurich American Insurance Company
hereafter referred to as the "Company",

| 100% | Quota Share | Being $350,000,000 part of a $350,000,000 primary loss layer |

| Annual Policy Premium | Surcharges, Taxes & Fees | Total Policy Premium |
|---|---|---|
| ██████████████████████████████████████████ | | |

**PREMIUM PAYABLE**

This Policy is issued in consideration of an initial premium.  The **First Named Insured** shown on the Policy is responsible for the payment of all premiums and will be the payee for any return premiums paid by the Company.  Premiums will be paid in the currency designated in Section II-2.02.

15

EDGE-D-101-B (12/10)
1  D

# SECTION I – POLICY APPLICABILITY

## 1.01.   INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

No coverage can be provided in violation of any U.S. economic or trade sanctions laws or regulations. Such coverage, which may be in violation of any U.S. economic or trade sanctions laws and regulations, shall be null and void and the Company shall not be liable to make any payments or provide any defense under this policy.

## 1.02.   APPLICATION OF POLICY PERIOD

In the event of a claim the Policy Period is measured by local time at the location where the direct physical loss or damage occurs.

## 1.03.   TERRITORY

Coverage under this Policy applies to all covered loss or damage that takes place worldwide. Loss or damage in the following is excluded:

1.03.01.   Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina-Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Cot?-d'Ivore, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzstan(Kyrgyz Republic), Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tom? and Princip?, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka, Southern Sudan, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

1.03.02.   Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies; or

1.03.03.   Any **Prohibited Jurisdiction**.

# SECTION II - DECLARATIONS

## 2.01   INSURED LOCATION

This Policy insures an Insured Location unless otherwise provided. Any **Location** in an excluded territory as defined within 1.03. is not an Insured Location under this Policy.

An Insured Location is a **Location**

2.01.01.   Listed on a Schedule of Locations on file with Company; per most recent statement of values.

2.01.02.   Covered as a **Miscellaneous Unnamed Location** ; and

2.01.03.   Covered under the terms and conditions of the Newly Acquired Coverage or Errors and Omissions Coverage.

## 2.02.   CURRENCY

All amounts, including deductibles and limits of liability, indicated in this Policy are in USD unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

16

EDGE-D-101-B (12/10)
2 D

Filed in District Co
State of Minneso
8/19/2020 11:21 /

## 2.03.   POLICY LIMITS OF LIABILITY

The Policy Limit is $350,000,000 for the total of all coverages combined regardless of the number of **Locations** involved subject to the following provisions:

**2.03.01.**   The Company will pay no more in any one (1) **Occurrence** than its proportionate share of the Policy Limit.

**2.03.02.**   Limits of Liability stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

**2.03.03.**   When an **Annual Aggregate** Limit of Liability is shown, the Company's maximum amount payable will not exceed such Limit of Liability during the **Policy Year** regardless of the number of **Locations**, Coverages or **Occurrences** involved.

**2.03.04.**   The most the Company will pay in an **Occurrence** caused by a **Described Cause of Loss** is the Limit of Liability for that **Described Cause of Loss**.

**2.03.05.**   When this Policy is part of an **International Insurance Program** and an **Occurrence** results in loss payable under more than one policy issued to the Named Insured by the Company, or its affiliated or representative companies, the maximum amount payable in the aggregate under all such policies will be the applicable Limit of Liability indicated in this Policy regardless of the number of **Locations**, Coverages or **Covered Causes of Loss** involved.

**2.03.06.**   Limits of Liability in an **Occurrence** apply to the total loss or damage, including any insured Time Element loss, at all **Locations** and for all Coverages involved.

**2.03.07.**   Limits of Liability

The following are the Limits of Liability in an **Occurrence** unless otherwise shown.  The Company will pay no more in any one (1) **Occurrence** than its proportionate share.

The limit of Liability we show for a coverage part is the maximum amount we will pay for the coverage part.

Sublimits within a coverage part may reduce the amount payable under a coverage part.

When this Policy is part of an **International Insurance Program** and a Limit of Liability is shown for a **Location(s)**, Coverage(s) or **Covered Causes of Loss** applying in a **Prohibited Jurisdiction**, such limit is the most the company would pay for that **Location(s)**, Coverage(s) or **Covered Causes of Loss** as applicable under the FINANCIAL INTEREST OF THE FIRST NAMED INSURED Coverage. Listing of a Limit of Liability for a location which may be in  whole  or  part  located within a **Prohibited Jurisdiction** shall not extend coverage to any **Prohibited Jurisdiction**.

Limits of Liability and Coverage Part

| Limit | Description |
|---|---|
| $350,000,000 | Property Damage (PD) and Time Element (TE) combined at scheduled locations: on file with the Company per most recent statement of values. |
| | But not to exceed: |
| | $25,000,000        EXTRA EXPENSE |
| | $10,000,000        LEASEHOLD INTEREST |
| $10,000,000 | ACCOUNTS RECEIVABLE |
| $1,000,000 | COMPUTER SYSTEMS DAMAGE in the **Annual Aggregate** |

17

EDGE-D-101-B (12/10)
3 D

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

| $5,000,000 | CONTINGENT TIME ELEMENT |
|---|---|
| | per occurrence but not to exceed a $5,000,000 limit per **Direct Time Element Location** |
| | $1,000,000 for **Earth Movement, Flood, Named Storm** or Volcanic Eruption; |
| | **NCP** per **Indirect Dependent Time Element Location**; |
| | $1,000,000 limit per **ATTRACTION PROPERTY** |

| $25,000,000 | DEBRIS REMOVAL |
|---|---|
| $5,000,000 | DECONTAMINATION COSTS |
| $1,000,000 | DEFERRED PAYMENTS |
| $10,000,000 | ERRORS AND OMISSIONS |
| $25,000,000 | EXPEDITING COSTS |
| $1,000,000 | **FINE ARTS** |
| $1,000,000 | FIRE DEPARTMENT SERVICE CHARGE |
| $350,000,000 | INCREASED COST OF CONSTRUCTION |
| $250,000 | LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL |
| $1,000,000 | **LAND IMPROVEMENTS** |
| $5,000,000 | MISCELLANEOUS PERSONAL PROPERTY |
| $5,000,000 | **MISCELLANEOUS UNNAMED LOCATION** |
| $25,000,000 | OFF PREMISES SERVICE INTERRUPTION |
| $1,000,000 | PROFESSIONAL FEES |
| **NCP** | RADIOACTIVE CONTAMINATION |
| **NCP** | RESEARCH ANIMALS |
| $1,000,000 | TENANTS PROHIBITED ACCESS |
| $2,500,000 | TRANSIT |
| $5,000,000 | **VALUABLE PAPERS AND RECORDS** |
| $10,000,000 | **NEW CONSTRUCTION OR ADDITIONS** |

| $2,500,000 | OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION |
|---|---|
| $5,000,000 | CURRENCY DEVALUATION |
| $100,000,000 | DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS |
| $5,000,000 | FINANCIAL INTEREST OF THE FIRST NAMED INSURED |
| $5,000,000 | TAX LIABILITY |
| $5,000,000 | TENANTS AND NEIGHBORS LIABILITY |
| $350,000,000 | **BREAKDOWN** OF EQUIPMENT not to exceed: $1,000,000 for **AMMONIA CONTAMINATION** $1,000,000 for SPOILAGE |

18

EDGE-D-101-B (12/10)
4 D

Filed in District Co...
State of Minnes...
8/19/2020 11:21 A...

| | |
|---|---|
| $100,000,000 | **EARTH MOVEMENT** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:** |
| | a).  $25,000,000 for property located in Zone 1 for **Earth Movement** as described in Appendix A & B. |
| | b).  $50,000,000 for property located in Zone 2 for **Earth Movement** as described in Appendix A & B. |
| | c).  Not Subject to  a)., and b).: |
| | $15,000,000 for property located in the State of California for Earth Movement . |
| $100,000,000 | **FLOOD** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:** |
| | a).  $10,000,000 as respects Locations with any part of the legal description within a **Special Flood Hazard Area (SFHA)** and not otherwise listed herein. |
| | b).  $50,000,000 as respects Locations with any part of the legal description within a **Moderate Flood Hazard Area (MFHA)** and not otherwise listed herein. |
| | c).  **NCP** for **Sturmflut** events in Germany. |
| | d).  **NCP** for **Flood** events in Netherlands. |
| $350,000,000 | **NAMED STORM** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:** |
| | a).  $50,000,000 for property located in Zone 1 for **Named Storm** as described in Appendix C & D. |
| | b).  $200,000,000 for property located in Zone 2 for **Named Storm** as described in Appendix C & D. |
| $1,000,000 | Interruption By Communicable Disease |
| $1,000,000 | Crisis Management |

2.03.08.   Causation Definition:  The following term is included in the definition of the Peril as indicated:

**Storm Surge** is part of **Flood**

2.03.09.   Time and Distance Limitations: In addition to the Limits of Liability shown elsewhere in this Policy, the following limitations apply:

| | |
|---|---|
| Located within 1 mile(s) of the Insured Location. | **ATTRACTION PROPERTY** |
| 30 day period for property within 5 mile(s) but not to exceed a $10,000,000 limit. | CIVIL OR MILITARY AUTHORITY |
| 30 day(s) but not to exceed a $10,000,000 limit. | The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion** |
| 36 months | GROSS EARNINGS |
| 180 day(s) | EXTENDED PERIOD OF LIABILITY |
| 180 day(s) | **ORDINARY PAYROLL** |
| 36 months | GROSS PROFIT |
| 30 day(s) | **WAGES** |
| 30 day period but not to exceed a $1,000,000 limit. | IMPOUNDED WATER |
| 30 day period for property within 5 mile(s) but not to exceed a $10,000,000 limit. | INGRESS/EGRESS |

19

EDGE-D-101-B (12/10)

5  D

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

| | |
|---|---|
| 120 day period but not to exceed a $25,000,000 limit per **Location.** | NEWLY ACQUIRED |
| 48 hours for Gross Earnings or Gross Profit: not to exceed a $2,500,000 limit per **Location**. | PROTECTION AND PRESERVATION OF PROPERTY |
| **NCP** | RESEARCH AND DEVELOPMENT |

2.03.10.    Time Specifications: As follows:

| | |
|---|---|
| **EARTH MOVEMENT Occurrence** | 168 hours |
| **NAMED STORM Occurrence** | 72 hours |
| Cancellation for non-payment of premium | 10 days |
| Cancellation for any other reason | 90 days |

2.03.11.    Valuation:  As follows:

| | |
|---|---|
| **Finished Stock** | **Selling Price** |
| **Merchandise** that carries the Insured's brand or trade name | Replacement Cost |
| All other **Merchandise** | Replacement Cost |
| Vehicles | Actual Cash Value |

## 2.04.    QUALIFYING PERIOD

For the Coverages listed below the following **Qualifying Period** applies:

| | |
|---|---|
| OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE & TIME ELEMENT COVERAGE applies separately at each location. | 24 Hours |
| COMPUTER SYSTEMS DAMAGE COVERAGE | 48 Hours |
| TENANTS PROHIBITED ACCESS COVERAGE applies separately at each location. | 48 Hours |
| NEW CONSTRUCTION AND ADDITIONS: **Delay in Completion** applies separately at each location. | 30 Days |
| Interruption by Communicable Disease | 48 Hours |

## 2.05.    DEDUCTIBLES

Each claim for loss or damage as insured against arising out of any one (1) **Occurrence** shall be adjusted separately.  The Company shall not be liable unless the Insured sustains loss or damage in excess of the deductible(s) stated below and then only for the proportionate share of such excess amount(s).

2.05.01.    A deductible that applies on a per **Location** basis will apply separately to each **Location** where the physical loss or damage occurred regardless of the number of **Locations** involved in the **Occurrence**.

2.05.02.    Unless stated otherwise, if two or more deductibles apply to an **Occurrence**, the total deducted will not exceed the largest applicable deductible.  If two or more deductibles apply on a per **Location** basis in an **Occurrence,** the largest deductible applying to each **Location** will be applied separately to each such Location.

20

EDGE-D-101-B (12/10)
6  D

Filed in District Co...
State of Minnesc
8/19/2020 11:21 /

| | |
|---|---|
| 2.05.03. | If separate Property Damage and Time Element loss deductibles are shown, then the deductibles shall apply separately. |
| 2.05.04. | When a "minimum deductible" per **Occurrence** is shown and is applicable to an **Occurrence**, the "minimum deductible" is the minimum dollar amount of covered damage that the Insured will retain in any one (1) **Occurrence**. The amount retained for purposes of applying the "minimum deductible" is the sum of: |
| 2.05.04.01. | the specified location deductible for each location where the amount of covered damage exceeds the specified location deductible; and |
| 2.05.04.02. | the amount of covered damage for each location where the amount of covered damage is less than specified location deductible. |
| 2.05.05. | For the Insured's **International Insurance Program,** it is agreed that for the purpose of the application of the deductible(s), that the deductible(s) amounts that apply to types of coverage, causes of loss, specific **Locations** or specific property will be subject to the deductible(s) under this Policy. |
| | If the deductible(s) under the **Specific Local Policy** or **FoS (Freedom of Services) policy** is greater than the applicable deductible(s) as shown in the Declarations for the loss for the same **Occurrence** payable under this Policy, the Company shall undertake to reimburse the amount that exceeds the applicable deductible(s) as shown in the Declarations of this policy. |
| | If the deductible(s) under the **Specific Local Policy** or **FoS (Freedom of Services) policy** is less than the applicable deductible(s) as shown in the Declarations for the loss for the same **Occurrence** payable under this Policy, then the difference between the applicable deductible under this Policy and the applicable deductible under the **Specific Local Policy** or **FoS (Freedom of Services) policy** will be applied under this Policy. |
| 2.05.06. | Policy Deductible(s) |
| 2.05.06.01. | $100,000 combined Property Damage (PD) and Time Element (TE) |
| | per **Occurrence** except as follows: |
| 2.05.06.02. | Exceptions to Policy Deductible(s) |
| 2.05.06.02.01. | Contingent Time Element |
| | $100,000 per **Location** |
| 2.05.06.02.02. | Earthquake |
| | The following deductibles apply to loss or damage caused by or resulting from Earthquake. This Earthquake deductible will apply regardless of any other deductibles that may also apply. |
| 2.05.06.02.02.01 | $100,000 combined Property Damage (PD) and Time Element (TE) |
| | per **Occurrence** except as follows: |
| 2.05.06.02.02.02. | As respects **Locations** in Zone 1: |
| 2.05.06.02.02.02.01. | Property Damage (PD) - 5% of the value per the most current Statement of values on file with the company as of the date of loss, for the **Location** where the direct physical loss or damage occurred, per **Location**. |
| 2.05.06.02.02.02.02. | Time Element (TE) - 5% of the full 12 months Gross Earnings or Gross Profit values that would have been earned following the **Occurrence** by use of the facilities at the **Location** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, per **Location**. |
| | The value of 2.05.06.02.02.02.01. & 2.05.06.02.02.02.02. combined. |
| 2.05.06.02.02.02.03. | The above Earthquake deductibles are subject to a minimum deductible of $100,000 combined Property Damage (PD) and Time Element (TE) per **Occurrence**. |

21

EDGE-D-101-B (12/10)
7 D

2.05.06.02.02.03.        As respects **Locations** in Zone 2:

2.05.06.02.02.03.01.   Property Damage (PD) - 2% of the value per the most current Statement of values on file with the company  as of the date of loss, for the **Location** where the direct physical loss or damage occurred, per **Location**.

2.05.06.02.02.03.02.   Time Element (TE) -  2% of the full 12 months Gross Earnings or Gross Profit  values that would have been earned following the **Occurrence** by use of the facilities at the **Location**  where the direct physical loss or damage occurred and all other **Locations**  where Time Element loss ensues, per **Location**.

The value of 2.05.06.02.02.03.01. & 2.05.06.02.02.03.02. combined.

2.05.06.02.02.03.03.   The above Earthquake deductibles are subject to a minimum deductible of $100,000 combined Property Damage (PD) and Time Element (TE) per **Occurrence.**

2.05.06.02.03.        Flood

The following deductibles apply to loss or damage caused by or resulting from **Flood**.  This **Flood** deductible will apply regardless of any other deductibles that may also apply.

2.05.06.02.03.01.    $100,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence** except as follows:

2.05.06.02.03.02.    As respects **Locations** in with any part of the legal description within a **Special Flood Hazard Area (SFHA):**

2.05.06.02.03.02.01.   Property Damage (PD) and Time Element (TE) combined - $500,000, per **Occurrence**.

2.05.06.02.03.03.    As respects **Locations** with any part of the legal description within a **Moderate Flood Hazard Area (MFHA):**

2.05.06.02.03.03.01.   Property Damage (PD) and Time Element (TE) combined - $100,000, per **Occurrence**.

2.05.06.02.04.        Named Storm

The following deductibles apply to loss or damage caused by or resulting from **Named Storm**. The **Named Storm** deductible will apply regardless of any other deductibles that may also apply.

2.05.06.02.04.01.    $100,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence** except as follows:

2.05.06.02.04.02.    As respects **Locations** in Zone 1:

2.05.06.02.04.02.01.   Property Damage (PD) - 5% of the value per the most current Statement of values on file with the company as of the date of loss, for the **Location** where the direct physical loss or damage occurred, per **Location.**

2.05.06.02.04.02.02.   Time Element (TE) -  5% of the full 12 months Gross Earnings or Gross Profit values that would have been earned following the **Occurrence** by use of the facilities at the **Location** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, per **Location.**

The value of 2.05.06.02.04.02.01. & 2.05.06.02.04.02.02. combined.

2.05.06.02.04.02.03.   The above **Named Storm** deductibles are subject to a minimum deductible of  $100,000 combined Property Damage (PD) and Time Element (TE)

**22**

EDGE-D-101-B (12/10)
8  D

| | |
|---|---|
| 2.05.06.02.04.03. | As respects **Locations** in Zone 2: |
| 2.05.06.02.04.03.01. | Property Damage (PD) - 2% of the value per the most current Statement of values on file with the company as of the date of loss, for the **Location** where the direct physical loss or damage occurred, per **Location.** |
| 2.05.06.02.04.03.02. | Time Element (TE) - 2% of the full 12 months Gross Earnings or Gross Profit values that would have been earned following the **Occurrence** by use of the facilities at the **Location** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, per **Location.** |
| | The value of 2.05.06.02.04.03.01. & 2.05.06.02.04.03.02. combined. |
| 2.05.06.02.04.03.03. | The above **Named Storm** deductibles are subject to a minimum deductible of $100,000 combined Property Damage (PD) and Time Element (TE) |
| | |
| 2.05.06.02.05. | Breakdown of Equipment Deductible(s) |
| 2.05.06.02.05.01. | $100,000 combined Property Damage (PD) and Time Element (TE) |
| | per **Occurrence** for loss or damage caused by **Breakdown;** |
| | |
| 2.05.06.02.06. | Water or Liquid Damage Deductible(s) |
| | The following deductible applies to loss or damage caused by or resulting from covered water or other liquids not otherwise excluded, but not caused by **flood** or discharge in response to a fire. |
| 2.05.06.02.06.01. | $100,000 combined Property Damage (PD) and Time Element (TE) |
| | per **Location** for loss or damage caused by water or liquid damage; |
| | |
| 2.05.06.02.07. | Financial Interest of the First Named Insured Deductibles |
| 2.05.06.02.07.01. | $100,000 combined Property Damage (PD) and Time Element (TE)per **occurrence** for loss or damage casued by Financial Interest of the First Named Insured. |
| 2.05.06.02.08. | Other Deductibles |
| 2.05.06.02.08.01 | Hai Hail and Tornado: $750,000 combined Property Damage (PD) and Time Element (TE) per **Location** for loss or damage casued by Hail or Tornado |

_____          _____
Authorized Representative                                      Date


_____          _____
Print Name of Authorized Rep.                               Office

23

EDGE-D-101-B (12/10)
9 D

# SECTION III - PROPERTY DAMAGE

## 3.01. COVERED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof or as otherwise provided for in this Policy.

3.01.01. The Insured's interest in buildings (or structures) including new construction, additions, alterations, and repairs that the Insured owns, occupies, leases or rents.

3.01.02. The Insured's interest in Personal Property, including **Improvements and Betterments**.

3.01.03. Property of Others will not extend any Time Element Coverage provided under this Policy to the owner of the property and is limited to property:

3.01.03.01. In the Insured's care, custody or control;

3.01.03.02. In which the Insured has an insurable interest or obligation;

3.01.03.03. For which the Insured is legally liable; or

3.01.03.04. For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

3.01.04. Personal Property of officers and employees of the Insured.

## 3.02. PROPERTY NOT COVERED

This Policy does not insure the following property:

3.02.01. **Money**, precious metal in bullion form, notes, or **Securities**.

3.02.02. Watercraft or aircraft, except when unfueled and manufactured by the Insured.

3.02.03. Spacecraft, satellites, associated launch vehicles and any property contained therein.

3.02.04. Animals, standing timber and growing crops.

3.02.05. Bridges and tunnels when not part of a building or structure, dams, dikes, piers, wharfs, docks or bulkheads.

3.02.06. Land, water or any other substance in or on land; except this exclusion does not apply to:

3.02.06.01. **Land Improvements**, or

3.02.06.02. Water that is contained in any enclosed tank, piping system or any other processing equipment.

3.02.07. **Land Improvements** at a golf course.

3.02.08. Mines, mineshafts, caverns and any property contained therein.

3.02.09. Vehicles of officers and employees of the Insured or vehicles otherwise insured for physical loss or damage.

24

3.02.10.      Transmission and distribution lines situated beyond 1,000 feet of the Insured Location.

3.02.11.      Property in transit, except as otherwise provided by the Transit Coverage of this Policy.

3.02.12.      Contraband or property in the course of illegal transit or trade.

3.02.13.      Property more specifically insured, except for any excess beyond such more specific insurance limit.

3.02.14.      Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers except as provided by the Deferred Payments Coverage of this Policy.

3.02.15.      **Electronic Data**, **Programs** and **Software**, except when they are **Stock in Process**, **Finished Stock**, **Raw Materials**, supplies or **Merchandise** or as otherwise provided by the Computer Systems Damage Coverage or **Valuable Papers and Records** Coverage of this Policy.

## 3.03.      EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

3.03.01.      This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01.      **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

3.03.01.02.      Changes in size, color, flavor, texture or finish.

3.03.01.03.      Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property.

3.03.02.      This Policy excludes:

3.03.02.01.      Loss or damage arising from delay, loss of market, or loss of use.

3.03.02.02.      Indirect or remote loss or damage.

3.03.02.03.      Loss or damage arising from the interference by strikers or other persons with rebuilding, repairing or replacing property or with the resumption or continuation of the Insured's business.

3.03.02.04.      Unexplained disappearance; mysterious disappearance; or shortage disclosed on taking inventory when the factual existence of such shortage is solely dependant on inventory records.

3.03.02.05.      Loss or damage resulting from the Insured's suspension of business activities, except to the extent provided by this Policy.

3.03.02.06.      Any applicable Special Coverage, **Described Cause of Loss**, or portion of coverage if a Limit of Liability is identified as **NCP** in Section II-Declarations.

25

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

**3.03.03.**  This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

**3.03.03.01.**  Nuclear reaction or radiation, any by-product of nuclear reaction, any radiological material or radioactive contamination however caused; but if direct physical loss of or damage to Covered Property by fire or sprinkler leakage results, the Company will pay for the loss or damage caused by the fire or sprinkler leakage.

**3.03.03.02.**  War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, nationalization, confiscation, requisition, seizure or destruction by the government or any public authority, including action in hindering, combating or defending against any of these.  However, destruction by order of governmental or public authority to prevent spread of fire is covered.

**3.03.03.03.**  Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

**3.03.03.04.**  Dishonest, fraudulent or criminal acts by the Insured or any of the Insured's associates, proprietors, partners, officers, employees, directors, trustees or authorized representatives.

This exclusion does not apply to acts of direct physical loss or damage resulting from a **Covered Cause of Loss** intentionally caused by any individual specified above and done without the knowledge of the Insured.  In no event does this Policy cover loss caused by theft by any individual above.

**3.03.03.05.**  Lack of the following services when caused by an event off the Insured Location (except as provided in Off Premises Service Interruption Property Damage and Time Element Coverage of this Policy).  However, if the lack of any of the following services results in a **Covered Cause of Loss**, this exclusion does not apply to the loss or damage caused by the **Covered Cause of Loss**.

**3.03.03.05.01.**  Incoming electricity, fuel, water, gas, steam, refrigerant;

**3.03.03.05.02.**  Outgoing sewage; or

**3.03.03.05.03.**  Incoming or outgoing voice, data or video.

**3.03.04.**  This Policy excludes the following but any resulting physical damage not otherwise excluded is insured:

**3.03.04.01.**  Faulty, inadequate or defective design, specifications, workmanship, construction or materials used.

**3.03.04.02.**  Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked on.

**3.03.04.03.**  Corrosion, depletion, deterioration, erosion, inherent vice, latent defect, rust, wear and tear.

**3.03.04.04.**  Changes of temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

26

EDGE-101-B (12/10)
Page 3  of 50

| 3.03.04.05. | Settling, cracking, shrinking, bulging or expansion of: foundations (including any pedestal, pad, platform or other property supporting machinery), floors, pavements, walls, ceilings or roofs. |
| 3.03.04.06. | Insects, animals or vermin damage. |
| 3.03.04.07. | Cumulative effects of smog, smoke, vapor, liquid and dust. |
| 3.03.05. | Exclusions Applicable to Specific Jurisdictions: |
| 3.03.05.01. | All **Locations** outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico: |
| 3.03.05.01.01. | This Policy excludes loss or damage that is covered under any government or national program, pool or scheme.  This policy shall apply as excess of any amounts recoverable under such programs, pools or schemes, subject to the Policy provisions, including applicable exclusions, deductibles and limits, all as shown in this section and elsewhere in this Policy. |
| 3.03.05.01.02. | This Policy excludes physical loss or damage directly or indirectly caused by or resulting from any **Terrorist Activity** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss. |
| 3.03.05.02. | The Republic of South Africa, Transkei, Ciskei Bophuthatswana, Venda and South West Africa (Namibia): |
| 3.03.05.02.01. | This Policy excludes physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss: |
| 3.03.05.02.01.01. | Civil commotion, labor disturbances, riot, strike, lockout, or public disorder or any act or activity which is calculated or directed to bring about any of the aforegoing. |
| 3.03.05.02.01.02. | War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), or civil war. |
| 3.03.05.02.01.03. | Mutiny, military rising, military or usurped power, martial law, or state of siege or any other event or cause which results in the proclamation or maintenance of martial law or state of siege. |
| 3.03.05.02.01.04. | Insurrection, rebellion or revolution. |
| 3.03.05.02.01.05. | Any act (whether on behalf of any organization, body or person or group of person(s) calculated or directed to overthrow or influence any state or government or any provincial, local or tribal authority by force or by means of fear, terrorism or violence. |
| 3.03.05.02.01.06. | Any act which is calculated or directed to bring about loss or damage in order to further any political aim, objective or cause, or to bring about any social or economic change in protest against any state or government or any provincial, local or tribal authority, or for the purpose of inspiring fear in the public or any section thereof. |
| 3.03.05.02.01.07. | Any attempt to perform any act referred to in 3.03.05.02.01.05. or 3.03.05.02.01.06. |
| 3.03.05.02.01.08. | The act of any lawfully established authority in controlling, preventing, suppressing or in any other way dealing with any occurrence referred to in 3.03.05.02.01. |

27

EDGE-101-B (12/10)
Page 4  of 50

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

| | |
|---|---|
| 3.03.05.02.02. | If the Company alleges that by 3.03.05.02.01. loss or damage is not covered by this Policy, the burden of proving the contrary shall rest on the Insured. |
| 3.03.05.02.03. | Any **Occurrence** for which a fund has been established in terms of the War Damage Insurance and Compensation Act 1976 (No.85 of 1976) or any similar Act operative in any of the territories to which this Policy applies. |

28

# SECTION IV - TIME ELEMENT

## 4.01.        LOSS INSURED

4.01.01.          The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

4.01.02.          There is recovery only to the extent that the Insured is:

4.01.02.01.          unable to make up lost production within a reasonable period of time not limited to the period during which production is **Suspended**;

4.01.02.02.          unable to continue such operations or services during the Period of Liability; and

4.01.02.03.          able to demonstrate a loss of revenue for the operations, services or production **Suspended**.

4.01.03.          The Company insures Time Element loss only to the extent it cannot be reduced by:

4.01.03.01.          The Insured resuming business activities in whole or part;

4.01.03.02.          Using damaged or undamaged property (including **Raw Stock, Stock in Process** or **Finished Stock**) at the Insured Location or elsewhere;

4.01.03.03.          Using the services or property of others;

4.01.03.04.          Working extra time or overtime; or

4.01.03.05.          The use of other **Locations** not covered under this Policy.

4.01.03.06.          Any amount recovered under property damage coverage at selling price for loss or damage to **Merchandise**.

4.01.04.          The Company will include in any calculation the combined operating results of all Insured Locations in determining the Time Element loss.

4.01.05.          In determining the Time Element loss, the Company will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Liability.

## 4.02.        TIME ELEMENT COVERAGES

### 4.02.01.        GROSS EARNINGS-

4.02.01.01.          Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability.

29

4.02.01.02.  Gross Earnings value is determined as follows:

4.02.01.02.01.  The sum of:

4.02.01.02.01.01.  Total net sales value of production;

4.02.01.02.01.02.  Total net sales of **Merchandise**;

4.02.01.02.01.03.  The rental income; and

4.02.01.02.01.04.  Other income derived from the Insured's business activities.

4.02.01.02.02.  Less the cost of the following:

4.02.01.02.02.01.  **Raw Stock** from which production is derived;

4.02.01.02.02.02.  Supplies consisting of materials consumed directly in conversion of **Raw Stock** into **Finished Stock** or in supplying the service(s) sold by the Insured;

4.02.01.02.02.03.  **Merchandise** sold, including related packaging materials; and

4.02.01.02.02.04.  Service(s) purchased from outsiders (not Insured's employees) for resale, which do not continue under contract.

4.02.01.02.03.  Gross Earnings loss is determined as follows:

Gross Earnings value that would have been earned during the Period of Liability, less charges and expenses that do not necessarily continue during the Period of Liability.

Consideration shall be given to the continuation of normal charges and expenses, including **Ordinary Payroll** for the number of consecutive days as stated in the Declarations but not to exceed the limit shown for **Ordinary Payroll**, to the extent necessary to resume the Insured's business activities with the same quality of service that existed immediately preceding the loss.

4.02.01.02.04.  This Policy will also pay the reasonable and necessary expenses incurred (except the cost to extinguish a fire) by the Insured to reduce the amount of Gross Earnings loss during the Period of Liability.  This Policy will pay for such expenses to the extent that they do not exceed the amount of Gross Earnings loss that otherwise would have been payable. This provision will not pay for the cost of permanent repair or replacement of property that has suffered direct physical loss or damage.

4.02.01.02.05.  This Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a Gross Earnings loss payment being greater than the tax liability incurred on the profits that would have been earned had no loss occurred.

4.02.02.  EXTENDED PERIOD OF LIABILITY

Upon the termination of the coverage for Gross Earnings loss under 4.02.01.01. this Policy will continue to pay the actual Gross Earnings loss sustained by the Insured until the earlier of:

4.02.02.01.  The date the Insured could restore its business with due diligence, to the condition that would have existed had no direct physical loss or damage occurred to the Insured's Covered Property; or

4.02.02.02.  The number of consecutive days as stated in the Declarations

30

4.02.02.03.        Exclusion 4.02.06.01.02.01. is deleted during the Extended Period of Liability and is replaced with:

4.02.06.01.02.01.    A reduction in sales after the Extended Period of Liability ends due to suspension, cancellation or lapse of any lease, contract, license or orders.

## 4.02.03.    EXTRA EXPENSE

The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, during the Period of Liability, to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**.

The Company will reduce the amount payable as Extra Expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra Expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**. Extra Expense does not include any Gross Earnings loss or Gross Profit loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

## 4.02.04.    LEASEHOLD INTEREST

The Company will pay for the actual Leasehold Interest loss incurred by the Insured (as lessee) resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to a building (or structure) which is leased and not owned by the Insured, as follows:

4.02.04.01.        If the building (or structure) becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured the present value of the actual rent payable for the unexpired term of the lease, not including any options;

4.02.04.02.        If the building (or structure) becomes partially untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured for the present value of the proportionate amount of the actual rent payable for the unexpired term of the lease, not including any options; or

4.02.04.03.        If the lease is cancelled by the lessor pursuant to the terms of the lease agreement or by operation of law, this Policy will pay the Insured for their **Lease Interest** for the first three (3) months following the loss or damage and for their **Net Lease Interest** for the remaining unexpired term of the lease.

4.02.04.04.        The Insured must use any suitable property or service owned, controlled, or obtainable from any source to reduce the loss.

4.02.04.05.        In addition to the exclusions elsewhere in this Policy, the Leasehold Interest Coverage excludes:

4.02.04.05.01.        Any increase in the Leasehold Interest loss resulting from the suspension, lapse or cancellation of any lease;

4.02.04.05.02.        Any loss from the Insured exercising an option to cancel the lease; or

31

| 4.02.04.05.03. | Any loss from an act or omission by the Insured that constitutes default under the lease. |

## 4.02.05.   GROSS PROFIT

Gross Profit applies to Insured Locations outside of the USA, its territories and possessions and the Commonwealth of Puerto Rico.

| 4.02.05.01. | Gross Profit loss is determined as follows: |

[{**Standard Turnover**} minus {**Turnover** during the Period of Liability}] multiplied by [**Rate of Gross Profit**] plus:

| 4.02.05.01.01. | The expenses, (except the cost to extinguish a fire), that the Insured incurs during the Period of Liability for the sole purpose of minimizing any reduction in **Turnover**. These expenses are not to exceed the amount produced by multiplying the **Rate of Gross Profit** by the amount of any reduction in **Turnover** avoided as a result of such expenses; minus |

| 4.02.05.01.02. | The sum of all expenses, payable out of **Gross Profit**, which cease or are reduced during the Period of Liability; minus |

| 4.02.05.01.03. | **Wages** that continue in excess, of the number of consecutive days as stated in the Declarations or the limit shown, for **Wages**. |

| 4.02.05.02. | If during the Period of Liability property is sold or services rendered elsewhere than at the Insured Location for the benefit of the Insured's business activities either by the Insured or by others on the Insured's behalf, the money paid or payable in respect of such sales or services shall be brought into account in arriving at the **Turnover** during the Period of Liability. |

| 4.02.05.03. | Adjustments will be made if any shortage in **Turnover** due to the direct physical loss or damage is postponed by reason of the **Turnover** being temporarily maintained from accumulated stocks of finished goods in warehouses and/or depots. |

| 4.02.05.04. | Adjustments will be made to **Rate of Gross Profit** and **Standard Turnover** as necessary to provide for: the trend, variations in, or special circumstances affecting the Insured's business activities either before or after the physical loss or damage, or which would have affected the Insured's business activities had the physical loss or damage not occurred. Adjusted figures shall represent as nearly as may be reasonably practicable the results which but for the physical loss or damage would have been obtained during the Period of Liability. |

| 4.02.05.05. | This Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a Gross Profit loss payment being greater than the tax liability of the profits that would have been incurred had no loss occurred. |

| 4.02.05.06. | Exclusion 4.02.06.01.02.01. is deleted for Gross Profit loss and is replaced with: |

| 4.02.06.01.02.01. | A reduction in sales after the Period of Liability ends due to suspension, cancellation or lapse of any lease, contract, license or orders. |

## 4.02.06.   EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Time Element Coverage;

| 4.02.06.01. | This Policy does not insure against: |

32

| | |
|---|---|
| 4.02.06.01.01. | Any loss during any idle period that would have been experienced had the **Suspension** of business activities not occurred.  This includes, but is not limited to, when production, operation, services, delivery or receipt of goods or services or any other business activities would have ceased, or would not have taken place or would have been prevented due to: |
| 4.02.06.01.01.01. | Planned or rescheduled shutdown; |
| 4.02.06.01.01.02. | Strikes or other work stoppage; or |
| 4.02.06.01.01.03. | Any reason other than physical loss or damage insured by this Policy. |
| 4.02.06.01.02. | Any increase in Time Element loss due to: |
| 4.02.06.01.02.01. | Suspension, cancellation or lapse of any lease, contract, license or orders; |
| 4.02.06.01.02.02. | Fines or damages for breach of contract or for late or non-completion of orders; |
| 4.02.06.01.02.03. | Penalties of any nature; or |
| 4.02.06.01.02.04. | Any other consequential or remote factors. |
| 4.02.06.01.03. | Any loss resulting from loss or damage to **Finished Stock**, nor the time required for their reproduction. |
| 4.02.06.01.04. | Any Time Element loss due to physical loss or damage not insured by this Policy on or off of the Insured Location. |
| | However, in the event that a **Suspension** is due to a **Covered Cause of Loss** and during such **Suspension** a loss that is otherwise excluded occurs, the Company will pay for the Time Element loss which is directly caused by the **Covered Cause of Loss** to Covered Property under this Policy. |
| 4.02.06.01.05. | Any Time Element loss resulting from damage to Property of Others; however this exclusion does not apply to Time Element loss suffered by the Insured as a direct result of the damage to Property of Others. |

## 4.03.    PERIOD OF LIABILITY

| | |
|---|---|
| 4.03.01. | The Period of Liability applying to all Time Element Coverages, except Gross Profit and Leasehold Interest, and as shown below or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., is as follows: |
| 4.03.01.01. | For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage.  The expiration of this Policy will not limit the Period of Liability. |
| 4.03.01.02. | For building and equipment under construction:  The equivalent of the above period of time will be applied to the level of business that reasonably would have been achieved after construction and startup would have been completed had there been no direct physical loss or damage.  Due consideration will be given to the actual experience of the business after completion of the construction and startup. |

33

EDGE-101-B (12/10)
Page 10 of 50

State of Minnesota
8/19/2020 11:21 A

4.03.01.03.   For **Stock in Process** and **Merchandise**: The period of time required with the exercise of due diligence and dispatch to restore **Stock in Process** to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services and to replace physically damaged **Merchandise**.

4.03.01.04.   For **Raw Materials** and supplies: The period of time of actual interruption of production or suspension of operations or services resulting from the inability to get suitable **Raw Materials** and supplies to replace **Raw Materials** and supplies damaged, but limited to that period for which the damaged **Raw Materials** and supplies would have supplied operating needs.

4.03.02.   The Period of Liability applying to Gross Profit is as follows:

4.03.02.01.   The period starting from the time of direct physical loss or damage of the type insured against and ending not later than the period of time shown in 2.03.09., during which period the results of the business shall be directly affected by such direct physical loss or damage.   The expiration of this Policy will not limit the Period of Liability.

4.03.02.02.   For property under construction:  The period starting on the date that production, business operation or service would have commenced if physical damage of the type insured against had not happened and ending not later than the period of time shown in 2.03.09., during which period the results of the business shall be directly affected by such damage.  The expiration of this Policy will not limit the Period of Liability.

The **Rate of Gross Profit** and **Standard Turnover** will be based on the experience of the business after construction is completed and the probable experience during the Period of Liability.

4.03.03.   The Period of Liability applying to all Time Element Coverage, except Gross Profit and Leasehold Interest, or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

4.03.03.01.   Making changes to equipment;

4.03.03.02.   Making changes to the buildings or structures except as provided in the Increased Costs of Construction Coverage of the Special Coverages section; or

4.03.03.03.   Re-staffing or retraining employees.

34

EDGE-101-B (12/10)
Page 11 of 50

# SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS

### 5.01.     OPERATION OF SPECIAL COVERAGES & **DESCRIBED CAUSES OF LOSS**:

5.01.01.      Special Coverages & **Described Causes of Loss** are subject to the applicable Limit of Liability and are included within and will not increase the Policy Limit.

5.01.02.      Special Coverages & **Described Causes of Loss** are subject to the Policy provisions, including applicable exclusions and deductibles, all as shown in this section and elsewhere in this Policy, whether or not a Limit of Liability is shown.

5.01.03.      If coverage is afforded under any Special Coverage or **Described Cause of Loss**, the applicable Limit of Liability for that Special Coverage or **Described Cause of Loss** is the most the Company will pay for all the loss or damage described therein even if coverage would otherwise be available under any other part of this Policy.

5.01.04.      If no Limit of Liability is shown in this Policy, the Limit of Liability for that Special Coverage or **Described Cause of Loss** is part of the Policy Limit.

5.01.05.      If **NCP** is shown for any Special Coverage or **Described Cause of Loss** in this Policy, then no coverage is provided for that Special Coverage or **Described Cause of Loss**.

5.01.06.      If two or more Limits of Liability apply to a claim for loss or damage, or some part thereof, the lesser applicable Limit of Liability shall apply to the claim, or to the part thereof.

5.01.07.      The Company will pay no more in any one (1) **Occurrence** than our proportionate share of any applicable Limit of Liability regardless of the number of **Locations** affected by such **Occurrence** and regardless of whether additional or greater limits would otherwise be available under any other part of this Policy.

5.01.08.      Any **Annual Aggregate** limit is the most the Company will pay in the **Policy Year** regardless of the number of **Occurrences**.

5.01.09.      In the event of loss or damage involving any one or more of the following Special Coverage or **Described Causes of Loss**, the Company will pay no more for the total of all such coverage combined than our proportionate share of the Policy Limit.

### 5.02.     DESCRIPTION OF SPECIAL COVERAGES

### 5.02.01.     ACCOUNTS RECEIVABLE

The Company will pay for the actual loss sustained resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to the Insured's accounts receivable records as respects the following:

5.02.01.01.      All sums due the Insured from customers, provided the Insured is unable to collect these sums as a result of direct physical loss or damage to accounts receivable records;

5.02.01.02.      Interest charges on any loan obtained by the Insured to offset impaired collections resulting from direct physical loss of or damage to accounts receivable records but only for such period of time reasonable and necessary for the Insured to resume normal collections;

35

5.02.01.03.   Necessary collection expense in excess of normal collection cost due to direct physical loss of or damage to accounts receivable records; and

5.02.01.04.   Other expenses, when reasonably incurred by the Insured in re-establishing accounts receivable records following direct physical loss of or damage to accounts receivable records.

5.02.01.05.   For the purpose of this insurance, credit card charge records shall be deemed to represent sums due the Insured from customers, until the charge records are delivered to the credit card company.

5.02.01.06.   When there is proof that direct physical loss of accounts receivable records has occurred and the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of loss, the amount payable shall be computed as follows:

5.02.01.06.01.   The monthly average of accounts receivable during the last available twelve (12) months; the reasonable and necessary collection expenses in excess of normal collection costs due to direct physical loss of or damage to accounts receivable records; and the reasonable and necessary expenses incurred in reestablishing accounts receivable records following direct physical loss or damage, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim.

5.02.01.06.02.   The monthly amount of accounts receivable as established in 5.02.01.06.01.above shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred.  Consideration will also be given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

5.02.01.06.03.   The Company shall deduct from the total amounts of account receivable, the amount of accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which the Insured normally would have been unable to collect and for the normal collection costs incurred due to accounts receivable.

5.02.01.07.   The following additional exclusion applies:

This Coverage does not insure against shortage resulting from bookkeeping, accounting, billing errors or omissions, alteration, falsification, manipulation, concealment, destruction or disposal  of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

## 5.02.02.   AMMONIA CONTAMINATION

In the event of direct physical loss of or damage to Covered Property caused by a **Breakdown of Covered Equipment** at a **Scheduled Location**, the Company will pay for resulting **Ammonia Contamination**.

## 5.02.03.   CIVIL OR MILITARY AUTHORITY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**.  That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or

rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

5.02.04.      **COMPUTER SYSTEMS DAMAGE**

The Company will pay for direct physical loss of or damage to the Insured's **Electronic Data, Programs, Software** and the actual Time Element loss sustained, as provided by this Policy, during the **Period of Interruption** directly resulting from mysterious disappearance of code, any failure, malfunction, deficiency, deletion, fault, **Computer Virus** or corruption to the Insured's **Electronic Data, Programs, Software** at an Insured Location. The Company will also pay for such loss or damage that may arise out of or result from any authorized or unauthorized access in, of, or to any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.04.01.      The following additional exclusions apply:

5.02.04.01.01.      The Company will not pay for any loss or damage to **Electronic Data, Programs** or **Software** when they are **Raw Stock, Stock in Process, Finished Stock** manufactured by the Insured, and supplies or other **Merchandise**.

5.02.04.01.02.      Errors or omissions in processing or copying, except when direct physical loss or damage caused by a **Covered Cause of Loss** results. Then only that resulting damage is covered.

5.02.04.01.03.      Loss or damage to **Electronic Data, Programs** or **Software** from errors or omissions in programming or machine instructions.

5.02.05.      **CONTINGENT TIME ELEMENT**

This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** located worldwide, except for in the following:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina - Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzia, Laos, Lebanon, Lesotho, Liberia, Lybia, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka,

EDGE-101-B (12/10)
Page 14 of 50

State of Minnesota
8/19/2020 11:21 A

Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

**5.02.05.01.** As respects Contingent Time Element:

**5.02.05.01.01.** The Insured will influence and cooperate with the **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** in every way and take any reasonable and necessary action, including the use of other machinery, supplies or locations, to mitigate the loss payable hereunder.

**5.02.05.01.02.** In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

**5.02.05.01.03.** 4.02.06.01.03. does not apply.

**5.02.05.02.** As respects **Indirect Dependent Time Element Locations** and **Attraction Properties** any Time Element loss resulting from physical loss or damage caused by or resulting from Earthquake, **Flood,** or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded.

**5.02.06.** **DEBRIS REMOVAL**

This Policy covers the reasonable and necessary costs incurred to demolish and remove debris of property from an Insured Location that remains following direct physical loss or damage resulting from a **Covered Cause of Loss.** This includes the cost to demolish the physically undamaged portion of such property insured due to the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location.

**5.02.06.01.** This Coverage does not insure the costs to remove:

**5.02.06.01.01.** Property Not Covered that is **Contaminated**; or

**5.02.06.01.02.** The **Contaminant** in or on Property Not Covered, whether or not the **Contamination** results from direct physical loss or damage caused by a **Covered Cause of Loss.** This Coverage shall cover the costs of removal of **contaminated** Covered Property or the **Contaminant** in or on Covered Property only if the **Contamination,** due to the actual not suspected presence of **Contaminant(s),** of the debris resulted from direct physical loss or damage caused by a **Covered Cause of Loss.**

**5.02.07.** **DECONTAMINATION COSTS**

If Covered Property is **Contaminated** from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and there is in force at the time of the loss any law or ordinance regulating **Contamination** due to the actual not suspected presence of **Contaminant(s),** then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such **Contaminated** Covered Property in a manner to satisfy such law or ordinance. This Coverage applies only to that part of Covered Property so **Contaminated** due to the actual not suspected presence of **Contaminant(s)** as a result of direct physical loss or damage. The Company is not liable for the costs required for removing **Contaminated** uninsured property nor

38

the **Contaminant** therein or thereon, whether or not the **Contamination** results from a **Covered Cause of Loss**.

5.02.08.                **DEFERRED PAYMENTS**

This Policy will pay for direct physical loss of or damage caused by a **Covered Cause of Loss**, to Personal Property (of the type insurable under this Policy).  Such property must be sold by the Insured under a conditional sale, trust agreement, or installment or deferred payment plan.  Such property must have been delivered to the buyer.  Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to collect outstanding amounts due or to regain possession of the property.

5.02.08.01.                Under this Coverage the Policy excludes loss or damage:

5.02.08.01.01.                Pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured;

5.02.08.01.02.                From theft or conversion by the buyer of the property after the buyer has taken possession of such property;

5.02.08.01.03.                To the extent the buyer continues payments; or

5.02.08.01.04.                Not within the covered Territory of this Policy.

5.02.09.                **ERRORS AND OMISSIONS**

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property which is not payable under this Policy because of an error or unintentional omission at the time of Policy inception in the description or inclusion of any **Location** owned, occupied, leased or rented by the Insured to be Covered Property; but only to the extent this Policy would have provided coverage had the error or unintentional omission not been made.

The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property.

The Insured must report any error or unintentional omission as soon as possible.

5.02.09.01.                This Coverage does not apply:

5.02.09.01.01.                If there is coverage available under Newly Acquired Coverage or Miscellaneous Unnamed Locations Coverage of this Policy; or

5.02.09.01.02.                For any error or omission in limits or deductibles.

5.02.10.                **EXPEDITING COSTS**
This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and to expedite the permanent repair or replacement of such damaged property.

39

This Coverage excludes costs recoverable elsewhere in this Policy, or of permanent repair or replacement of damaged property.

**5.02.11.**   FINE ARTS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Fine Arts** at an Insured Location.

**5.02.11.01.**   This Policy excludes loss or damage to **Fine Arts** directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

**5.02.11.01.01.**   Breakage of bric-a-brac, glassware, marble, porcelain, statuary, and similar fragile property resulting from the article being dropped or knocked over, whether intentional or accidental;

**5.02.11.01.02.**   Any repairing, restoring or retouching process; or

**5.02.11.01.03.**   Any pre-existing condition.

**5.02.12.**   FIRE DEPARTMENT SERVICE CHARGE

The Company will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department is called to save or protect Covered Property from a **Covered Cause of Loss** at an Insured Location. The Fire Department Service Charges are those assumed by contract or agreement prior to loss or damage or required by local ordinance.

**5.02.13.**   IMPOUNDED WATER

The Company will pay for the actual Time Element loss as provided by this Policy, sustained by the Insured during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by the lack of a supply of water from a water supply stored behind dams or in reservoirs on the Insured Location. The water supply must be used as a **Raw Material** or for generation of power or for other manufacturing purposes. The inadequate supply of water must result from the release of the water from the water supply and be caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to the dam, reservoir, or connected equipment. The Company will pay for the actual Time Element loss sustained, in excess of the applicable deductible, but not to exceed the number of consecutive days as stated in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced, with the exercise of due diligence and dispatch, up to the limit applying to this Coverage.

**5.02.14.**   INCREASED COST OF CONSTRUCTION

**5.02.14.01.**   This Policy covers the reasonable and necessary costs incurred, described in 05.02.14.03., to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

**5.02.14.01.01.**   Such law or ordinance is in force on the date of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property; and

**5.02.14.01.02.**   Its enforcement is a direct result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

40

5.02.14.02.    This Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply before the loss, even when the building was undamaged, and the Insured did not comply.

5.02.14.03.    This Coverage, as respects the property insured in 5.02.14.01., covers:

5.02.14.03.01.    The increased cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

5.02.14.03.02.    The increased cost to rebuild physically undamaged property that has been demolished with materials and in a manner to satisfy such law or ordinance, to the extent that such costs result when the demolition of the insured property is required to satisfy such law or ordinance.

5.02.14.03.03.    This Coverage applies only to the costs described in 5.02.14.03. The portion of the cost to repair, rebuild or replace property with property of like kind and quality is not part of this Coverage and is to be considered direct physical loss of or damage under 1.01.

5.02.14.04.    This Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of **Contamination**.

5.02.14.05.    The Company's maximum liability for this Coverage in any **Occurrence** will not exceed the actual cost incurred in 5.02.14.03. up to the limit applying to this Coverage.

5.02.15.    INGRESS/EGRESS

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers or employees is prevented by physical obstruction due to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time ingress or egress remains prevented by physical obstruction but not to exceed the number of consecutive days as stated in the Declarations following such obstruction up to the limit applying to this Coverage.

5.02.16.    LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of **Contaminant**(s) from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of such **Contaminant**(s) is a result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

5.02.16.01.    This Policy excludes the cost to cleanup, remove and dispose of **Contaminant**(s) from such property:

5.02.16.01.01.    At any **Location** where the building or structure is not insured by this Policy;

5.02.16.01.02.    At any property insured under Newly Acquired, Errors and Omissions or Miscellaneous Unnamed Location Coverage provided by this Policy; or

41

EDGE-101-B (12/10)
Page 18 of 50

| | |
|---|---|
| 5.02.16.01.03. | When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss. |

**5.02.17.**  LAND IMPROVEMENTS

The Company will pay for the additional cost of reclaiming, restoring or repairing **Land Improvements** resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property at an Insured Location.

| | |
|---|---|
| 5.02.17.01. | As respects lawns, plants, shrubs or trees direct physical loss or damage directly or indirectly caused by or resulting from Earthquake, **Flood**, or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded. |

**5.02.18.**  MISCELLANEOUS PERSONAL PROPERTY

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to the following property while within the coverage territory but away from an Insured Location.

| | |
|---|---|
| 5.02.18.01. | The Insured's interest in Personal Property; and |
| 5.02.18.02. | Property of Others that is: |
| 5.02.18.02.01. | In the Insured's care, custody or control; |
| 5.02.18.02.02. | In which the Insured has an insurable interest or obligation; |
| 5.02.18.02.03. | For which the Insured is legally liable; or |
| 5.02.18.02.04. | For which the Insured has agreed in writing prior to any loss or damage to provide coverage. |
| 5.02.18.02.05. | This Coverage excludes property in transit or insured under any other coverage in this Policy. |

**5.02.19.**  **MISCELLANEOUS UNNAMED LOCATIONS**

| | |
|---|---|
| 5.02.19.01. | The Company will pay for: |
| 5.02.19.01.01. | Direct physical loss of or damage caused by a **Covered Cause of Loss** at a **Miscellaneous Unnamed Location**; and |
| 5.02.19.01.02. | The actual Time Element loss sustained by the Insured, during the Period of Liability, resulting from the **Suspension** of the Insured's business activities if such **Suspension** is caused by direct physical loss or damage caused by a **Covered Cause of Loss**; |
| 5.02.19.02. | To the following: |
| 5.02.19.02.01. | Covered Property at a **Miscellaneous Unnamed Location** that has been reported to the Insurer, but agreed by the Insurer not to be scheduled; |
| 5.02.19.02.02. | Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is under the Insured's care, custody and control; or |

42

5.02.19.02.03.    Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is not under the Insured's care, custody and control.

5.02.19.03.    This Coverage will not apply for loss or damage that is payable under any other provision in this Policy.

5.02.20.    NEWLY ACQUIRED

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property (of the type insurable under this Policy), at any **Location** purchased, leased or rented by the Insured after the inception date of this Policy.  This Coverage applies from the date of purchase, lease or rental.  The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Coverage provided above will end at the earliest of: the Policy expiration, the number of consecutive days as stated in the Declarations after the Insured first acquired an interest in the Covered Property, or when the Insured reports the **Location** to the Insurer.

5.02.21.    OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS

The Company will pay for direct physical loss of or damage to Covered Property and for the actual Time Element loss sustained as provided by the Policy during the **Period of Service Interruption** at Insured Locations caused by the interruption of an incoming service consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data or video or from the lack of outgoing voice, data, video or sewage service.

The lack of service must result from direct physical loss of or damage caused by a **Covered Cause of Loss** to property  (other than satellites but including transmission and distribution lines) of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable services.

This Coverage will only apply when the **Period of Service Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section.   If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the applicable deductible, but not more than the limit applying to this Coverage.

5.02.21.01.    Exclusions 3.03.01.02. and 3.03.04. do not apply to Off Premises Service Interruption Property Damage and Time Element Loss.

5.02.21.02.    The following additional exclusion applies:

This Policy excludes direct physical  loss or damage and Time Element loss directly or indirectly caused by or resulting from the interruption of such services, when such interruption is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

43

EDGE-101-B (12/10)
Page 20 of 50

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

**5.02.22.**     PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from loss or damage payable under this Policy for which the Company has accepted liability.

This Coverage will not include the fees and costs of attorneys, **Public Adjusters**, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them, nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

**5.02.23.**     PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers, up to the limit applying to this Coverage:

**5.02.23.01.**     The reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a **Covered Cause of Loss** to such Covered Property; and

**5.02.23.02.**     The Gross Earnings loss or Gross Profit loss sustained by the Insured for a period of time not to exceed the hours listed in the Declarations prior to and after the Insured first taking reasonable action for the temporary protection and preservation of Covered Property.

**5.02.23.03.**     This Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

**5.02.24.**     RADIOACTIVE CONTAMINATION

The Company will pay for direct physical loss of or damage to Covered Property at an Insured Location caused by sudden and accidental radioactive contamination, including resultant radiation damage, provided:

**5.02.24.01.**     Radioactive contamination arises out of material at the Insured Location:

**5.02.24.01.01.**     Which is commonly known to be radioactive;

**5.02.24.01.02.**     Is used as part of the Insured's business activities; and

**5.02.24.01.03.**     There is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in that type of nuclear reactor at the Insured Location.

**5.02.25.**     RESEARCH AND DEVELOPMENT

The Company will pay for the fixed charges and fixed expenses (including **Ordinary Payroll**) actually incurred by the Insured directly attributable to the interruption of research and development project(s) after direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) up to the limit applying to this Coverage.

**5.02.25.01.**     Coverage starts when there is direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) and ends the earlier of:

44

State of Minnes
8/19/2020 11:21 /

5.02.25.01.01.        The time period stated in the Declarations; or

5.02.25.01.02.        When the research and development project(s) has resumed.

5.02.25.02.           This Policy will not pay for any other Time Element loss under this Coverage.  Loss under this Coverage does not include any fixed charges and/or fixed expenses (including **Ordinary Payroll**) otherwise payable elsewhere in the Policy.

## 5.02.26.        RESEARCH ANIMALS

The Company will pay for death of Research Animals and the Insured's reasonable and necessary costs incurred to research, replace or restore the animal lost to the condition that existed prior to the loss when caused by a **Covered Cause of Loss**, while anywhere within this Policy's Territory, including while in transit, when the loss is in excess of the amount stated in the Declarations.  No deductible applies to this Coverage.  This Coverage does not apply to loss of the Research Animals that cannot be replaced to the condition that existed prior to the loss.

5.02.26.01.           The following additional exclusions apply:

5.02.26.01.01.        Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition, or abortion;

5.02.26.01.02.        Errors or omission in processing and/or failure on the part of the Insured to provide nourishment, medicine or sanitary conditions;

5.02.26.01.03.        **Contamination** of animal, food or medicine;

5.02.26.01.04.        The intentional slaughter of animals;

5.02.26.01.05.        Escape, unless directly resulting from a **Covered Cause of Loss**; or

5.02.26.01.06.        Death or destruction resulting from activities of any animal, unless resulting from a **Covered Cause of Loss**.

## 5.02.27.        SPOILAGE

In the event of spoilage of **Raw Materials, Stock in Process, Finished Stock** or **Merchandise**, caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, the Company will pay for such spoilage provided the **Raw Materials, Stock in Process, Finished Stock** or **Merchandise** is in storage or in the course of being manufactured.

## 5.02.28.        TENANTS PROHIBITED ACCESS

The Company will pay for the actual Gross Earnings or Gross Profit loss sustained, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if access to that **Location** by the Insured's suppliers, customers or employees is physically obstructed due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location.  This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section.  If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.28.01.           The following additional exclusion applies:

45

EDGE-101-B (12/10)
Page 22 of 50

This Policy excludes loss directly or indirectly caused by or resulting from prohibited access to the Insured Location, when such prohibited access is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the use of such **Location** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 5.02.29.     TRANSIT

5.02.29.01.     The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property while in transit within the coverage Territory and including:

5.02.29.01.01.     The Insured's interest in Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. The Insured's contingent interest is admitted.

5.02.29.01.02.     The Insured's loss of property caused by fraud or deceit perpetrated by any person or persons who may represent themselves to be the proper party or parties to receive goods for shipment or accept goods for delivery.

5.02.29.01.03.     The Insured's legal liability as a carrier of lawful goods and merchandise by vehicles under bills of lading or shipping receipts issued by the Insured, while in the Insured's custody or in the custody of connecting carriers in transit.

5.02.29.01.04.     The Insured's interest in general average, salvage and other charges on shipments covered hereunder.

5.02.29.01.05.     The Insured is granted the privilege to ship under released or limited bills of lading or shipment receipts.

5.02.29.02.     The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at the destination Location, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Company will pay for the reasonable and necessary extra expenses incurred by the Insured, during the Period of Liability, to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy.

The Company will reduce the amount payable as extra expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy. Extra expense does not include any Gross Earnings loss or Gross Profit loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

5.02.29.03.     Coverage starts when Covered Property is in or on the transporting vehicle and the vehicle leaves the originating Location and ends upon arrival at the destination Location and the goods are transferred to the custody and control of the consignee, warehouseman, or receiver.

5.02.29.04.     The Company will not pay for loss or damage to:

46

State of Minnesc
8/19/2020 11:21 /

| | |
|---|---|
| 5.02.29.04.01. | Property while waterborne, except: |
| 5.02.29.04.01.01. | While on the navigable inland waterways of a country; |
| 5.02.29.04.01.02. | While on roll-on/roll-off ferries between countries; or |
| 5.02.29.04.01.03. | While on coastal shipments. |
| 5.02.29.04.02. | Property shipped by mail from the time it passes into custody of any governmental postal service; |
| 5.02.29.04.03. | Property for sale while in the care, custody or control of the Insured's sales persons or representatives; |
| 5.02.29.04.04. | Any conveyance used for property in transit; |
| 5.02.29.04.05. | Property insured under any import or export ocean marine insurance; or |
| 5.02.29.04.06. | Property under airborne shipment unless by regularly scheduled passenger airlines or air freight **Carriers**. |
| 5.02.29.05. | If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination. |

**5.02.30.**       **VALUABLE PAPERS AND RECORDS**

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Valuable Papers and Records** at an Insured Location. For all **Valuable Papers and Records**, the Company will pay for the value of the blank personal property, and the Insured's reasonable and necessary costs incurred to research, replace or restore the information lost or damaged thereon.

Except:

For **Electronic Data** and/or **Program (Software)**, the Company will pay for the value of the blank **Media**, and the cost of reproducing the **Electronic Data** and/or **Program (Software)** from duplicates or originals of the previous generation of the data.

This Coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

**5.02.31.**       **NEW CONSTRUCTION OR ADDITIONS**

The Company will pay, up to the limit applying to this Coverage, for:

| | |
|---|---|
| 5.02.31.01. | Direct physical loss of or damage to Property of the type insurable under this policy that is **New Construction or Additions**; |
| 5.02.31.02. | The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion**; and |
| 5.02.31.03. | The Actual Loss Sustained incurred by the Insured as **Soft Costs** during such **Delay in Completion**. |
| 5.02.31.04. | The Coverage for Time Element will only apply when the **Delay in Completion** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. |

47

EDGE-101-B (12/10)
Page 24 of 50

State of Minnesota
8/19/2020 11:21 A

If the **Qualifying Period** is exceeded, then this Policy will pay up to the number of consecutive days stated in the Declarations after the **Qualifying Period**.

5.02.31.05.    The following additional exclusion applies to coverage provided in **NEW CONSTRUCTION OR ADDITIONS**:

This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from the effects of rain, sleet, or snow, whether or not driven by wind, on the interior portion of buildings under construction or addition when the installation of the roof, walls or windows of such buildings has not been completed regardless of any other cause or event, whether or not otherwise insured under this Policy, contributing concurrently or in any other sequence to the loss.

5.02.32.    OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION

This Policy covers direct physical loss or damage to property (of the type insurable under this Policy) caused by a **Covered Cause of Loss** that is under contract to be used in a construction project at an Insured Location. Coverage attaches at the time such property is delivered to the Insured or its contractor (with respect to the property under construction) by the manufacturer or supplier and such property is located at a storage site within this Policy's Territory but away from the Insured Location.

This Coverage includes necessary expendable materials and supplies to be used in the construction project but does not include any property owned or rented by the contractor.

5.02.33.    CURRENCY DEVALUATION

The Company will pay any deficiency in the amount collectible under a local insurance policy caused by devaluation of the currency of the country where the local insurance policy is written. The Insured agrees to adjust deficiencies as soon as practicable after the date of the currency's devaluation.

5.02.34.    DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS

The insurance under this policy applies on a Difference in Conditions basis and a Difference in Limits basis when a **Specific Local Policy** is in force, as follows:

5.02.34.01.    Difference in Conditions - provided there is a loss or damage where:

There is a **Specific Local Policy**(ies) intended to respond to such loss or damage in that country; and due to the difference in its terms, including but not limited to a coinsurance or average clause, does not provide coverage for such loss or damage.

In that event, under this provision, we will pay for such loss or damage where coverage is provided under the terms and conditions of this policy and when the **Covered Cause of Loss** or definitions or conditions set forth under this policy and its endorsements are broader in meaning or scope than those of the local insurance policy(ies).

5.02.34.02.    Difference In Limits - provided there is a loss or damage where:

There is a **Specific Local Policy**(ies) intended to respond to such loss or damage in that country; and such **Specific Local Policy**(ies) cover, in whole or part, the same loss or damage as this policy covers.

48

In that event, under this provision, we will pay the difference between the applicable **Specific Local Policy**(ies) limits and the applicable limits in this policy, provided:

5.02.34.02.01.     Coverage is provided under the terms and conditions of this policy; and

5.02.34.02.02.     The limits under all **Specific Local Policy** (ies) have been exhausted and the deductible(s) under all such policies have been applied.

5.02.34.03.     The Company will not be liable for non-recovery under a **Specific Local Policy** due to insolvency or any financial failure with respect to such **Specific Local Policy**.

5.02.34.04.     It is understood and agreed that no coverage is provided if the Insured is unable to recover in full any loss under any other insurance, if the inability to recover results from the Insured's failure to comply with any condition of such other insurance.

5.02.34.05.     It is understood and agreed that all **Specific Local Policy** (ies) that are in force at the inception of this policy will be maintained in full force and effect during the term of this policy. Renewals or replacement of such a policy(ies) will not be more limited or restrictive than the expiring coverage.

5.02.34.06.     Any coverage provided by the **Specific Local Policy**(ies) that is not provided in this policy does not extend to this policy.

5.02.34.07.     The following additional exclusions apply to coverage provided in DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS:

5.02.34.07.01.     This Coverage does not cover any loss or damage at any location where this policy acts as the **Specific Local Policy**.

5.02.34.07.02.     This Coverage does not cover loss or damage that is covered under any government or national program, pool or scheme.

## 5.02.35.  FINANCIAL INTEREST OF THE FIRST NAMED INSURED

The Company will pay for the **First Named Insured's** financial loss resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to property (of the type insurable under this Policy) in a **Prohibited Jurisdiction**. Payment will only be to the **First Named Insured** as respects its insurable interest and only to the extent the loss is not otherwise insured, provided the local law in the **Prohibited Jurisdiction** prohibits coverage under or payment for loss under **Non-Admitted Insurance**, Difference In Conditions Insurance or Difference In Limits Insurance.

The most the Company will pay under this Coverage is the amount that would have been payable under this Policy if local law allowed coverage under or payment for loss under **Non-Admitted Insurance**, Difference In Conditions Insurance, or Difference In Limits Insurance.

Notwithstanding the coverage for Financial Interest of the **First Named Insured** granted under this Coverage, it is understood and agreed that any subsidiary located in any **Prohibited Jurisdiction** where local law prohibits coverage under or payment for loss under **Non-Admitted Insurance**, Difference In Conditions Insurance, or Difference In Limits Insurance, is not party to or a beneficiary under this Policy and has no rights under it.

5.0.235.01.     This Coverage does not apply to property:

5.02.35.01.01.     Located in any country listed in 1.03.01. or 1.03.02.

49

5.02.35.02.  Loss under this Coverage does not include anything otherwise payable elsewhere in the Policy.

5.02.35.03.  The following additional exclusion applies:

Netherlands: This Policy excludes physical loss or damage directly or indirectly caused by or resulting from the failure or overflowing of dikes, dams, floodgates or other similar works, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss. However, if there is ensuing physical loss or damage by fire or explosion, the exclusion does not apply to the loss or damage caused by the fire or explosion.

## 5.02.36.  TAX LIABILITY

If the amount of loss covered hereunder cannot be paid in the country where the loss occurred and the corporate tax rate is higher in the country where the payment occurs, and the payee is required to pay tax on the claim proceeds or has realized a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence, the Company will be liable for an additional loss payment (ALP) in accordance with the following formula:

$$ALP = [((100\% - a) / (100\% - b)) - 1] \times c$$

Where:

ALP = additional loss payment
a = actual effective corporate tax rate in the country where the loss occurred;
b = actual effective corporate tax rate in the country where the loss payments are received;
c = actual loss otherwise payable under this Policy.

Actual Effective Corporate Tax Rate is the amount produced by the following calculation:

Corporate Income Tax to be paid divided by pre-tax Financial Accounting Income for the annual accounting period in which the claims proceeds are paid.

Corporate Income Tax represents the tax payable (after applicable credits, exemptions, rebates or other reductions tax) or reduction of tax benefit items (credits, net operating losses or other similar attributes) related to taxable Financial Accounting Income (income less deductions as determined under the applicable tax law).

Financial Accounting Income shall be determined under generally accepted accounting principles or standards.

Financial Accounting Income and Corporate Income Tax shall be determined in the local currency of the country where the loss occurred with respect to "a" and where the loss payments are received with respect to "b" above.

The ALP will be paid only after receipt of documentation supporting the calculation of "a" and "b" above and a certification by the Chief Executive Officer or Chief Financial Officer of the payee, that to the best of his or her knowledge, based on a review of all applicable financial and tax data:

The payee is required to pay tax on the claim proceeds or will realize a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence; and

50

The tax to be paid and pre-tax Financial Accounting Income data provided is accurate and complete and fairly presents in all material respects the financial results of the payee in the applicable country.

5.02.36.01.  Notwithstanding the coverage for tax payment granted under this Coverage, it is understood and agreed that the Insured will cooperate with the Company in making every reasonable effort to have the amount of loss paid in the country in which the loss occurred, where permitted by law. In addition the Insured agrees to try to mitigate any loss that the Company may be responsible for under this Tax Liability Coverage.

5.02.36.02.  With respect to payments made under this Coverage, the Company may examine and audit the Insured's books and records at any time up to three years after payment.

### 5.02.37.  TENANTS AND NEIGHBORS LIABILITY

The Company will pay for the legal liability imposed on the Insured in a country with the Napoleonic Code or similar civil or commercial code resulting from direct physical loss or damage caused by a **Covered Cause of Loss** to Covered Property:

5.02.37.01.  Of which the Insured is a tenant;

5.02.37.02.  Where such physical loss or damage has spread to the Insured's neighbors or co-tenants; and

5.02.37.03.  Where the Insured's tenants or sub-tenants incur such physical loss or damage as a result of construction defects or lack of maintenance.

## 5.03.  DESCRIBED CAUSES OF LOSS

### 5.03.01.  **BREAKDOWN** OF EQUIPMENT

The Company will pay for direct physical loss of or damage to **Covered Equipment,** Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, which manifests itself by physical damage at the time of its **Occurrence** and necessitates repair or replacement; subject to the terms and conditions set forth in this Policy, regardless of any other cause or event contributing concurrently or in any other sequence of loss.

All **Breakdown(s)** at any one Insured Location that manifest themselves at the same time and are the result of the same cause will be considered one **Breakdown**.

### 5.03.02.  **EARTH MOVEMENT**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Earth Movement** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Earth Movement** within the terms and conditions of this Policy.

All **Earth Movement** that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

51

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

5.03.03.         **FLOOD**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Flood** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism or sprinkler leakage will not be considered to be loss by **Flood** within the terms and conditions of this Policy.

5.03.04.         **NAMED STORM**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Named Storm**; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Named Storm** within the terms and conditions of this Policy.

All **Named Storm** damage that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

52

State of Minnesot
8/19/2020 11:21 /

# SECTION VI –GENERAL POLICY CONDITIONS

**6.01.**      AGGREGATION – INTERNATIONAL CONDITION

In the event that the applicable Limit of Liability or any Aggregate Limit stated herein is exceeded by payments made under **"the Policies"** that the Company has confirmed to be issued, directed or placed as part of the **International Insurance Program**, the Insured agrees to reimburse the Company for any amount paid that exceeds such Limit of Liability or any Aggregate Limit.

Any amount due to under the terms of this clause shall be paid by the Insured within 28 days notice from the Company.  The Company will give details of the payment and advise the Insured where and to whom payment is to be made.

**6.02.**      CANCELLATION/NON-RENEWAL

**6.02.01.**      Cancellation

**6.02.01.01.**      The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

**6.02.01.02.**      The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

**6.02.01.02.01.**      The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

**6.02.01.02.02.**      The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

**6.02.01.03.**      The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

**6.02.01.04.**      Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

**6.02.01.05.**      If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount.  The cancellation will be effective even if the Company has not made or offered a refund.

**6.02.01.06.**      If notice is mailed, proof of mailing will be sufficient proof of notice.

**6.02.01.07.**      If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

**6.02.02.**      Non-renewal

**6.02.02.01.**      The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, the number of days before the non-renewal, as permitted by law in the jurisdiction where in the property is located.

53

**6.03.**   **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this Policy is provided solely as a matter of convenience or information for the addressee(s) or holder(s) of such certificate of insurance, except as provided under the Policy when a loss payee(s) or mortgagee(s) are named. The certificate does not amend, extend or alter the coverage afforded by the Policy.

In the event this policy is cancelled pursuant to the CANCELLATION/NON-RENEWAL provision, other than for nonpayment of premium, and except as provided otherwise, the Company shall endeavor to provide notice of cancellation to those entities set out in the certificates of insurance on file with the Company, as soon as practicable, after notifying the **First Named Insured**. However, in no event will failure to provide notice to entities set out in certificates of insurance waive the Company's right or ability to cancel the policy as allowed by law.

The Company hereby authorizes the Producer named on the Policy to issue certificates of insurance consistent with the foregoing.

**6.04.**   **CONCEALMENT, MISREPRESENTATION OR FRAUD**

**6.04.01.**   This Policy is void as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It is also void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**6.04.01.01.**   This Policy;

**6.04.01.02.**   The Covered Property;

**6.04.01.03.**   The Insured's interest in Covered Property; or

**6.04.01.04.**   A claim under this Policy.

**6.05.**   **CONTROL OF DAMAGED GOODS**

In the event of direct physical loss of or damage caused by a **Covered Cause of Loss** to **Finished Stock** or **Merchandise** that carries the Insured's brand or trade name; this Policy gives control of the physically damaged property as follows, all subject to 6.05.05.

**6.05.01.**   The Insured will have full rights to the possession, control and disposition of damaged property in the event of insured direct physical loss or damage to such property provided the Company agrees that the property is physically damaged.

**6.05.02.**   The Insured, using reasonable judgment, will decide if the Insured can reprocess or sell the physically damaged property.

**6.05.03.**   If the Company takes possession of property that carries the Insured's brand or trade name that has sustained direct physical loss or damage, the Company will pay for the Insured or the Insured representative to stamp "salvage", remove, or obliterate the brand, label or trade name on the property or its containers if doing so will not damage the property. In either event, the Insured must re-label such property or its containers to comply with any applicable law.

**6.05.04.**   The salvage value of property that is claimed damaged shall be determined at the time of loss.

**6.05.05.**   The Insured will allow the Company to deduct from the amount of loss otherwise payable, the fair market value of such salvage, which could have been obtained on any sale or other disposition of goods or products through normal insurance industry salvage practices.

54

## 6.06.    CURRENCY FOR LOSS PAYMENT

6.06.01.    Losses will be adjusted and paid in the currency designated in 2.02., unless directed otherwise by the Insured.  In the event of a loss adjustment involving **Local Currency**, the exchange-selling rate will be calculated as follows:

6.06.01.01.    As respects the calculation of deductibles and Limits of Liability, the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02.    As respects direct physical loss or damage to Real and Personal Property:

6.06.01.02.01.    The cost to repair or replace Real and Personal Property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02.02.    If such property is not replaced or repaired, the conversion will be based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss.

6.06.01.03.    As respects Time Element loss the conversion will be based on the average of the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss and the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the last day of the Period of Liability.

6.06.01.04.    If the Midwest Ed. of The Wall Street Journal was not published on the stipulated date, or the rate of exchange was not published on the stipulated date, the rate of exchanged will be as published on the next business day the rate is published.

## 6.07.    INSPECTIONS AND SURVEYS

6.07.01.    The Company has the right but not the obligation to make inspections and surveys at any time, to give the Insured reports on the conditions found, and to recommend changes.

6.07.02.    Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  The Company does not make safety inspections.  The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, nor does it represent that conditions are safe, healthful, or comply with laws, regulations, codes or standards.

6.07.03.    This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

## 6.08.    JOINT LOSS

This clause applies only if all of the following requirements are met:

6.08.01.    The **BREAKDOWN OF EQUIPMENT** Coverage is shown as NCP in the Declarations of this Policy and the **BREAKDOWN** OF EQUIPMENT Coverage carried by the Named Insured, insuring the Covered Property contains a similar Joint Loss provision with substantially the same requirements, procedures, and conditions as contained in this Policy.

6.08.02.    The loss or damage to the Covered Property was caused by a **Covered Cause of Loss** for which both the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage admit to some liability for payment under the respective policies.

55

Exhibit A to Complaint

6.08.03.    The total amount of loss is agreed to by the Insured, the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.04.    The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage disagree as to the amount of loss that both should pay that is attributable to:

6.08.04.01.    An accident covered under the **BREAKDOWN** OF EQUIPMENT Coverage; and

6.08.04.02.    A **Covered Cause of Loss** under the Property Coverage.

6.08.05.    If the requirements listed above are satisfied, the Insurer(s) of the Property Coverage and of the **BREAKDOWN** OF EQUIPMENT Coverage will make payments to the extent, and in the manner, described in the following:

6.08.05.01.    The Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by **BREAKDOWN** OF EQUIPMENT Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.02.    The Insurer(s) of the Property Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by the Property Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.03.    The amount in disagreement to be paid by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the Insurer(s) of the Property Coverage under this Joint Loss provision shall not exceed the amount payable under the equivalent loss adjustment provisions of the Insurer(s) of the Property Coverage and the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.06.    The amount to be paid under this Joint Loss provision shall not exceed the amount that would have been paid had no Property Coverage or, in the alternative, no **BREAKDOWN** OF EQUIPMENT Coverage been in effect at the time of loss.

6.08.07.    Acceptance by the Insured of sums paid under this Joint Loss provision does not alter, waive or surrender any other rights against the Insurer(s).

6.08.08.    Additional Conditions:

6.08.08.01.    The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage agree to submit their differences to arbitration within 90 days after payment of the loss under the terms of this Joint Loss provision.

6.08.08.02.    The Insured agrees to cooperate with any arbitration procedures.  There will be three arbitrators: one will be appointed by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the one will be appointed by the Insurer(s) of the Property Coverage.  The two arbitrators will select a third arbitrator.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  A decision agreed to by two of the three arbitrators will be binding on both parties.  Judgment on any award can be entered in any court that has jurisdiction. The Insurer(s) of the BREAKDOWN OF EQUIPMENT Coverage will pay their designated arbitrator and the Insurer(s) of the Property Coverage will pay their designated arbitrator. The Insurer(s) of the BREAKDOWN OF EQUIPMENT and the Insurer(s) of the Property Coverage will split the expense of the third arbitrator.

**56**

EDGE-101-B (12/10)
Page 33 of 50

Filed in District Court
State of Minnesota
8/19/2020 11:21 /

**6.09.**   **JURISDICTION**

Any disputes arising hereunder will be exclusively subject to the jurisdiction of a court of competent jurisdiction within the USA.

**6.10.**   **LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS**

**6.10.01.**   When specified in the Policy or in Certificates of Insurance on file with the Company, the Company will pay for covered loss to property insured under this Policy to each:

**6.10.01.01.**   Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, in order of precedence; or

**6.10.01.02.**   Mortgagee as its interest may appear, in order of precedence.

**6.10.02.**   The interest of the specified Lender or Mortgagee in property insured under this Policy will not be invalidated by:

**6.10.02.01.**   Any act or neglect of any Insured.

**6.10.02.02.**   Commencement of foreclosure, notice of sale, or similar proceedings with respect to the property.

**6.10.02.03.**   Change in the title or ownership of the property.

**6.10.02.04.**   Change to a more hazardous occupancy.

**6.10.03.**   The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within ten (10) days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

**6.10.04.**   In the event of a claim, upon request of the Company, the Lender or Mortgagee will cooperate in any claim investigation.

**6.10.05.**   If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

**6.10.05.01.**   Earlier terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender, Mortgagee, or its agent.

**6.10.05.02.**   This Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

**6.10.06.**   The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by sending the specified Lender or Mortgagee written notice sixty (60) days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment of premium. If the Insured has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will send the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

57

EDGE-101-B (12/10)
Page 34 of 50

6.10.07.  The Company has the right to invoke this Policy's Suspended Property clause. When the Company suspends the insurance, it will apply to the interest of any Lender or Mortgagee. The Company will send the specified Lender or Mortgagee, at the last known address, a copy of such notice.

6.10.08.  If the Company pays a Lender or Mortgagee for any loss, and denies payment to the Insured, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral. No subrogation will impair the right of the Lender or Mortgagee to recover the full amount of its claim. At its option, the Company may pay to a Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest and charges. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company.

6.10.09.  If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the Insured's duties, obligations and provisions of this Policy when presenting a claim.

6.10.10.  In no event will the amount payable to a Lender or Mortgagee exceed the amount which would be payable to the Named Insured.

6.11.  **LIBERALIZATION**

If during the period that insurance is in force under this Policy, any filed rules or regulations are revised by statute so as to broaden this insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

6.12.  **LOSS ADJUSTMENT/PAYABLE**

Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured**.

When a Lender or Mortgagee is named in the Certificates of Insurance on file with the Company, the Lender or Mortgagee will be included in loss payment as their interests may appear.

When a Loss Payee is named in the Certificates of Insurance on file with the Company, the loss payee will be included in loss payments made to the insured as their interests may appear. The loss payee has no other rights under the policy.

6.13.  **LOSS CONDITIONS**

6.13.01.  DUTIES IN THE EVENT OF LOSS OR DAMAGE

The Insured must see that the following are done in the event of direct physical loss or damage to Covered Property:

6.13.01.01.  Notify the police if a law may have been broken.

6.13.01.02.  Give the Company prompt notice of the loss or damage. Include a description of the property involved.

6.13.01.03.  As soon as possible, give the Company a description of how, when and where the loss or damage occurred.

58

6.13.01.04.     Take all reasonable steps to protect the Covered Property from further damage caused by a **Covered Cause of Loss**. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of expenses for emergency and temporary repairs for consideration in the settlement of the claim. This will not increase the Limit of Liability.

6.13.01.05.     At the Company's request, provide a complete inventory of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

6.13.01.06.     As often as reasonably required, permit the Company to inspect the property and records evidencing the loss or damage, including taking some or all of damaged and undamaged property for inspection, testing and analysis, and permit the Company to make copies of the Insured's books and records.

6.13.01.07.     Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records. In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter.

6.13.01.08.     Give the Company a signed sworn statement of loss containing the information necessary to investigate the claim. If requested by the Company, the Company will supply the necessary form and the Insured must return this completed form within sixty (60) days of the request or as required by law.

6.13.01.09.     Cooperate with the Company in the investigation or settlement of the claim.

6.13.02.     DUTIES IN THE EVENT OF LOSS OR DAMAGE IN A PROHIBITED JURISDICTION

The duties and requirements imposed upon any Insured under this Policy shall not apply in a **Prohibited Jurisdiction.** However, with respect to any direct physical loss or damage in a **Prohibited Jurisdiction,** it shall be the duty of the **First Named Insured** to do or to cause the applicable subsidiary to do such things as would be required of such subsidiary if this Policy applied directly to such claim.

The **First Named Insured** shall pay the Company an amount equal to its share of any recoveries made by or on behalf of any subsidiary operating in a **Prohibited Jurisdiction,** as if such recoveries had been received by the **First Named Insured.**

6.13.03.     ABANDONMENT

There may be no abandonment of any property to the Company.

6.13.04.     SUBROGATION

The Insured is required to cooperate in any subrogation proceedings. To the extent of the Company's payment, the Insured's rights of recovery against any party are transferred to the Company.

The Company acquires no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of any applicable deductible and/or any provable uninsured loss, bears to the entire provable loss amount.

59

State of Minnes
8/19/2020 11:21 /

6.13.05.    APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

The Insured and the Company will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

6.13.06.    SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (12) twelve months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

6.14.    NON-ADMITTED INSURANCE

If physical loss or damage occurs at a **Location** outside of the United States of America including its territories and possessions, the Company will pay according to the terms and conditions of this Policy for loss as a result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property at a **Location**, provided there is no local insurance applying to such **Location**.

6.15.    NO REDUCTION BY LOSS

Loss or damage shall not reduce the amount of insurance recoverable, except where an **Annual Aggregate** applies. The reinstatement of any exhausted **Annual Aggregate** is not permitted unless authorized by the Company in writing.

60

EDGE-101-B (12/10)
Page 37 of 50

State of Minnesc
8/19/2020 11:21 /

6.16.     **OTHER INSURANCE**

Insurance that is intended to pay proportionally with this insurance as a part of a property insurance plan or program expressly written with other participants is not other insurance as described below.

6.16.01.     The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

6.16.02.     The Company gives the Insured permission to purchase insurance for all or any part of the deductibles in this Policy, and the existence of underlying insurance shall not prejudice the Insured's rights under this Policy.

6.16.02.01.     The deductible and any amount paid under such insurance that would be covered under this Policy, shall apply to the deductible that would apply in this Policy.

6.16.02.02.     This Policy shall then apply on an excess, Difference in Conditions/Difference in Limits basis.

6.16.03.     The Insured can purchase excess insurance commencing on or after the inception of this Policy that is specifically excess over the Limits of Liability set forth in this Policy without prejudice to this Policy and the existence of such insurance shall not reduce any liability under this Policy.

6.16.04.     The Company will not be liable if, at the time of loss or damage, there is any insurance with National Flood Insurance Program (NFIP); except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

6.16.05.     The Company will not be liable if, at the time of loss or damage, there is any insurance for **New Construction or Additions** under a specific policy for such New Construction and Additions; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

6.16.06.     The Company will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

6.17.     **POLICY MODIFICATION**

6.17.01.     This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. Only endorsements issued by the Company and made a part of this Policy can change this Policy.

6.17.02.     Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent the Company from asserting any rights under the Policy.

6.18.     **PRIVILEGE TO ADJUST WITH OWNER**

In the event of loss or damage involving Property of Others in your care, custody or control, we have the right, but not the duty to:

6.18.01.     Settle the loss or damage with the owners of the Property.

61

EDGE-101-B (12/10)
Page 38 of 50

6.18.02.    Provide a defense for legal proceedings brought against the Insured. If provided, the expense for this defense will be at the Company's cost and will not reduce any applicable limit of insurance.

### 6.19.    SETTLEMENT OF CLAIMS

6.19.01.    Loss Payment

6.19.01.01.    In the event of loss or damage to Covered Property, the Company will, at its option, either:

6.19.01.01.01.    Pay the value of lost or damaged property;

6.19.01.01.02.    Pay the cost of repairing or replacing the lost or damaged property;

6.19.01.01.03.    Take all or any part of the property at any agreed valuation; or

6.19.01.01.04.    Repair, rebuild or replace the property with other property of like kind and quality.

6.19.02.    The Company will give notice of its intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

6.19.03.    The Company will not pay more than the Insured's financial interest in the Covered Property.

6.19.04.    The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

6.19.04.01.    The Company has reached agreement on the amount of loss; or

6.19.04.02.    An appraisal award has been made, subject to 6.13.05.

6.19.05.    Priority of Payment

In the event of a claim that involves more than one interest and/or coverage and/or peril; the insured has the option to apportion recovery under this Policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the applicable limit of liability and subject to all other terms and conditions of the policy.

For the purpose of attachment of coverage for excess layers, claims involving any interest and/or peril covered in the primary or underlying excess layers, but not covered in higher excess layers, will be recognized by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing, however, will extend coverage in such layers(s) to include loss from any interest and/or peril not covered in the excess layer(s) itself.

### 6.20.    SUSPENDED PROPERTY

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

### 6.21.    TITLES

The titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate.

Exhibit A to Complaint

EDGE-101-B (12/10)
Page 39 of 50

**6.22.**   **TRANSFER OF RIGHTS AND DUTIES**

The Insured rights and duties under this Policy may not be transferred without the Company giving written consent.

**6.23.**   **VALUATION**

In the event of any claim for direct physical loss of or damage to Insured Property:

**6.23.01.**   The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

**6.23.01.01.**   The cost to repair;

**6.23.01.02.**   The cost to rebuild or replace on the same or another site with materials of equivalent size, kind, quality and capacity;

**6.23.01.03.**   The necessary cost actually expended in repairing, rebuilding or replacing on the same or another site, but not exceeding the operating capacity that existed at the time of the loss; or

**6.23.01.04.**   The Limits of Liability applicable to the lost or damaged property.

**6.23.02.**   If there is direct physical loss of or damage to Covered Property for which repair, rebuilding or replacement has not started within two (2) years from the date of direct physical loss or damage, the Company will not be liable for more than the actual cash value of the property destroyed.

**6.23.03.**   The Company, will pay the reduction in value of insured components or parts of products directly resulting from physical loss or damage caused by a **Covered Cause of Loss** to other insured components or parts of products, or part of a pair or set as follows:

**6.23.03.01.**   In case of loss or damage to any components or parts of products, or part of a pair or set, the Company will at its option:

**6.23.03.01.01.**   Pay the cost of repairing or replacing any part to restore the components or parts of products, pair or set to its value before the loss or damage;

**6.23.03.01.02.**   Repair or replace any part to restore the components or parts of products, pair or set to its value before the loss or damage; or

**6.23.03.01.03.**   Pay the difference between the value of the components or parts of products, pair or set before and after the loss or damage.

**6.23.03.02.**   If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such property to the Company.

**6.23.04.**   The following property shall be valued as specified below:

**6.23.04.01.**   For **Raw Materials** and supplies, the replacement cost.

**6.23.04.02.**   For **Stock in Process,** the value of **Raw Materials** and labor expended plus the proportion of overhead charges attributable to that **Stock in Process**.

63

6.23.04.03.       For **Finished Stock** manufactured by the Insured, the valuation as stated in the Declarations. If valued at **Selling Price**, this Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a loss payment involving **Finished Stock** being greater than the tax liability of the profits that would have been earned had no loss occurred.

6.23.04.04.       For **Merchandise** that carries the Insured's brand or trade name, the valuation as stated in the Declarations.

6.23.04.05.       For all other **Merchandise**, the valuation as stated in the Declarations.

6.23.04.06.       For **Fine Arts** articles, the lesser of the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss or the cost to replace the article or the value if stated on a schedule on file.  If the **Fine Arts** article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage.

6.23.04.07.       For property covered under Deferred Payments, the lesser of the total amount of unpaid installments less finance charges or the actual cash value of the property at the time of loss or the cost to repair or replace with material of like size, kind and quality.

6.23.04.08.       The selling price of buildings (or structures) or machinery and equipment, other than stock, offered for sale on the date of loss, but no more than the cost to repair or replace.

6.23.04.09.       The cost to replace non-repairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement.

6.23.04.10.       **Improvements and Betterments** at replacement cost if such property is repaired or replaced at the expense of the insured.  If there is direct physical loss of or damage to **Improvements and Betterments** which are not repaired, rebuilt or replaced at the expense of the insured, the Company will not be liable for more than a proportion of the original cost determined as follows:

6.23.04.10.01.       Multiply the original cost of the **Improvements and Betterments** by the number of days from the loss or damage to the expiration of the lease; and

6.23.04.10.02.       Divide the amount determined in 6.23.04.10.01 by the number of days from the installation of the **Improvements and Betterments** to the expiration of the lease.

6.23.04.10.03.       If the lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

6.23.04.11.       For property that is useless to the Insured or obsolete, the actual cash value.

6.23.04.12.       For vehicles, the valuation as stated in the Declarations.

6.23.04.13.       The Insured may elect not to repair or replace such damaged Covered Property, however, if loss settlement proceeds are expended on other capital expenditures, on property of the type insurable under this policy, related to the business activities of the Insured within two years from the date of loss, the lesser of the repair or replacement cost of such property will be paid. As a condition of collecting under this clause, such expenditure must be unplanned as of the date of loss and be made at a **Scheduled Location**.  This clause does not extend to Increased Cost of Construction.

64

# SECTION VII - DEFINITIONS

The following term(s) wherever used in this Policy means:

7.01. **Ammonia Contamination** - The loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one accident.

7.02. **Annual Aggregate** - The maximum amount of loss or damage payable in any one (1) **Policy Year** regardless of the number of **Occurrences** within the same policy year.

7.03. **Anticipated Date of Completion** - The date on which the work is scheduled to be completed, as stated in the construction contract or amendments to such contract, for the start of commercial operations or use and occupancy.

7.04. **Attraction Properties** - A property within the distance described in the declarations of an Insured Location that attracts customers to the Insured's business.

7.05. **Average Daily Value (ADV)** - The 100% Gross Earnings value or 100% Gross Profit value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues for the Policy Period divided by the number of working days in the Policy period.

7.06. **Breakdown** –

7.06.01. A failure of pressure or vacuum equipment;

7.06.02. An electrical failure including arcing; or

7.06.03. A mechanical failure including rupture or bursting caused by centrifugal force.

7.06.04. 7.06.01., 7.06.02., 7.06.03. includes an explosion to a steam boiler, electric steam generator, steam piping, steam turbine, steam engine, gas turbine, or moving or rotating machinery when such explosion is caused by centrifugal force or mechanical failure; but not the explosion of gases or fuel within the furnace of any **Covered Equipment** or within the flues or passages through which the gases of combustion pass; nor combustion explosion outside the **Covered Equipment**.

7.06.05. **Breakdown** does not mean or include:

7.06.05.01. Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

7.06.05.02. Defects, erasures, errors, limitations or viruses in computer equipment and programs;

7.06.05.03. Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

7.06.05.04. Damage to any vacuum tube, gas tube or brush;

7.06.05.05. Damage to any structure or foundation supporting any **Covered Equipment** or any of its parts;

7.06.05.06. Functioning of any safety or protective device; or

7.06.05.07. Cracking of any part on an internal combustion gas turbine exposed to the products of combustion.

65

EDGE-101-B (12/10)
Page 42 of 50

State of Minnesc
8/19/2020 11:21 /

7.07.        **Carrier** - Contract or public truck men and motor transit companies or connecting carriers.

7.08.        **Computer Virus** - Any **Software**, **Electronic Data** or code that affects the operation or functionality of any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, **Program**, Computer **Software** or operating systems, programming instructions, or data including, but not limited to any destructive **Program**, computer code, **Computer Virus**, worm, logic bomb, denial of service attack, smurf attack, vandalism, Trojan Horse or any other data introduced into any electronic system causing deletion, destruction, degradation, corruption, malfunction or compromise of **Electronic Data**, **Software** or electronic business systems.

7.09.        **Contamination(Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

7.10.        **Contaminant(s)** - Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

7.11.        **Covered Cause of Loss** - All risks of direct physical loss of or damage from any cause unless excluded.

7.12.        **Covered Equipment** - Any boiler fired pressure vessel, unfired vessel normally subject to vacuum or internal pressure other than weight of its contents, refrigerating and air conditioning systems, any metal piping and its accessory equipment, and mechanical, or electrical machines or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, not otherwise excluded as Covered Property.

7.12.01      **Covered Equipment** does not include any of the following:

7.12.01.01.        Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

7.12.01.02.        Insulating or refractory material, but not excluding the glass lining of any **Covered Equipment**;

7.12.01.03.        Non-metallic pressure or vacuum equipment unless it is constructed and used in accordance with the American Society of Mechanical Engineers (ASME) code or another appropriate and approved code;

7.12.01.04.        Catalyst;

7.12.01.05.        Vessels, piping and other equipment that is buried below ground and requires the excavation of materials to inspect, remove, repair or replace;

7.12.01.06.        Vehicle, aircraft, self-propelled equipment or floating vessel including any Covered Property(equipment) that is mounted upon or used solely with any one or more Vehicle(s), aircraft, self-propelled equipment or floating vessel;

7.12.01.07.        Drag-line, excavation or construction equipment including any Covered Property or **Covered Equipment** that is mounted upon or used solely with any one or more drag-lines, excavation, or construction equipment;

EDGE-101-B (12/10)
Page 43 of 50

| 7.12.01.08. | Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, non-metal part or any part or tool subject to periodic replacement; |
| --- | --- |
| 7.12.01.09. | Equipment or any part of such equipment manufactured by the Insured for sale. |
| 7.13. | **Daily Value(DV)** - The 100% Gross Earnings value or 100% Gross Profit value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, for the Period of Liability divided by the number of working days in such Period of Liability. |
| 7.14. | **Delay in Completion -** The period of time between the **Anticipated Date of Completion** and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch. |
| 7.15. | **Described Cause(s) of Loss - Breakdown** of Equipment, **Earth Movement, Flood,** or **Named Storm.** |
| 7.16. | **Direct Dependent Time Element Location -** |
| 7.16.01. | Any **Location** of a direct: customer, supplier, contract manufacturer or contract service provider to the Insured; |
| 7.16.02. | Any **Location** of any company under a royalty, licensing fee or commission agreement with the Insured. |
| 7.16.03. | A **Direct Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the Insured, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video. |
| 7.17. | **Earth Movement** - Any **Earth Movement** including earthquake, landslide, mine subsidence, earth sinking, rising, shifting, or sinkhole collapse. |
| 7.18. | **EEA** - The European Economic Area; within this area, free provision of services in all countries without any additional insurance license is allowed. |
| 7.19. | **Electronic Data** - Data of any kind that is recorded or transmitted in a form usable in electronic computer systems or networks, microchips, integrated circuits or similar devices in non-computer equipment, and which can be stored on **Media** for use by **Programs.** |
| 7.20. | **Fine Arts** - Includes, but is not limited to, bona fide works of art, works of rarity, works of historical values, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, gallery proofs, original records, and similar property. |
| 7.21. | **Finished Stock** – Stock, which is ready for sale by the Insured, that is manufactured: |
| 7.21.01. | By the Insured; or |
| 7.21.02. | Under the Insureds' direction and to the Insureds' specifications. |
| 7.21.03. | For the purposes of the Gross Earnings and the Gross Profit Coverage only: |
| 7.21.03.01. | **Finished Stock** also includes whiskey and alcoholic products being aged. |
| 7.21.03.02. | **Finished Stock** does not include stock that is held for sale at any retail outlet insured under this Policy or that has been sold, that is manufactured: |

67

CASE 0:20-cv-01998-NEB-HB   Doc. 1-1   Filed 09/18/20   Page 89 of 201

Filed in District Co...
State of Minneso...
8/19/2020 11:21 A...

| 7.21.03.02.01. | By the Insured; or |
|---|---|
| 7.21.03.02.02. | Under the Insureds' direction and to the Insureds' specifications. |

7.22. **First Named Insured** - The First Insured listed under Named Insured.

7.23. **Flood** - A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

7.23.01. The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

7.23.02. Mudflow or mudslides caused by accumulation of water on or under the ground.

7.23.03. **Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

7.23.04. **Flood** also includes **Storm Surge** if shown on the declarations as part of **Flood**.

7.24. **FoS (Freedom of Services) Policy** - A policy which only covers risks and **Locations** in the **EEA**.

7.25. **Fungus** (or **Fungi**) - Any form of fungus including, but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances or gases, products or byproducts produced by, released by, or arising out of the current or past presence of **Fungi**.

7.26. **Gross Profit** - The sum produced by adding to the **Net Profit or Loss**, the amount of the insured **Standing Charges**.

7.27. **Improvements and Betterments** - Fixtures, alterations, installation or additions comprising part of a building occupied, but not owned by the Insured and acquired or made at the Insured's expense which the Insured cannot legally move.

7.28. **Indirect Dependent Time Element Location** -

7.28.01. Any **Location** of a company that is a direct: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**; or

7.28.02. Any **Location** of a company that is an indirect: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**.

7.28.03. An **Indirect Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the **Direct Dependent Time Element Location**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

7.29. **International Insurance Program** - A program arrangement that is a compilation of different policies, which all have one common goal: to cover the Insured as agreed to in this Policy.

7.30. **Land Improvements** - Lawns, plants, shrubs or trees; pavements, roadways, sidewalks or similar works, but not including any fill or land beneath such property.

7.31. **Lease Interest** – The excess rent paid for the same or similar replacement property over actual rent otherwise payable had there been no loss or damage, plus cash bonuses or advance rent paid (including any maintenance or operating charges) for each month during the unexpired term of the lease.

68

7.32.       **Local Currency** - The currency of the country where the loss occurs.

7.33.       **Location -**

7.33.01.          As specified in the Schedule of Locations;

7.33.02.          If not so specified in the Schedule of Locations:

7.33.02.01.          a **Location** is a building(s) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide;

7.33.02.02.          A site or tract of land occupied or available for occupancy with tangible property; or

7.33.03.          If the Insured is a tenant,

7.33.03.01.          those portions of the building not rented by the Insured; or

7.33.03.02.          those portions of the building not intended to be rented by the Insured or others.

7.34.       **Media** - Tangible personal property on which **Electronic Data** or **Programs** can be recorded, but not the **Data** or **Programs** themselves. **Money** or **Securities** are not **Media**.

7.35.       **Merchandise** - Goods kept for sale by the Insured which are not **Raw Stock, Stock in Process** or **Finished Stock**.

7.36.       **Miscellaneous Unnamed Location** - A **Location** owned, leased or rented by the Insured, but not specified in the Schedule of Locations.

7.37.       **Moderate Flood Hazard Area (MFHA)** - Is an area defined by FEMA (The Federal Emergency Management Agency) or any foreign equivalent, between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood. A **Moderate Flood Hazard Area** is shown on the FIRM per FEMA and includes but is not limited to Zone B or Zone X (shaded). If not defined by FEMA or any foreign equivalent, it is an area between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood.

7.38.       **Money** - Currency, coins and bank notes whether or not in current use; travelers checks, register checks and money orders held for sale to the public.

7.39.       **Named Storm** - Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

       **Named Storm** also includes **Storm Surge** if shown on the declarations as part of **Named Storm**.

7.40.       **NCP** - No Coverage Provided.

7.41.       **Net Lease Interest** - That sum which placed at six percent 6% interest compounded annually would equal the **Lease Interest** (less any amounts otherwise payable).

7.42.       **Net Profit or Loss** - The net trading profit or loss (exclusive of all capital receipts and accretions and all outlay properly chargeable to capital) resulting from the Insured's business activities after deductions have been made for all charges and other charges including depreciation but before the deduction of any taxation chargeable on profits.

7.43. **New Construction or Additions** – Additional square footage beyond what existed and was usable for the Insured's business activities as of the inception of the policy period.

7.44. **Non-Admitted Insurance** – A policy issued in one country that covers exposures in other countries where the Company has not filed with the Insurance regulators of the country where the exposure is to provide insurance coverage.

7.45. **Occurrence** – All loss(es) or damage that is attributable directly or indirectly to one cause or a series of similar or related causes. All such loss(es) or damage will be treated as one **Occurrence**. However, if **Occurrence** is specifically defined anywhere in this Policy, that definition will apply to the applicable coverage provided.

7.46. **Operations** - The Insured's business activities at the Insured Location.

7.47. **Ordinary Payroll** - Payroll expenses for all employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums the Insured pays for.

7.48. **Period of Interruption** - The period starting when the Insured's Electronic Data Processing Equipment or **Media** fails to operate and ending when with due diligence and dispatch, the Insured's Electronic Data Processing Equipment or **Media** could be restored to the same or equivalent operating condition that existed prior to the failure. The Period of Interruption does not include the additional time to make changes to the Insured's Electronic Data Processing Equipment or **Media**.

7.49. **Period of Service Interruption** - The period starting when an interruption of a specified service occurs and ending when with due diligence and dispatch, the service could be restored to the same or equivalent operating condition that existed prior to the failure.

7.50. **Policy Year** - The (12) twelve consecutive months after the date coverage begins on this Policy.

7.51. **Program(Software)** - Any computer software, computer applications, or recorded instructions, whether digital or otherwise, for the processing, sequencing, collecting, transmittal, recording, retrieval or storage of **Electronic Data**.

7.52. **Prohibited Jurisdiction** - Any country or political subdivision, outside the United States of America, its territories and possessions, in which by that country's or political subdivision's insurance laws and regulations, the Company is not allowed to insure risks.

7.53. **Public Adjusters** - Individuals or groups, including consultants, secured specifically for the purpose of representing the Insured's interest in the adjustment of a claim(s) under this Policy.

7.54. **Qualifying Period** - The continuous period of time expressed in hours or days which must be exceeded before coverage under this Policy begins.

7.55. **Rate of Gross Profit** - The rate of Gross Profit earned on the **Turnover** during twelve (12) months immediately before the date of the physical loss or damage.

7.56. **Raw Stock (or Raw Material)** - Materials in the state in which the Insured receives it for conversion into stock in process or **Finished stock**.

7.57. **Scheduled Location** - A **Location** scheduled on this Policy.

7.58. **Securities** - Negotiable and non-negotiable instruments or contracts representing either **Money** (but does not include **Money**) or other property and includes:

70

State of Minneso
8/19/2020 11:21 A

7.58.01.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

7.58.02  Evidences of debt issued in connection with credit or charge cards, which are not issued by the Insured.

7.59.  **Selling Price -** The regular cash selling price at the **Location** where the loss occurs, less all discounts, pilferage, waste, returns and charges to which the **Finished Stock** and **Merchandise** would have been subject had no loss occurred.

7.60.  **Soft Costs -** Expenses which are necessarily incurred during the Period of Liability, that would not have been incurred if the **Delay in Completion** had not occurred, at **Locations** undergoing renovation or in the course of construction, limited to the following:

7.60.01.  Construction loan fees - The additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction, including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

7.60.02.  Commitment fees, leasing and marketing expenses - The additional cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

7.60.03.  Additional fees – The additional cost for: architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

7.60.04.  Carrying costs – The additional cost of: property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

7.61.  **Special Flood Hazard Area (SFHA) -** Is an area defined by FEMA (The Federal Emergency Management Agency) or any foreign equivalent that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year. The 1-percent annual chance flood is also referred to by FEMA as the base flood or 100-year flood.  **SFHA's** per FEMA include but are not limited to Zone A, Zone AO, Zone AH, Zones A1-A30, Zone AE, Zone A99, Zone AR, Zone AR/AE, Zone AR/AO, Zone AR/A1-A30, Zone AR/A, Zone V, Zone VE, and Zones V1-V30.  If not defined by FEMA or any foreign equivalent, it is an area that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year.

7.62.  **Specific Local Policy -** A policy of insurance issued in a country locally by any company authorized to provide insurance in that country.

7.63.  **Spores -** Any reproductive body produced by or arising out of any **Fungus** (or **Fungi**).

7.64.  **Standard Turnover -** The **Turnover** during the twelve (12) months immediately before the date of the physical loss or damage which corresponds with the Period of Liability.

7.65.  **Standing Charges -** All costs and expenses used in determining **Net Profit or Loss** except the following:

7.65.01.  **Raw Stock** from which production is derived;

7.65.02.  Supplies consisting of materials consumed directly in conversion of **Raw Stock** into **Finished Stock** or in supplying the service(s) sold by the Insured;

7.65.03.  **Merchandise** sold, including related packaging materials;

71

7.65.04.          Service(s) purchased from outsiders (not employees of the Insured) for resale, which do not continue under contract;

7.65.05.          Sales Discounts.

7.66.          **Stock in Process - Raw Stock** (or material) which has undergone any aging, seasoning, mechanical or other process of manufacture at the Insured Location, but which has not become **Finished Stock**.

7.67.          **Storm Surge -** A general and temporary condition of partial or complete inundation by salt water, caused by wind driven waves that result from a **Named Storm**, of normally dry land areas or structure(s) in coastal areas, bays or inland waters connected to an ocean or sea.

7.68.          **Sturmflut -** A flooding of dry land by storm driven waves on coastal areas, into bays or inland waters connected to the ocean or sea.  The 'Federal German Office for Maritime Shipping and Hydrographic' will declare **Sturmflut**.

7.69.          **Suspension (Suspended) –**

7.69.01.          The slowdown or cessation of the Insured's business activities: or

7.69.02.          As respects rental income that a part or all of the Insured Location is rendered untenantable.

7.70.          **Terrorist Activity -** Any activity;

7.70.01.          Defined as **Terrorist Activity** under the laws of the place where it is committed, or

7.70.02.          Which involves any of the following:

7.70.02.01.          The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

7.70.02.02.          The seizing or detaining of, or threatening to kill, injure or continue to detain any  person in order to compel a third person (including a governmental organization ) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

7.70.02.03.          A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

7.70.02.04.          An assassination.

7.70.02.05.          The use of any biological agent, chemical agent, or nuclear weapon or device, explosive or firearm (other than for mere personal monetary again), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause damage to property.

7.70.02.06.          A threat, attempt, or conspiracy to do any of the foregoing.

7.70.02.07.          Any act or acts deemed or declared by any government official, law enforcement agency, intelligence agency or other public authority to be terrorism or a terrorist act(s).

7.71.          **"the Policies" -** This Policy, local policy(ies); and the **FoS(Freedom of  Services) policy(ies)**, collectively  under an **International Insurance Program**.

7.72.          **Turnover -** The money (less discounts allowed) paid or payable to the Insured for goods sold and delivered and for services rendered in the course of the Insured's business activities.

Exhibit A to Complaint

Filed in District Co
State of Minnes¢
8/19/2020 11:21 /

7.73.   **Valuable Papers and Records** - Inscribed or printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps, mortgages, prints and tracings, card index systems, files, tapes, discs, drums, cells, magnetic recordings or storage **Media** for electronic data processing, **Electronic Data, Program(Software)**; but **Valuable Papers and Records** does not mean **Money** or **Securities**.

7.74.   **Wages** - The remuneration (including where applicable, bonuses, overtime, living allowance (if any), national insurance contribution, holiday pay or other payments pertaining to wages) of all employees other than those whose remuneration is treated as salaries in the Insured's books of account.

**73**

Filed in District Co
State of Minnes
8/19/2020 11:21 /

# Appendix A - Earth Movement/Earthquake Zones for USA including its Commonwealths and Territories

This list is for is for informational purposes only and does not convey any coverage under the policy.


**ZURICH**®

| COUNTRY - The United States of America | | |
|---|---|---|
| **STATE** | **ZONE** | **COUNTIES/PARISHES/INDEPENDENT CITIES** |
| ALABAMA | 3 | Colbert, Franklin, Lauderdale, Lawrence, Limestone, Morgan |
| | 4 | Balance of State |
| ALASKA | 1 | Balance of State |
| | 2 | North Slope |
| ARIZONA | 4 | Entire State |
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Greene, Lee, Mississippi, Poinsett, St Francis |
| | 2 | Independence, Jackson, Lawrence, Lonoke, Monroe, Phillips, Prairie, Randolph, Sharp, White, Woodruff |
| | 3 | Arkansas, Cleburne, Cleveland, Desha, Drew, Faulkner, Fulton, Grant, Izard, Jefferson, Lincoln, Pulaski, Saline, Stone |
| | 4 | Balance of State |
| CALIFORNIA | 1 | Entire State |
| COLORADO | 4 | Entire State |
| CONNECTICUT | 4 | Entire State |
| DELAWARE | 4 | Entire State |
| D. C. (Territory) | 4 | District of Columbia – Washington D. C. |
| FLORIDA | 4 | Entire State |
| GEORGIA | 4 | Entire State |
| HAWAII | 1 | Entire State |
| IDAHO | 3 | Bannock, Bear Lake, Caribou, Franklin, Oneida, Power |
| | 4 | Balance of State |
| ILLINOIS | 1 | Alexander, Pulaski |
| | 2 | Bond, Clay, Clinton, Edwards, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Randolph, Richland, St. Clair, Saline, Union, Wabash, Washington, Wayne, White, Williamson |
| | 3 | Calhoun, Christian, Clark, Coles, Crawford, Cumberland, Douglas, Edgar, Effingham, Fayette, Greene, Jasper, Jersey, Macoupin, Montgomery, Morgan, Moultrie, Pike, Sangamon, Scott, Shelby |
| | 4 | Balance of State |
| INDIANA | 2 | Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick |
| | 3 | Brown, Clay, Fayette, Johnson, Morgan, Monroe, Owen, Rush, Shelby, Union, Vigo |
| | 4 | Balance of State |
| IOWA | 4 | Entire State |
| KANSAS | 4 | Entire State |
| KENTUCKY | 1 | Ballard, Carlisle, Fulton, Hickman, McCracken |
| | 2 | Breckinridge, Butler, Caldwell, Calloway, Christian, Crittenden, Daviess, Graves, Hancock, Henderson, Hopkins, Livingston, Logan, Lyon, Marshall, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster |
| | 4 | Balance of State |
| LOUISIANA | 4 | Entire State |
| MAINE | 4 | Entire State |
| MARYLAND | 4 | Entire State |

**74**

EDGE-450-B (06/14)
Page 1  of 3

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| MASSACHUSETTS | 4 | Entire State |
| MICHIGAN | 4 | Entire State |
| MINNESOTA | 4 | Entire State |
| MISSISSIPPI | 1 | DeSoto, Tunica |
| | 2 | Alcorn, Benton, Bolivar, Coahoma, Lafayette, Leflore, Marshall, Panola, Pontotoc, Prentiss, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Union, Yalobusha |
| | 3 | Calhoun, Carroll, Chickasaw, Choctaw, Clay, Grenada, Holmes, Humphreys , Issaquena, Itawamba, Lee, Lowndes, Monroe, Montgomery, Oktibbeha, Sharkey, Warren, Washington, Webster, Yazoo |
| | 4 | Balance of State |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard |
| | 2 | Carter, Iron, Jefferson, Madison,  Oregon, Perry, Reynolds, Ripley, St. Francois, Ste. Genevieve, St. Charles, St. Louis, Washington, Wayne, and the City of St Louis |
| | 3 | Audrain, Callaway, Cole, Crawford, Dent, Franklin, Gasconade, Howell, Lincoln, Maries, Marion, Miller, Montgomery, Osage,  Phelps, Pike, Pulaski, Ralls, Shannon, Texas, Warren |
| | 4 | Balance of State |
| MONTANA | 4 | Entire State |
| NEBRASKA | 4 | Entire State |
| NEVADA | 1 | Carson City, Douglas |
| | 2 | Lyon , Storey, Washoe |
| | 3 | Clark |
| | 4 | Balance of State |
| NEW HAMPSHIRE | 4 | Entire State |
| NEW JERSEY | 4 | Entire State |
| NEW MEXICO | 4 | Entire State |
| NEW YORK | 4 | Entire State |
| NORTH CAROLINA | 4 | Entire State |
| NORTH DAKOTA | 4 | Entire State |
| OHIO | 4 | Entire State |
| OKLAHOMA | 4 | Entire State |
| OREGON | 2 | Clackamas, Multnomah, Washington |
| | 3 | Benton, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Lane, Lincoln, Linn, Marion, Polk, Tillamook, Yamhill |
| | 4 | Balance of State |
| PENNSYLVANIA | 4 | Entire State |
| RHODE ISLAND | 4 | Entire State |
| SOUTH DAKOTA | 4 | Entire State |
| SOUTH CAROLINA | 1 | Berkely, Charleston, Dorchester |
| | 3 | Bamberg, Beaufort, Calhoun, Clarendon, Colleton, Georgetown, Hampton, Jasper, Orangeburg, Richland, Sumter, Williamsburg |
| | 4 | Balance of State |
| TENNESSEE | 1 | Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton |
| | 2 | Benton, Carroll, Chester, Decatur, Fayette, Gibson, Hardeman, Hardin, Henderson, Henry, Humphreys, Madison, McNairy, Weakley |
| | 3 | Cheatham, Davidson, Dickson, Hickman, Houston, Lawrence, Lewis, Montgomery, Perry, Robertson, Stewart, Wayne |
| | 4 | Balance of State |
| TEXAS | 4 | Entire State |

75

Exhibit A to Complaint

EDGE-450-B (06/14)
Page 2 of 3

State of Minnes
8/19/2020 11:21 /

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| UTAH | 2 | Davis, Salt Lake, Utah |
| | 3 | Cache, Morgan, Rich, Summit, Wasatch, Weber |
| | 4 | Balance of State |
| VERMONT | 4 | Entire State |
| VIRGINIA | 4 | Entire State |
| WASHINGTON | 1 | Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce,  San Juan, Thurston |
| | 2 | Skagit, Snohomish, Whatcom |
| | 3 | Clark, Cowlitz, Grays Harbor, Lewis, Pacific, Skamania, Wahkiakum, |
| | 4 | Balance of State |
| WEST VIRGINIA | 4 | Entire State |
| WISCONSIN | 4 | Entire State |
| WYOMING | 4 | Entire State |

| Commonwealths and Territories of The United States of America | ZONE | |
|---|---|---|
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 2 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory for Limits of Liability |
| | 2 | Entire Territory for Deductibles |
| All other US Territories and Possessions | 2 | Entire Territory |

76

Exhibit A to Complaint

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

# Appendix B - Earth Movement/Earthquake Zones Worldwide except USA its Commonwealths and Territories



This list is for is for informational purposes only and does not convey any coverage under the policy.

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ALBANIA | 1 | Entire Country |
| ALGERIA | 2 | Balance of Country |
| | 4 | Adrar, Bechar, Tamanghasset, Ouargla, Illizi, Tindouf, Ghardaia |
| ANDORRA | 4 | Entire Country |
| ANGUILLA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ANTARCTICA | 3 | Entire Country |
| ANTIGUA & BARBUDA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ARGENTINA | 1 | Mendoza, Neuquen, San Juan |
| | 2 | Catamarca, Jujuy, Salta, Tucuman |
| | 4 | Balance of Country |
| ARMENIA | 1 | Entire Country |
| ARUBA | 3 | Entire Country |
| AUSTRALIA including Christmas Island, Cocos (Keeling) Islands | 2 | Christmas Island , Cocos (Keeling) Islands |
| | 3 | Western Australia |
| | 4 | Balance of Country |
| AUSTRIA | 4 | Entire Country |
| AZERBAIJAN | 1 | Entire Country |
| BAHAMAS | 4 | Entire Country |
| BAHRAIN | 4 | Entire Country |
| BANGLADESH | 1 | Entire Country |
| BARBADOS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| BELARUS | 4 | Entire Country |
| BELGIUM | 3 | Entire Country |
| BELIZE | 2 | Entire Country |
| BENIN | 4 | Entire Country |
| BERMUDA | 4 | Entire Country |
| BHUTAN | 1 | Balance of Country |
| | 2 | Gasa |
| BOLIVIA | 1 | La Paz |
| | 2 | Oruro, Potosi, Tarija |
| | 3 | Beni, Chuquisaca, Cochabamba, Pando, Santa Cruz |
| BOSNIA & HERZEGOVINA | 2 | Entire Country |

77

EDGE-451-D (02/16)
Page 1  of 9

State of Minnesot
8/19/2020 11:21 A

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| BOTSWANA | 4 | Entire Country |
| BRAZIL | 4 | Entire Country |
| BRITISH VIRGIN ISLANDS | 1 | Entire Country for Limits of Liability |
|  | 2 | Entire Country for Deductibles |
| BRUNEI DARUSSALAM | 3 | Entire Country |
| BULGARIA | 2 | Entire Country |
| BURKINA FASO | 4 | Entire Country |
| BURUNDI | 2 | Entire Country |
| CAMBODIA | 4 | Entire Country |
| CAMEROON | 3 | Entire Country |
| CANADA | 2 | British Columbia, Ontario, Quebec, Yukon except listed postal codes with first 3 characters in Zones 3 and 4 |
|  | 3 | British Columbia Postal Codes:V8C,V8G,V0M,V0T,V0V,V1M,V2P, V2R,V2S,V2T,V2V,V2W,V2X,V2Y,V3B,V3C,V3E,V3G,V3H,V3J. V3K,V3L,V3N,V3R,V3T,V3V,V3Y,V4N,V4R,V4S,V4W,V4X,V4Z, V5A,V5B,V5C,V5E,V5G,V5H,V5J,V5K,V5L,V5M,V5N,V5R,V5T, V5V,V5Y,V5Z,V6A,V6B,V6C,V6E,V6G,V6H,V6J,V6K,V6L,V6R, V6T,V6Z,V7G,V7H,V7J,V7K,V7L,V7M,V7N,V7P,V7R,V7S,V7T, V7V,V7W,V7X,V7Y,V8B,V8J<br>New Brunswick Postal Codes: E1G,E1N,E1V,E1X,E2A,E2E,E2G, E2H,E2J,E2K,E2L,E2M,E2N,E2P,E2R,E2S,E2V,E3A,E3B,E3C,E3E, E3L,E3N,E3V,E3Y,E3Z,E4A,E4B,E4C,E4E,E4G,E4J,E4S,E4T,E4V, E4W,E4X,E4Y,E4Z,E5A,E5B,E5C,E5E,E5H,E5J,E5K,E5L,E5M, E5N,E5P,E5R,E5S,E5T,E5V,E6A,E6B,E6C,E6E,E6G,E6H,E6J,E6K, E6L,E7A,E7B,E7C,E7E,E7G,E7H,E7J,E7K,E7L,E7M,E7N,E7P,E8A, E8B,E8C,E8E,E8G,E8J,E8K,E8L,E8M,E8N,E8P,E8R,E9A,E9B,E9C, E9E,E9G,E9H,<br>Ontario Postal Codes: K0E,K0G,K6T,K6V,K7A,K7H<br>Quebec Postal Codes:G0E,G0J,G0K,G0M,G0N,G0P,G0S,G0V,G0Y, G0Z,G4R,G4S,G5B,G5J,G5X,G5Y,G5Z,G6A,G6B,G6E,G6G,G6H, G6J,G6K,G6L,G6P,G6R,G6S,G6T,G7A,G7B,G7G,G7H,G7J,G7K, G7N,G7P,G7S,G7T,G7X,G7Y,G7Z,G8A,J0A,J0B,J0E,J0H,J0J,J1A, J1C,J1E,J1G,J1H,J1J,J1K,J1L,J1M,J1N,J1R,J1S,J1T,J1X,J2G,J2H, J2J,J2K,J2L,J2M,J2N,J2R,J2S,J2T,J2X,J3M,J9V |

Exhibit A to Complaint

EDGE-451-D (02/16)
Page 2 of 9

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| CANADA (continued) | 4 | British Columbia Postal Codes: V0C,V0J,V1J,V2K,V2M,V0A,V0B, V0E,V0G,V0H,V0K,V0L,V0W,V0X,V1A,V1B,V1C,V1E,V1G,V1H, V1K,V1L,V1N,V1P,V1R,V1S,V1T,V1V,V1W,V1X,V1Y,V1Z,V2A, V2B,V2C,V2E,V2G,V2H,V2J,V2L,V2N,V4T,V4V<br>Ontario Postal Codes: K0H,K0K,K0L,K0M,K7G,K7K,K7L,K7M, K7N,K7P,K7R,K8N,K8P,K8R,K8V,K9A,K9H,K9J,K9K,K9L,K9V, L0A,L0B,L0C,L0E,L0G,L0H,L0J,L0K,L0L,L0M,L0N,L0P,L0R,L0S, L1A,L1B,L1C,L1E,L1G,L1H,L1J,L1K,L1L,L1M,L1P,L1R,L1S,L1T, L1V,L1W,L1X,L1Y,L1Z,L2A,L2E,L2G,L2H,L2J,L2M,L2N,L2P, L2R,L2S,L2T,L2V,L2W,L3B,L3C,L3K,L3M,L3P,L3R,L3S,L3T, L3V,L3X,L3Y,L3Z,L4A,L4B,L4C,L4E,L4G,L4H,L4J,L4K,L4L,L4M L4N,L4P,L4R,L4S,L4T,L4V,L4W,L4X,L4Y,L4Z,L5A,L5B,L5C, L5E,L5G,L5H,L5J,L5K,L5L,L5M,L5N,L5P,L5R,L5S,L5T,L5V, L5W,L6A,L6B,L6C,L6E,L6G,L6H,L6J,L6K,L6L,L6M,L6P,L6R, L6S,L6T,L6V,L6W,L6X,L6Y,L6Z,L7A,L7B,L7C,L7E,L7G,L7J, L7K,L7L,L7M,L7N,L7P,L7R,L7S,L7T,L8E,L8G,L8H,L8J,L8K,L8L, L8M,L8N,L8P,L8R,L8S,L8T,L8V,L8W,L9A,L9B,L9C,L9G,L9H, L9K,L9L,L9M,L9N,L9P,L9R,L9S,L9T,L9V,L9W,L9Y,L9Z,M1B, M1C,M1E,M1G,M1H,M1J,M1K,M1L,M1M,M1N,M1P,M1R,M1S, M1T,M1V,M1W,M1X,M2H,M2J,M2K,M2L,M2M,M2N,M2P,M2R, M3A,M3B,M3C,M3H,M3J,M3K,M3L,M3M,M3N,M4A,M4B,M4C, M4E,M4G,M4H,M4J,M4K,M4L,M4M,M4N,M4P,M4R,M4S,M4T, M4V,M4W,M4X,M4Y,M5A,M5B,M5C,M5E,M5G,M5H,M5J,M5K, M5L,M5M,M5N,M5P,M5R,M5S,M5T,M5V,M5W,M5X,M6A,M6B, M6C,M6E,M6G,M6H,M6J,M6K,M6L,M6M,M6N,M6P,M6R,M6S, M7A,M7Y,M8V,M8W,M8X,M8Y,M8Z,M9A,M9B,M9C,M9L,M9M, M9N,M9P,M9R,M9V,M9W,N0A,N0B,N0C,N0E,N0G,N0H,N0J, N0K,N0L,N0M,N0N,N0P,N0R,N1A,N1C,N1E,N1G,N1H,N1K,N1L, N1M,N1P,N1R,N1S,N1T,N2A,N2B,N2C,N2E,N2G,N2H,N2J,N2K, N2L,N2M,N2N,N2P,N2R,N2T,N2V,N2Z,N3A,N3B,N3C,N3E,N3H, N3L,N3P,N3R,N3S,N3T,N3V,N3W,N3Y,N4B,N4G,N4K,N4L,N4N, N4S,N4T,N4V,N4W,N4X,N4Z,N5A,N5C,N5H,N5L,N5P,N5R,N5V, N5W,N5X,N5Y,N5Z,N6A,N6B,N6C,N6E,N6G,N6H,N6J,N6K,N6L, N6M,N6N,N6P,N7A,N7G,N7L,N7M,N7S,N7T,N7V,N7W,N7X, N8A,N8H,N8M,N8N,N8P,N8R,N8,N8T,N8V,N8W,N8X,N8Y,N9A, N9B,N9C,N9E,N9G,N9H,N9J,N9K,N9V,N9Y,P0A,P0B,P0C,P0E, P0G,P0H,P0J,P0K,P0L,P0M,P0N,P0P,P0R,P0S,P0T,P0V,P0W,P0X, P0Y,P1A,P1B,P1C,P1H,P1L,P1P,P2A,P2B,P2N,P3A,P3B,P3C,P3E, P3G,P3L,P3N,P3P,P3Y,P4N,P4P,P4R,P5A,P5E,P5N,P6A,P6B,P6C, P7A,P7B,P7C,P7E,P7G,P7J,P7K,P7L,P8N,P8T,P9A,P9N<br>Quebec Postal Codes: G0C,G0G,G0W,G4T,G4X,G8B,G8C,G8E, G8G,G8H,G8J,G8K,G8L,G8M,G8N,G8P,J0M,J0Y,J0Z,J9P,J9T,J9X, J9Y,J9Z<br>Balance of Country |
| CAPE VERDE | 4 | Entire Country |
| CAYMAN ISLANDS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| CENTRAL AFRICAN REPUBLIC | 4 | Entire Country |

EDGE-451-D (02/16)
Page 3  of  9

State of Minneso
8/19/2020 11:21 /

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| CHAD | 4 | Entire Country |
| CHILE | 1 | Entire Country |
| CHINA | 1 | Liaoning, Tianjin, Hebei, Shandong, Gansu, Sichuan, Shaanxi, Yunnan |
| | 2 | Tibet Autonomous Region, Macau |
| | 3 | Balance of Country |
| | 4 | Hong Kong |
| COLOMBIA | 1 | Antioquia, Cauca, Choco, Narino, Quindio, Risaralda, Valle del Cauca, Bogota |
| | 2 | Balance of Country |
| | 3 | Amazona, Arauca, Caqueta, Casanare, Guainia, Guaviare, Meta, Putumayo, San Anres and Providencia, Vaupes, Vichada |
| COMOROS | 4 | Entire Country |
| CONGO, REPUBLIC OF | 2 | Entire Country |
| COOK ISLANDS | 2 | Entire Country |
| COSTA RICA | 1 | Entire Country |
| CROATIA | 2 | Entire Country |
| CURACAO | 3 | Entire Country |
| CYPRUS | 2 | Entire Country |
| CZECH REPUBLIC | 3 | Entire Country |
| DENMARK | 4 | Entire Country |
| DJIBOUTI | 2 | Entire Country |
| DOMINICA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| DOMINICAN REPUBLIC | 1 | Entire Country |
| ECUADOR | 1 | Entire Country |
| EGYPT | 2 | Cairo, Dakahlia, Damietta, Gharbia, Ismailia, Kafr el-Sheikh, Monufia, North Sinai, Port Said, Red Sea, Sharqia, Suez |
| | 3 | Balance of Country |
| EL SALVADOR | 1 | Entire Country |
| EQUATORIAL-GUINEA | 4 | Entire Country |
| ERITREA | 2 | Entire Country |
| ESTONIA | 4 | Entire Country |
| ETHIOPIA | 2 | Balance of Country |
| | 3 | Benishangul, Dure Dawa, Gambela, Harari, Somalia, Tigray |
| FAROE ISLANDS | 4 | Entire Country |
| FEDERATED STATES OF MICRONESIA | 2 | Entire Country |
| FIJI | 1 | Entire Country |
| FINLAND | 4 | Entire Country |
| FRANCE | 3 | Entire Country |
| FRENCH GUIANA | 4 | Entire Country |
| FRENCH POLYNESIA | 4 | Entire Country |
| GABON | 2 | Ogooue-Ivindo, Ogooue-Lolo |
| | 3 | Balance of Country |
| GAMBIA | 4 | Entire Country |
| GERMANY | 3 | Entire Country |

80

EDGE-451-D (02/16)
Page 4  of 9

State of Minnes[...]
8/19/2020 11:21 [...]

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| GHANA | 1 | Accra |
| | 2 | Balance of Country |
| GIBRALTAR | 3 | Entire Country |
| GREECE | 1 | Entire Country |
| GREENLAND | 3 | Entire Country |
| GRENADA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| GUADELOUPE | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| GUATEMALA | 1 | Balance of Country |
| | 3 | Peten |
| GUINEA | 2 | Boke |
| | 3 | Balance of Country |
| GUINEA-BISSAU | 3 | Entire Country |
| GUYANA | 3 | Entire Country |
| HAITI | 1 | Entire Country |
| HONDURAS | 1 | Balance of Country |
| | 3 | Atlantida, Colon, Comayagua, El Paraiso, Francisco Morazan, Gracias a Dios, Islas de la Bahia, Olancho, Yoro |
| HUNGARY | 3 | Entire Country |
| ICELAND | 2 | Northeast Region, South Region, Southern Peninsula Region, Capital Region |
| | 3 | Balance of Country |
| INDIA | 1 | Arunachal Pradesh, Assam, Gujarat, Haryana, Himachal Pradesh, Jammu and Kashmir, Manipur, Meghalaya, Mizoram, Nagaland, Punjab, Uttarakhand |
| | 3 | Balance of Country |
| INDONESIA | 2 | Balance of Country |
| | 3 | (Borneo)-East Kalimantan, South Kalimantan,  West Kalimantan, Central Kalimantan, Riau, Jambi, South Sulawesi, Southeast Sulawesi, Bengka-Belitung, West Nusa Tenggara |
| IRAQ | 2 | Entire Country |
| IRELAND | 4 | Entire Country |
| ISLE OF MAN | 3 | Entire Country |
| ISRAEL | 1 | Entire Country |
| ITALY | 1 | Balance of Country |
| | 3 | Liguria, Lombardy, Marche, Piedmont, Aosta Valley, Trentino-Alto Adige/Südtirol, Veneto, Sardinia |
| IVORY COAST (COTE-D'IVOIRE) | 4 | Entire Country |
| JAMAICA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| JAPAN | 1 | Balance of Country |
| | 2 | Prefectures of Akita, Fukui, Fukuoka, Gifu, Gunma, Hiroshima, Ishikawa, Kagoshima, Niigata, Okayama, Okinawa, Saga, Shimane, Tochigi, Tottori, Toyama, Yamaguchi |

81

EDGE-451-D (02/16)
Page 5  of 9

Filed in District Co...
State of Minneso...
8/19/2020 11:21 A...

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| JORDAN | 1 | Balance of Country |
| | 3 | Ma'an |
| KAZAKHSTAN | 1 | Entire Country |
| KENYA | 2 | Entire Country |
| KIRIBATI | 2 | Entire Country |
| KOSOVO | 3 | Entire Country |
| KUWAIT | 4 | Entire Country |
| KYRGYZSTAN (KYRGYZ REPUBLIC) | 1 | Entire Country |
| LAOS | 2 | Balance of Country |
| | 3 | Attapu, Bolikhamxai, Champasak, Khammouan, Salavan, Savannakhet, Xekong |
| LATVIA | 4 | Entire Country |
| LEBANON | 1 | Entire Country |
| LESOTHO | 2 | Balance of Country |
| | 3 | Berea, Butha-Buthe, Leribe, Mokhotlong, Thaba-Tseka |
| LIBERIA | 4 | Entire Country |
| LIBYA | 2 | Entire Country |
| LIECHTENSTEIN | 4 | Entire Country |
| LITHUANIA | 4 | Entire Country |
| LUXEMBOURG | 4 | Entire Country |
| MACEDONIA | 1 | Entire Country |
| MADAGASCAR | 3 | Entire Country |
| MALAWI | 2 | Entire Country |
| MALAYSIA | 3 | Entire Country |
| MALDIVES | 4 | Entire Country |
| MALI | 4 | Entire Country |
| MALTA | 4 | Entire Country |
| MARSHALL ISLANDS | 4 | Entire Country |
| MARTINIQUE | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| MAURITANIA | 4 | Entire Country |
| MAURITIUS | 4 | Entire Country |
| MAYOTTE | 2 | Entire Country |
| MEXICO | 1 | Balance of Country |
| | 4 | Chihuahua, Campeche, Coahuila, Durango, Nuevo Leon, Quintana Roo, San Luis Potosi, Sonora, Tamaulipas, Yucatan, Zacatecas |
| MOLDOVA | 2 | Entire Country |
| MONACO | 3 | Entire Country |
| MONGOLIA | 1 | Balance of Country |
| | 2 | Govi-Altai, Arkhangai, Bulgan, Selenge, Tov, Ovorkhangai |
| | 3 | Khentii, Dundgovi, Dornogovi, Dornod, Sukhbaatar |
| MONTENEGRO | 2 | Entire Country |
| MONTSERRAT | 1 | Entire Country For Limits |
| | 2 | Entire Country for Deductibles |

82

Exhibit A to Complaint

Filed in District Co
State of Minneso
8/19/2020 11:21 /

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| MOROCCO | 2 | Fès-Boulemane (Fès) , Gharb-Chrarda-Béni Hssen (Kénitra), Tangier-Tétouan (Tangier) |
| | 3 | Taza-Al Hoceima-Taounate (Al Hoceima) |
| | 4 | Balance of Country |
| MOZAMBIQUE | 2 | Manica, Sofala, Zambezia |
| | 3 | Balance of Country |
| NAMIBIA | 4 | Entire Country |
| NAURU | 2 | Entire Country |
| NEPAL | 1 | Entire Country |
| NETHERLANDS | 4 | Balance of Country |
| | 3 | Bonaire |
| | 1 | Saba, Sint Eustatius for Limits of Liability |
| | 3 | Saba, Sint Eustatius for Deductibles |
| NEW CALEDONIA | 3 | Entire Country |
| NEW ZEALAND | 1 | Balance of Country |
| | 3 | Northland, Auckland, Waikato |
| NICARAGUA | 1 | Balance of Country |
| | 3 | RAAN (Bilwi), RAAS (Bluefields) |
| NIGER | 4 | Entire Country |
| NIGERIA | 4 | Entire Country |
| NIUE | 2 | Entire Country |
| NORFOLK ISLAND | 2 | Entire Country |
| NORWAY | 4 | Entire Country |
| OMAN | 4 | Entire Country |
| PAKISTAN | 1 | Balance of Country |
| | 3 | Punjab |
| PALAU | 2 | Entire Country |
| PALESTINE | 1 | Entire Country |
| PANAMA | 2 | Entire Country |
| PAPUA NEW GUINEA | 1 | Entire Country |
| PARAGUAY | 4 | Entire Country |
| PERU | 1 | Entire Country |
| PHILIPPINES | 1 | Entire Country |
| PITCAIRN ISLANDS | 2 | Entire Country |
| POLAND | 4 | Entire Country |
| PORTUGAL | 2 | Lisbon, Santarém, Faro, Azores Autonomous Region |
| | 4 | Balance of Country |
| QATAR | 4 | Entire Country |
| REUNION | 4 | Entire Country |
| ROMANIA | 2 | Entire Country |
| RUSSIAN FEDERATION | 1 | Kamchatka, Buryatia,  Tuva, Altai Republic,, Stavropol, Chechnya, Adygea, Krasnodar, Karachay-Cherkessia, Ingushetia, Dagestan, Kabardino-Balkaria, North Ossetia-Alania |
| | 3 | Balance of Country |

Exhibit A to Complaint

EDGE-451-D (02/16)
Page 7  of  9

State of Minneso
8/19/2020 11:21 A

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| RWANDA | 2 | Entire Country |
| SAMOA (WESTERN) | 2 | Entire Country |
| SAN MARINO | 2 | Entire Country |
| SAO TOME & PRINCIPE | 4 | Entire Country |
| SAUDI ARABIA | 2 | Jizan, Tabuk |
| | 4 | Balance of Country |
| SENEGAL | 3 | Entire Country |
| SERBIA | 2 | Entire Country |
| SEYCHELLES | 4 | Entire Country |
| SIERRA LEONE | 4 | Entire Country |
| SINGAPORE | 4 | Entire Country |
| SINT MAARTEN | 1 | Entire Country for limits of Liability |
| | 3 | Entire Country for Deductibles |
| SLOVAKIA | 3 | Entire Country |
| SLOVENIA | 2 | Entire Country |
| SOLOMON ISLANDS | 1 | Entire Country |
| SOMALIA | 3 | Entire Country |
| SOUTH AFRICA | 2 | Free State, Western Cape |
| | 3 | Balance of Country |
| SOUTH KOREA | 3 | Entire Country |
| SOUTHERN SUDAN | 3 | Entire Country |
| SPAIN | 2 | Andalusia, Murcia |
| | 3 | Balance of Country |
| SRI LANKA | 3 | Entire Country |
| ST. BARTHELEMY | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. KITTS AND NEVIS | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. LUCIA | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. MARTIN | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| ST. VINCENT AND GRENADINES | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| SURINAME | 4 | Entire Country |
| SWAZILAND | 2 | Entire Country |
| SWEDEN | 4 | Entire Country |
| SWITZERLAND | 4 | Entire Country |
| TAIWAN | 1 | Entire Country |
| TAJIKISTAN | 1 | Entire Country |
| TANZANIA | 2 | Kigoma, Arusha, Singida, Dodoma, Manyara, Rukwa, Mbeya, Iringa, Ruvuma, Mtwara |
| | 3 | Balance of Country |

84

EDGE-451-D (02/16)
Page 8 of 9

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| THAILAND | 2 | Chiang Rai, Payao, Nan, Chang Mai, Mae Hong Son, Lampang, Lampun, Phrae, Uttaradit, Sukhothai, Tak, Phitsanulok, Kamphaeng Phet, Phichit, Nakhon Sawan, Uthai Thani, Kanchanaburi, Chai Nat, Lop Buri, Sara Buri, Nakon Nayok, Ang Thong, Phra Nakhon Si Ayuthaya, Nakhon Pathom, Sing Buri, Pathum Thani, Bangkok, Samut Songkhram, Samut Sakhon, Nonthaburi, Samut Prakan, Phetchaburi |
| | 3 | Balance of Country |
| TIMOR-LESTE | 2 | Entire Country |
| TOGO | 3 | Entire Country |
| TONGA | 2 | Entire Country |
| TRINIDAD AND TOBAGO | 1 | Entire Country for Limits of Liability |
| | 2 | Entire Country for Deductibles |
| TUNISIA | 2 | Ariana, Béja, Ben Arous, Bizerte, Gafsa, Jendouba, Manouba, Monastir, Nabeul, Sousse, Tunis, Zaghouan |
| | 3 | Balance of Country |
| TURKEY | 1 | Entire Country |
| TURKMENISTAN | 1 | Entire Country |
| TURKS AND CAICOS | 1 | Entire Country for Limits of Liability |
| | 3 | Entire Country for Deductibles |
| TUVALU | 4 | Entire Country |
| UGANDA | 2 | Entire Country |
| UKRAINE | 4 | Entire Country |
| UNITED ARAB EMIRATES | 4 | Entire Country |
| UNITED KINGDOM including Guernsey, Jersey | 3 | Entire Country |
| URUGUAY | 4 | Entire Country |
| UZBEKISTAN | 1 | Entire Country |
| VANUATU | 2 | Entire Country |
| VATICAN CITY | 1 | Entire Country |
| VENEZUELA | 1 | Balance of Country |
| | 2 | Carabobo, Aragua, Guarico, Vargas, Miranda, Dpto Capital, Anzoategui, Monagas |
| | 4 | Delta Amacuro, Bolivar, Amazonas |
| VIETNAM | 2 | Lai Chau, Lao Cai, Yen Bai, Son La, Hoa Binh, Vinh Phu, Hanoi, Hai Phong, Ha Tay, Hai Hung, Thai Binh, Nom Ha, Ninh Binh, Thanh Hoa, Nghe An, Ha Tinh, Quang Binh, Quang Ngai, Binh Dinh, Phu Yen, Khanh Hoa, Ninh Thuan |
| | 3 | Balance of Country |
| WESTERN SAHARA | 4 | Entire Country |
| YEMEN | 4 | Entire Country |
| ZAMBIA | 2 | Northern, Southern |
| | 3 | Balance of Country |
| ZIMBABWE | 3 | Entire Country |

Any country not listed is Zone 1 unless stated differently in the Declarations of the Policy.

85

EDGE-451-D (02/16)
Page 9  of 9

Filed in District Co...
State of Minneso...
8/19/2020 11:21 /...

# Appendix C – Named Storm Zones for USA including its Commonwealths and Territories

This list is for is for informational purposes only and does not convey any coverage under the policy.



**ZURICH®**

**WIND ZONES** ARE DEFINED AS FOLLOWS:
**COUNTRY** – The United States of America

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| Alabama | 1 | Baldwin, Mobile |
| | 2 | Clarke, Covington, Escambia, Geneva, Houston, Washington |
| Florida | 1 | Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dixie, Duval, Escambia, Flagler, Franklin, Glades, Gulf, Hendry, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Miami-Dade, Monroe, Nassau, Okaloosa, Okeechobee, Palm Beach, Pasco, Pinellas, Saint Johns, Saint Lucie, Santa Rosa, Sarasota, Taylor, Volusia, Wakulla, Walton, Washington |
| | 2 | Balance of State |
| Georgia | 1 | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| | 2 | Appling, Brantley, Bulloch, Charlton, Effingham, Evans, Long, Pierce, Tattnall, Wayne |
| Hawaii | 1 | Entire State |
| Louisiana | 1 | Ascension, Assumption, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington |
| | 2 | Acadia, Allen, Beauregard, Calcasieu, East Baton Rouge, East Feliciana, Evangeline, Iberville, Jefferson Davis, Lafayette, Pointe Coupee, St. Landry, St. Helena, West Baton Rouge, West Feliciana |
| Maryland | 1 | Somerset, Wicomico, Worcester |
| Mississippi | 1 | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| | 2 | Amite, Forrest, Greene, Lamar, Marion, Perry, Pike, Walthall, Wilkinson |
| North Carolina | 1 | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington |
| | 2 | Bladen, Duplin, Gates, Greene, Hertford, Lenoir, Pitt, Robeson, Sampson |
| South Carolina | 1 | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper |
| | 2 | Allendale, Bamberg, Clarendon, Dillon, Florence, Hampton, Marion, Williamsburg |
| Texas | 1 | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy |
| | 2 | Austin, Bee, Brooks, Colorado, DeWitt, Duval, Fort Bend, Goliad, Grimes, Hardin, Harris, Hidalgo, Jasper, Jim Hogg, Jim Wells, Lavaca, Liberty, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Victoria, Walker, Waller, Wharton |
| Virginia | 1 | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Southampton, Surry, York |
| | 1 | Independent Cities: Chesapeake, Franklin City, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, and Williamsburg |
| | 2 | Caroline, Charles City, Essex, Henrico, King and Queen, King George, King William, New Kent, Prince George, Richmond, Sussex, Westmoreland |

86

EDGE-452-B (06/14)
Page 1 of 2

State of Minnesd
8/19/2020 11:21 /

| Commonwealths and Territories of The United States of America | ZONE | |
|---|---|---|
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

87

Exhibit A to Complaint

CASE 0:20-cv-01998-NEB-HB   Doc. 1-1   Filed 09/18/20   Page 109 of 201

Filed in District Co..
State of Minneso..
8/19/2020 11:21 A..

# Appendix D – Named Storm Zones Worldwide except USA and its Commonwealths and Territories



**ZURICH**®

This list is for informational purposes only and does not convey any coverage under the policy.

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ALBANIA | 4 | Entire Country |
| ALGERIA | 3 | Entire Country |
| ANDORRA | 3 | Entire Country |
| ANGUILLA | 1 | Entire Country |
| ANTARCTICA | 4 | Entire Country |
| ANTIGUA & BARBUDA | 1 | Entire Country |
| ARMENIA | 4 | Entire Country |
| ARGENTINA | 4 | Entire Country |
| ARUBA | 1 | Entire Country for Limits of Liability |
| | 3 | Entire Country for Deductibles |
| AUSTRALIA including Christmas Island, Cocos (Keeling) Islands | 1 | Western Australia Postcodes: 6701,6707,6710,6711,6712,6713,6714,6716,6718,6720,6721,6722,6725,6726, 6728,6731,6733,6740,6743,6751,6754,6760,6762,6765, Northern Territory Postcodes: 0800,0810,0812,0820,0822,0828,0829,0830,0832, 0835,0836,0837,0838,0840,0841,0845,0846,0847,0850,0852,0853,0854,0862, 0880,0885,0886, Christmas Island, Cocos (Keeling) Islands |
| | 2 | Queensland Postcodes: 4580,4581,4620,4621,4630,4650,4655,4659,4660, 4662,4670,4671,4673,4674,4676,4677,4678,4680,4694,4695,4697,4699,4700, 4701,4702,4703,4704,4705,4706,4707,4710,4711,4712,4714,4715,4716,4717, 4718,4720,4721,4723,4737,4738,4739,4740,4741,4742,4743,4744,4745,4746, 4750,4751,4753,4754,4756,4757,4798,4799,4800,4801,4802,4803,4804,4805, 4806,4807,4808,4809,4810,4811,4812,4813,4814,4815,4816,4817,4818,4819, 4820,4830,4849,4850,4852,4854,4855,4856,4857,4858,4859,4860,4861,4865, 4868,4869,4870,4871,4872,4873,4874,4875,4876,4877,4878,4879,4880,4881, 4882,4883,4884,4885,4886,4887,4888,4890,4891,4895 |
| | 3 | Balance of Country |
| AUSTRIA | 4 | Entire Country |
| AZERBAIJAN | 4 | Entire Country |
| BAHAMAS | 1 | Entire Country |
| BAHRAIN | 4 | Entire Country |
| BANGLADESH | 1 | Entire Country |
| BARBADOS | 1 | Entire Country |
| BELARUS | 4 | Entire Country |

EDGE-453-E (09/19)
Page 1  of  7

State of Minnes
8/19/2020 11:21 /

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| BELGIUM | 3 | Entire Country |
| BELIZE | 1 | Entire Country |
| BENIN | 4 | Entire Country |
| BERMUDA | 1 | Entire Country |
| BHUTAN | 4 | Entire Country |
| BOLIVIA | 4 | Entire Country |
| BOSNIA & HERZEGOVINA | 4 | Entire Country |
| BOTSWANA | 3 | Entire Country |
| BRAZIL | 4 | Entire Country |
| BRITISH VIRGIN ISLANDS | 1 | Entire Country |
| BRUNEI DARUSSALAM | 4 | Entire Country |
| BULGARIA | 4 | Entire Country |
| BURKINA FASO | 4 | Entire Country |
| BURUNDI | 1 | Entire Country |
| CAMBODIA | 3 | Entire Country |
| CAMEROON | 4 | Entire Country |
| CANADA | 4 | Entire Country |
| CAPE VERDE | 3 | Entire Country |
| CAYMAN ISLANDS | 1 | Entire Country |
| CENTRAL AFRICAN REPUBLIC | 4 | Entire Country |
| CHAD | 3 | Entire Country |
| CHILE | 3 | Entire Country |
| CHINA | 1 | Hainan, Macau,  Guangdong, Fujian, Zhejiang, Shanghai, Jiangsu, Shangdong |
|  | 2 | Hong Kong |
|  | 4 | Balance of Country |
| COLOMBIA | 3 | Entire Country |
| COMOROS | 3 | Entire Country |
| CONGO, REPUBLIC OF | 4 | Entire Country |
| COOK ISLANDS | 1 | Entire Country |
| COSTA RICA | 1 | Entire Country |
| CROATIA | 3 | Entire Country |
| CURACAO | 1 | Entire Country for Limits of Liability |
|  | 3 | Entire Country for Deductibles |
| CYPRUS | 4 | Entire Country |
| CZECH REPUBLIC | 4 | Entire Country |

89

| DENMARK | 3 | Entire Country |
|---|---|---|
| DJIBOUTI | 4 | Entire Country |
| DOMINICA | 1 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| DOMINICAN REPUBLIC | 1 | Entire Country |
| ECUADOR | 4 | Entire Country |
| EGYPT | 4 | Entire Country |
| EL SALVADOR | 2 | Entire Country |
| EQUATORIAL GUINEA | 4 | Entire Country |
| ERITREA | 4 | Entire Country |
| ESTONIA | 3 | Entire Country |
| ETHIOPIA | 4 | Entire Country |
| FAROE ISLANDS | 3 | Entire Country |
| FEDERATED STATES OF MICRONESIA | 1 | Entire Country |
| FIJI | 1 | Entire Country |
| FINLAND | 3 | Entire Country |
| FRANCE | 4 | Entire Country |
| FRENCH GUIANA | 4 | Entire Country |
| FRENCH POLYNESIA | 1 | Entire Country |
| GABON | 3 | Entire Country |
| GAMBIA | 4 | Entire Country |
| GERMANY | 3 | Entire Country |
| GHANA | 3 | Entire Country |
| GIBRALTAR | 3 | Entire Country |
| GREECE | 4 | Entire Country |
| GREENLAND | 4 | Entire Country |
| GRENADA | 1 | Entire Country |
| GUADELOUPE | 1 | Entire Country |
| GUATEMALA | 1 | Izabal |
|  | 2 | Balance of Country |
| GUINEA | 4 | Entire Country |
| GUINEA- BISSAU | 4 | Entire Country |
| GUYANA | 3 | Entire Country |
| HAITI | 1 | Entire Country |
| HONDURAS | 1 | Entire Country |
| HUNGARY | 4 | Entire Country |
| ICELAND | 4 | Entire Country |

90

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| INDIA | 1 | Andhra Pradesh, Jharkhand, Mizoram, Orissa, Tamil Nadu, Telangana, Tripura, West Bengal |
| | 3 | Balance of Country |
| INDONESIA | 3 | Entire Country |
| IRAQ | 4 | Entire Country |
| IRELAND | 3 | Entire Country |
| ISLE OF MAN | 3 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| ISRAEL | 4 | Entire Country |
| ITALY | 3 | Entire Country |
| IVORY COAST (COTE-D'IVOIRE) | 4 | Entire Country |
| JAMAICA | 1 | Entire Country |
| JAPAN | 3 | Regions of Hokkaido, Tohoku |
| | 1 | Balance of Country |
| JORDAN | 4 | Entire Country |
| KAZAKHSTAN | 4 | Entire Country |
| KENYA | 3 | Entire Country |
| KIRIBATI | 1 | Entire Country |
| KOSOVO | 4 | Entire Country |
| KUWAIT | 4 | Entire Country |
| KYRGYZSTAN (KYRGYZ REPUBLIC) | 4 | Entire Country |
| LAOS | 3 | Entire Country |
| LATVIA | 3 | Entire Country |
| LEBANON | 4 | Entire Country |
| LESOTHO | 4 | Entire Country |
| LIBERIA | 4 | Entire Country |
| LIBYA | 4 | Entire Country |
| LIECHTENSTEIN | 4 | Entire Country |
| LITHUANIA | 3 | Entire Country |
| LUXEMBOURG | 4 | Entire Country |
| MACEDONIA | 4 | Entire Country |
| MADAGASCAR | 2 | Entire Country |
| MALAWI | 4 | Entire Country |
| MALAYSIA | 3 | Entire Country |
| MALDIVES | 3 | Entire Country |
| MALI | 4 | Entire Country |
| MALTA | 4 | Entire Country |

91

EDGE-453-E (09/19)
Page 4  of 7

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| MARSHALL ISLANDS | 2 | Entire Country |
| MARTINIQUE | 1 | Entire Country |
| MAURITANIA | 4 | Entire Country |
| MAURITIUS | 1 | Entire Country |
| MAYOTTE | 1 | Entire Country |
| MEXICO | 1 | Baja California Sur, Colima, Campeche, Chiapas, Guerrero, Jalisco, Michoacan, Oaxaca, Quintana Roo, Tabasco, Tamaulipas, Veracruz, Yucatan |
| | 4 | Balance of Country |
| MOLDOVA | 4 | Entire Country |
| MONACO | 3 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| MONGOLIA | 4 | Entire Country |
| MONTENEGRO | 4 | Entire Country |
| MONTSERRAT | 1 | Entire Country |
| MOROCCO | 4 | Entire Country |
| MOZAMBIQUE | 1 | Entire Country |
| NAMIBIA | 4 | Entire Country |
| NAURU | 4 | Entire Country |
| NEPAL | 4 | Entire Country |
| NETHERLANDS | 4 | Balance of Country |
| | 1 | Bonaire for Limits of Liability |
| | 3 | Bonaire for Deductibles |
| | 1 | Saba |
| | 1 | Sint Eustatius |
| NEW CALEDONIA | 1 | Entire Country |
| NEW ZEALAND | 3 | Entire Country |
| NICARAGUA | 1 | RAAN (Bilwi), RAAS (Bluefields) |
| | 2 | Balance of Country |
| NIGER | 4 | Entire Country |
| NIGERIA | 4 | Entire Country |
| NIUE | 1 | Entire Country |
| NORFOLK ISLAND | 2 | Entire Country |
| NORWAY | 3 | Entire Country |
| OMAN | 3 | Entire Country |
| PAKISTAN | 3 | Entire Country |
| PALAU | 1 | Entire Country |
| PALESTINE | 4 | Entire Country |
| PANAMA | 3 | Entire Country |
| PAPUA NEW GUINEA | 3 | Entire Country |
| PARAGUAY | 4 | Entire Country |
| PERU | 4 | Entire Country |

92

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| PHILIPPINES | 1 | Entire Country |
| PITCAIRN ISLANDS | 1 | Entire Country |
| POLAND | 3 | Entire Country |
| PORTUGAL | 3 | Azores Autonomous Region |
| | 4 | Entire Country |
| QATAR | 4 | Entire Country |
| REUNION | 1 | Entire Country |
| ROMANIA | 4 | Entire Country |
| RUSSIAN FEDERATION | 4 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| RWANDA | 4 | Entire Country |
| SAMOA (WESTERN ) | 1 | Entire Country |
| SAN MARINO | 4 | Entire Country |
| SAO TOME & PRINCIPE | 4 | Entire Country |
| SAUDI ARABIA | 4 | Entire Country |
| SENEGAL | 4 | Entire Country |
| SERBIA | 4 | Entire Country |
| SEYCHELLES | 3 | Entire Country |
| SIERRA LEONE | 4 | Entire Country |
| SINGAPORE | 4 | Entire Country |
| SINT MAARTEN | 1 | Entire Country |
| SLOVAKIA | 4 | Entire Country |
| SLOVENIA | 4 | Entire Country |
| SOLOMON ISLANDS | 2 | Entire Country |
| SOMALIA | 4 | Entire Country |
| SOUTH AFRICA | 4 | Entire Country |
| SOUTH KOREA | 2 | Entire Country |
| SOUTHERN SUDAN | 4 | Entire Country |
| SPAIN | 4 | Entire Country |
| SRI LANKA | 2 | Entire Country |
| ST. BARTHELEMY | 1 | Entire Country |
| ST. KITTS AND NEVIS | 1 | Entire Country |
| ST. LUCIA | 1 | Entire Country |
| ST. MARTIN | 1 | Entire Country |
| ST. VINCENT AND THE GRENADINES | 1 | Entire Country |
| SURINAME | 4 | Entire Country |

93

EDGE-453-E (09/19)
Page 6  of 7

Filed in District Co.
State of Minnesot
8/19/2020 11:21 A

| SWAZILAND | 4 | Entire Country |
| SWEDEN | 3 | Entire Country |
| SWITZERLAND | 4 | Entire Country |
| TAIWAN | 1 | Entire Country |
| TAJIKISTAN | 4 | Entire Country |
| TANZANIA | 4 | Entire Country |
| THAILAND | 3 | Entire Country |
| TIMOR-LESTE | 3 | Entire Country |
| TOGO | 4 | Entire Country |
| TONGA | 1 | Entire Country |
| TRINIDAD AND TOBAGO | 1 | Entire Country |
| TUNISIA | 4 | Entire Country |
| Country | Zone | Provinces/Territories/States/Counties |
| TURKEY | 4 | Entire Country |
| TURKMENISTAN | 4 | Entire Country |
| TURKS AND CAICOS | 1 | Entire Country |
| TUVALU | 3 | Entire Country |
| UGANDA | 4 | Entire Country |
| UKRAINE | 4 | Entire Country |
| UNITED ARAB EMIRATES | 4 | Entire Country |
| UNITED KINGDOM including Guernsey, Jersey | 3 | Entire Country |
| URUGUAY | 3 | Entire Country |
| UZBEKISTAN | 4 | Entire Country |
| VANUATU | 1 | Entire Country |
| VATICAN CITY | 4 | Entire Country |
| VENEZUELA | 3 | Entire Country |
| VIETNAM | 2 | Entire Country |
| WESTERN SAHARA | 4 | Entire Country |
| YEMEN | 3 | Entire Country |
| ZAMBIA | 4 | Entire Country |
| ZIMBABWE | 4 | Entire Country |

Any country not listed is designated as Zone 1 unless stated differently in the Declarations of this Policy

94

Exhibit A to Complaint

Filed in District Court
State of Minneso
8/19/2020 11:21 /



# Amendatory Endorsement - Alaska

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, Cancellation/Non-renewal, is deleted in its entirety and replaced by the following:

   CANCELLATION/NON-RENEWAL/CONDITIONAL RENEWAL

   Cancellation

   The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** and to the agent or broker of record written notice of cancellation at least the greater of:

   Ten (10) days before the effective date of cancellation if the Company cancels for discovery of fraud or material misrepresentation by the insured;

   Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

   Sixty (60) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

   The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the agent or broker of record.

   Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

   If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be subject to a cancellation fee of 7.5% of any unearned premium. If the Company cancels, any unearned premium will be returned before the effective date of cancellation or forty-five (45) days after the cancellation notice is given in cases of nonpayment, misrepresentation or fraud. If the Insured cancels, any unearned premium will be returned the later of the effective date of cancellation or 45 days after receipt of the request for cancellation.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

   If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

   Non-renewal

   The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, the number of days before the non-renewal, as permitted by law in the jurisdiction where in the property is located.

   Conditional Renewal

   If the premium to renew this policy increases more than 10% for a reason other than an increase in coverage or exposure basis, or if after the renewal there will be a material restriction or reduction in coverage not specifically requested by the **First Named Insured**, the Company shall mail written notice of the change(s) to the **First Named Insured** the number of days before the expiration date of the policy, as permitted by law in the jurisdiction where in the property is located.

95

EDGE-201-B (03/11)
Page 1 of 3

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRSENTATION OR FRAUD, is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements:

That are fraudulent;

That are material either to the acceptance of the risk, or to the hazard assumed by the Company; or

If the Company, in good faith, would not have:

Issued the policy or contract;

Issued a policy or contract in as large an amount, or at the same premium or rate; or

Provided coverage with respect to the hazard resulting in the loss;

if the true facts had been made known to the Company as required either by the application for the policy or contract or otherwise.

3. Section VI-General Policy Conditions, Loss Conditions, Appraisal is deleted in its entirety and replaced by the following:

APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 10 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss and will be binding on the Company.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

All expenses and fees, not including counsel or adjuster fees, incurred because of the appraisal shall be paid as determined by the umpire.

3. The following is added to Subsection 6.13.01 of Section VI-General Policy Conditions, Loss Conditions, Duties in the Event of Loss or Damage:

The Insured has the right to an attorney being present during any examination under oath.

4. The following is added to Section VI-General Policy Conditions and supersedes any provision to the contrary:

As required by Alaska Statute Section 21.36.212, we will not deny a claim if a risk, hazard or contingency insured against is the dominant cause of a loss and an excluded risk, hazard, or contingency is also in the chain of causes but operates on a secondary basis.

96

State of Minnes
8/19/2020 11:21 /

5.  SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy.  Legal action must be started within three (3) years after the date on which the cause of action accrues.

**All other terms, conditions and limitations of this Policy remain unchanged.**

97

Exhibit A to Complaint

Filed in District Co
State of Minnes
8/19/2020 11:21 A



# Amendatory Endorsement - Connecticut

| Insured Name<br>Life Time, Inc. | Policy Number | Effective Date<br>12/15/2019 | |
|---|---|---|---|

**THIS ENDORSEMENT CHANGES THE POLICY AND APPLIES TO THOSE RISKS IN CONNECTICUT.  PLEASE READ IT CAREFULLY.**

1. SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS, DESCRIPTION OF SPECIAL COVERAGES, is amended by the addition of the following:

   In the event of an electrical outage or interruption of electrical service at an Insured Location from a **Covered Cause of Loss**, Personal Property that is perishable food that you donate to a temporary emergency shelter operated or supervised by a municipality or the state during a state of emergency for a limited time period will be considered physically damaged, for the purpose of coverage as required by Connecticut Public Act 12-123 only, if:

   a) The Insured's food establishment is classified as class III or class IV pursuant to regulations adopted under section 19a-36 of Connecticut general statutes;

   b) The Governor proclaims that a state of emergency exists;

   c) The electrical outage or interruption of electrical service to the Insured Location  is forecast by the electric supplier to last longer for that Insured Location than the time period prescribed by the Department of Public Health or local director of health, or an authorized agent thereof, for the safe handling of such perishable food;

   d) Such perishable food is donated prior to the expiration of the time period described in c) above; and

   e) The Insured provides us written documentation from such shelter stating the date and time of such donation.

   Coverage under this provision is provided only up the applicable Limit of Liability and subject to all other terms and conditions of the policy.

2. SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   Cancellation

   The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   For Policies in Effect Sixty (60) Days or Less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium.

98

State of Minnes[...]
8/19/2020 11:21 [...]

Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least ten (10) days before the effective date of cancellation if the Company cancels for one or more of the following reasons:

Nonpayment of premium;

Conviction of a crime arising out of acts increasing the hazard insured against;

Discovery of fraud or material misrepresentation by the Insured in obtaining the Policy or in perfecting any claim;

Discovery of any willful or reckless act or omission by the Insured increasing the hazard insured against; or;

A determination by the Commissioner that continuation of the Policy would violate or place the Company in violation of the law.

If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least sixty (60) days before the effective date of cancellation if the Company cancels for one or more of the following reasons:

Physical changes in the property which increase the hazard insured against;

A material increase in the hazard insured against; or

A substantial loss of reinsurance by the Company affecting this particular line of insurance.

The Company may not cancel policies in effect for sixty (60) days or more or renewal policies for any reason other than the reasons described above.

If the Company cancels for nonpayment of premium, the Insured may continue the coverage and avoid the effect of cancellation by payment in full at any time prior to the effective date of cancellation.

Notice of cancellation will state the reason(s) for cancellation.

Notice of Cancellation will be delivered or sent by Registered mail, Certified mail, or Mail evidenced by a United States Post Office certificate of mailing.

The Company will give notice to the **First Named Insured** at the last mailing address known.

Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. Notice of cancellation will state that the excess premium (if not tendered) will be refunded on demand.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Non-renewal

EDGE-207-F (09/14)
Page 2 of 4

Exhibit A to Complaint

State of Minnesc
8/19/2020 11:21 /

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice of non-renewal at least sixty (60) days before the expiration date of this Policy stating the reason for non-renewal . This notice will be delivered or sent by Registered mail or Certified mail to the last address known to us. The Company is not required to send this notice if nonrenewal is due to the Insured failure to pay any advance premium required for renewal.

3. SECTION VI – GENERAL POLICY CONDITIONS, LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS, is modified to add the following:

Mortgagee interests and obligations. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

4. The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

For any loss subject to the Standard Fire Insurance Policy of the State of Connecticut, as set forth in the General Statutes of Connecticut, if any conditions of the Standard Fire Insurance Policy of the State of Connecticut are construed to be more liberal than the conditions of this Policy, then the conditions of The Standard Fire Insurance Policy of the State of Connecticut will apply with respect to the perils insured by the Standard Fire Policy of Connecticut.

5. SECTION VI –GENERAL POLICY CONDITIONS, CONFORMITY TO STATUTES, is amended by the addition of the following and supersede anything to the contrary:

Any provisions required by Connecticut law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by Connecticut law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

6. SECTION VI –GENERAL POLICY CONDITIONS, SUIT AGAINST THE COMPANY, is amended by the addition of the following and supersede anything to the contrary:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy.   Legal action must be started within twenty-four (24) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

If under the laws of the jurisdiction in which the property is located, such twenty-four months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

7. The following is deleted from SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

For **Fine Arts** articles, the lesser of the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss or the cost to replace the article or the value if stated on a

**100**

EDGE-207-F (09/14)
Page 3 of 4

Filed in District Co
State of Minneso
8/19/2020 11:21 A

schedule on file.  If the **Fine Arts** article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage.

and

The cost to replace non-repairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement.

**All other terms, conditions and limitations of this Policy remain unchanged**

**101**

Exhibit A to Complaint

State of Minnes
8/19/2020 11:21 /



# Amendatory Endorsement - Florida

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

### Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

A single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless the insurer can demonstrate that the insured has failed to take action reasonably requested by the insurer to prevent a future similar occurrence of damage to the insured property.

### Cancellation for Policies in Effect for Ninety (90) Days or Less

If this Policy has been in effect for ninety (90) days or less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

Twenty (20) days before the effective date of cancellation if the Company cancels for any other reason, except the Company may cancel immediately if there has been a material misstatement or misrepresentation, or a failure to comply with underwriting requirements established by the Company.

The Company may not cancel:

On the basis of property insurance claims that are the result of an act of God, unless the Company can demonstrate, by claims frequency or otherwise, that the Insured has failed to take action reasonably necessary as requested by the Company to prevent recurrence of damage to the insured property; or

Solely on the basis of a single property insurance claim which is the result of water damage, unless the Company can demonstrate that the Insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

### Cancellation for Policies in Effect for More Than Ninety (90) Days

If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained by a material misstatement;

(c) In the event of failure to comply, within ninety (90) days after the effective date of coverage, with underwriting requirements established by the Company before the effective date of coverage;

(d) There has been a substantial change in the risk covered by the Policy;

(e) The cancellation is for all Insureds under such Policies for a given class of Insured;

(f) On the basis of property insurance claims that are the result of an act of God, if the Company can demonstrate, by claims frequency or otherwise, that the Insured has failed to take action reasonably necessary by the Company to prevent recurrence of damage to the insured property;

102

Exhibit A to Complaint

(g) On the basis of a single property insurance claim which is the result of water damage, if the Company can demonstrate that the Insured has failed to take action reasonably requested by the Company to prevent a future similar occurrence of damage to the insured property; or

(h) The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

If the Company cancels this Policy for any of these reasons, the Company will mail or deliver to the **First Named Insured** written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

Ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium; or

Forty-five (45) days before the effective date of cancellation if:

(a) Cancellation is for one of the other reasons stated in paragraphs (a) through (g) above and this policy does not cover a residential structure or its contents; or

(b) Cancellation is based upon the reason stated in (h) above.

120 days before the effective date of cancellation if cancellation is for one of the reasons stated in paragraphs (b) through (g) above and this policy covers a residential structure or its contents.

If this policy has been in effect for more than 90 days and covers a residential structure or its contents, the Company may not cancel this policy based on credit information available in public records.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than 90% of the pro rata unearned premium. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, the Company will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then subject to the Insured's full cooperation with us or our agent in securing the necessary data for audit, the Company will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then the Company shall accept the Insured's own audit, and any premium refund due shall be mailed within 10 working days of receipt of the Insured's audit.

The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.


Non-Renewal

1. The Company may non-renew this Policy by mailing or delivering to the **First Named Insured,** at the Insured's last mailing address known to us, written notice of non-renewal, accompanied by the specific reason for non-renewal at least:

   (a) Forty-five (45) days prior to the expiration of this Policy if this policy does not cover a residential structure or its contents of it is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation; or

   (b) 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to the Company. If notice is mailed, proof of mailing will be sufficient proof of notice.

103

Exhibit A to Complaint

3. The Company may not refuse to renew this policy:

(a) On the basis of property insurance claims that are the result of an act of God, unless the Company can demonstrate, by claims frequency or otherwise, that the Insured failed to take action reasonably necessary as requested by the Company to prevent recurrence of damage to the insured property;

(b) On the basis of filing of claims for **Sinkhole Loss.** However, the Company may refuse to renew this policy if:

(1) The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or
(2) The Insured has failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

(c) Solely on the basis of a single property insurance claim which is the result of water damage, unless the Company can demonstrate that the Insured has failed to take action reasonably requested by the Company to prevent a future similar occurrence of damage to the insured property.

(d) Notwithstanding the provisions of Paragraph 3., the Company may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If the Company nonrenews this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, the Company will offer the Insured a policy that includes catastrophic ground cover collapse coverage.

(e) Notwithstanding the provisions of Paragraph 3., the Company may refuse to renew this policy if nonrenewal of some or all of the Company's policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

Limitations on Cancellation and Nonrenewal In the Event of Hurricane or Wind Loss- Residential Property

The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

(a) Except as provided in the paragraph (b), the Company may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If the Company elects to not renew the policy, the Company will provide at least 100 days' notice that the Company intends to nonrenew 90 days after the substantial completion of repairs.

(b) The Company may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

(1) Nonpayment of premium;
(2) Material misstatement or fraud related to the claim;
(3) The Company determines that the Insured has unreasonably caused a delay in the repair of the structure; or
(4) The Company has paid the policy limits.

If the Company cancels or nonrenew for nonpayment of premium, the Company will give the Insured 10 days' notice. If the Company cancels or nonrenews for a reason listed in Paragraph (b)(2), (b)(3) or (b)(4), the Company will give the Insured 45 days' notice.

With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. The Company may collect premium for the period of time for which the policy period is extended.

With respect to the above paragraph, a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

2. SECTION VI. - GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

104

Exhibit A to Complaint

Filed in District Co
State of Minneso
8/19/2020 11:21 /

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy may be void as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It may also be void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

This Policy;

The Covered Property;

The Insured's interest in Covered Property; or

A claim under this Policy.

3. **SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY**, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within five (5) years from the date of loss.

4. The following is deleted from **SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:**

The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

The Company has reached agreement on the amount of loss; or

An appraisal award has been made,

and replaced by the following:

If the Insured has complied with all the terms of this Policy, the Company will pay for covered loss or damage within:

Twenty (20) days after receiving the sworn statement of loss and reaching written agreement with the Insured; or

Thirty (30) days after receiving the sworn statement of loss; and

There is an entry of a final judgment; or

A filing of an appraisal award with the Company.

5. **SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS** Is amended by adding the following:

A claim, supplemental claim or reopened claim for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim supplemental claim or reopened claim is given to the Company within 3 years after the hurricane first made landfall or the windstorm caused covered damage.

For purposes of this section, the term "supplemental claim" or "reopened claim" means any additional claim for recovery from the insurer for losses from the same hurricane or windstorm which the insurer has previously adjusted pursuant to the initial claim.

6. **SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS** is amended by adding the following:

Upon receipt of a claim for a **Sinkhole Loss** to a covered building, the Company shall meet the following standards in investigating a claim:

(1) Inspect the Insured's premises to determine if there is **Structural Damage** that may be the result of **Sinkhole Activity**.

105

State of Minnes
8/19/2020 11:21 /

(2) If the Company confirms that **Structural Damage** exists but is unable to identify a valid cause of such damage or discovers that such damage is consistent with **Sinkhole Loss**, the Company shall engage a **Professional Engineer** or a **Professional Geologist** to conduct testing as provided in s. 627.7072, Florida Statutes to determine the cause of the loss within a reasonable professional probability and issue a report as provided in s. 627.7073, Florida Statutes only if **Sinkhole Loss** is covered under the policy. Except as provided in subsections (4) and (6), the fees and costs of the **Professional Engineer** or **Professional Geologist** shall be paid by the Company.

(3) Following the initial inspection of the policyholder's premises, the Company shall provide written notice to the Insured disclosing the following information:

(a) What the Company has determined to be the cause of damage, if the Company has made such a determination.

(b) A statement of the circumstances under which the Company is required to engage a **Professional Engineer** or a **Professional Geologist** to verify or eliminate **Sinkhole Loss** and to engage a **Professional Engineer** to make recommendations regarding land and building stabilization and foundation repair.

(c) A statement regarding the right of the Insured to request testing by a **Professional Engineer** or a **Professional Geologist**, the circumstances under which the Insured may demand certain testing, and the circumstances under which the Insured may incur costs associated with testing.

(4) (a) If the Company determines that there is no **Sinkhole Loss**, the Company may deny the claim.

(b) If coverage for **Sinkhole Loss** is available and the Company denies the claim without performing testing under s. 627.7072, Florida Statutes,  the  Insured  may demand testing by the Company under s. 627.7072, Florida Statutes.

1. The Insured's demand for testing must be communicated to the Company in writing within 60 days after the Insured's receipt of the insurer's denial of the claim.

2. The Insured shall pay 50 percent of the actual costs of the analyses and services provided under ss. 627.7072, Florida Statutes  and 627.7073,  Florida Statutes  or $2,500, whichever is less.

3. The Company shall reimburse the Insured for the costs if the Company's engineer or geologist provides written certification pursuant to s. 627.7073, Florida Statutes  that there is **Sinkhole Loss**.

(5) If a **Sinkhole Loss** is verified, the Company shall pay to stabilize the land and building and repair the foundation in accordance with the recommendations of the **Professional Engineer** retained pursuant to subsection (2), with notice to the Insured, subject to the coverage and terms of the policy. The Company shall pay for other repairs to the structure and contents in accordance with the terms of the policy. If a covered building suffers a **Sinkhole Loss**, the insured must repair such damage or loss in accordance with the Company's **Professional Engineer's** recommended repairs. However, if the Company's **Professional Engineer** determines that the repair cannot be completed within policy limits, the Company must pay to complete the repairs recommended by the insurer's **Professional Engineer** or tender the policy limits of the affected building to the Insured.

(a) The Company may limit its total claims payment to the actual cash value of the **Sinkhole Loss**, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the building, until the Insured enters into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in the Company's report issued pursuant to s. 627.7073, Florida Statutes.

(b) In order to prevent additional damage to the building or structure, the Insured must enter into a contract for the performance of building stabilization and foundation repairs within 90 days after the Company confirms coverage for the **Sinkhole Loss** and notifies the Insured of such confirmation. This time period is tolled if either party invokes the **Neutral Evaluation** process, and begins again 10 days after the conclusion of the **Neutral Evaluation** process.

(c) After the Insured enters into the contract for the performance of building stabilization and foundation repairs, the Company shall pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. The Company may not require the Insured to advance payment for such repairs.

If repair has begun and the aforementioned professional engineer determines that the repairs will exceed the applicable Limit of Insurance, the Company will pay only the remaining portion of the applicable Limit of Insurance upon such

106

EDGE-210-D (07/16)
Page 5  of 9

State of Minnesota
8/19/2020 11:21 A

determination.  The most the Company will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

(d) The stabilization and all other repairs to the structure and contents must be completed within 12 months after entering into the contract for repairs described in paragraph (b) unless:

1. There is a mutual agreement between the Company and the Insured;

2. The claim is involved with the **Neutral Evaluation** process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

(e) Upon the Company's obtaining the written approval of any lienholder, the Company may make payment directly to the persons selected by the Insured to perform the land and building stabilization and foundation repairs. The decision by the Company to make payment to such persons does not hold the Company liable for the work performed. The Insured may not accept a rebate from any person performing the repairs specified in this section. If an Insured does receive a rebate, coverage is void and the Insured must refund the amount of the rebate to the Company.

(6) If the Company obtains, pursuant to s. 627.7073, Florida Statutes,  written certification that there is no **Sinkhole Loss** or that the cause of the damage was not **Sinkhole Activity**, and if the Insured has submitted the **Sinkhole** claim without good faith grounds for submitting such claim, the Insured shall reimburse the Company for 50 percent of the actual costs of the analyses and services provided under ss. 627.7072, Florida Statutes  and 627.7073, Florida Statutes; however, an Insured is not required to reimburse the Company more than $2,500 with respect to any claim. The Insured is required to pay reimbursement only if the Insured requested the analysis and services provided under ss. 627.7072, Florida Statutes  and 627.7073,  Florida Statutes  and the Company, before ordering the analysis under s. 627.7072, Florida Statutes,  informs the Insured in writing of the Insured's potential liability for reimbursement and gives the Insured the opportunity to withdraw the claim.

(7) The Company may engage a professional structural engineer to make recommendations as to the repair of the structure.

(8) Any claim, including but not limited to, initial, supplemental, and reopened claims under an insurance policy that provides sinkhole coverage is barred unless notice of the claim was given to the insurer in accordance with the terms of the policy within 2 years after the policyholder knew or reasonably should have known about the **sinkhole** loss.

7.   SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS is amended by adding the following:

(a) Within 90 days after an insurer receives notice of a property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay such claim or a portion of the claim is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of a claim or portion of a claim paid 90 days after the insurer receives notice of the claim, or paid more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, shall bear interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection shall not form the sole basis for a private cause of action.

(b) Notwithstanding subsection (4), for purposes of this subsection, the term "claim" means any of the following:

1. A claim under an insurance policy providing residential coverage as defined in s. 627.4025(1);

2. A claim for structural or contents coverage under a commercial property insurance policy if the insured structure is 10,000 square feet or less; or

3. A claim for contents coverage under a commercial tenants policy if the insured premises is 10,000 square feet or less.

107

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

(c) This subsection shall not apply to claims under an insurance policy covering nonresidential commercial structures or contents in more than one state.

8. SECTION VII – DEFINITIONS, **Earth Movement** is deleted in its entirety and replaced by the following:

**Earth Movement** - Any **Earth Movement** including earthquake, landslide, mine subsidence, earth sinking, rising, shifting, and **Sinkhole** collapse. **Catastrophic Ground Cover Collapse (CGCC)** will not be considered **Earth Movement** within the terms and conditions of this Policy.

9. SECTION VII – DEFINITIONS, the following is added to the definition of **Terrorist Activity**:

If both the **Terrorist Activity** and subject loss take place at **Locations** in the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico, then any **Terrorist Activity** shall be an act of terrorism as defined by the (United States) Terrorism Risk Insurance Act 2002, as amended.

10. SECTION VII – DEFINITIONS, the following is added:

**Catastrophic Ground Cover Collapse (CGCC)** - Geological activity that results in all the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. **Structural Damage** to the covered building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

Contents coverage applies if there is a loss resulting from a catastrophic ground cover collapse. Damage consisting merely of the settling or cracking of a foundation, structure, or building does not constitute a loss resulting from a catastrophic ground cover collapse.

**Neutral Evaluation** - The alternative dispute resolution provided in s. 627.7074, Florida Statutes.

**Neutral Evaluator** - A professional engineer or a **Professional Geologist** who has completed a course of study in alternative dispute resolution designed or approved by the department for use in the neutral evaluation process and who is determined by the department to be fair and impartial.

**Primary Structural Member** - A structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**Primary Structural System** - An assemblage of **Primary Structural Members**.

**Professional Engineer** - A person, as defined in s. 471.005, Florida Statutes, who has a bachelor's degree or higher in engineering. A professional engineer must also have experience and expertise in the identification of **Sinkhole Activity** as well as other potential causes of **Structural Damage**.

**Professional Geologist** - A person, as defined in s. 492.102, Florida Statutes, who has a bachelor's degree or higher in geology or related earth science and experience and expertise in the identification of **Sinkhole Activity** as well as other potential geologic causes of **Structural Damage**.

**Sinkhole** - A landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater. A **Sinkhole** forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

**Sinkhole Activity** - Settlement or systematic weakening of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

**Sinkhole Loss - Structural Damage** to the covered building, including the foundation, caused by **Sinkhole Activity**. Contents coverage and additional living expenses apply only if there is **Structural Damage** to the covered building caused by **Sinkhole Activity.**

**Structural Damage** - A covered building, regardless of the date of its construction, has experienced the following:

1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

3. Damage that results in listing, leaning, or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

5. Damage occurring on or after October 15, 2005, that qualifies as **Substantial Structural Damage** as defined in the Florida Building Code.

11. SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS, B. Description of Special Coverages, TAX LIABILITY is deleted in its entirety and replaced by the following:

TAX LIABILITY

If the amount of loss covered hereunder cannot be paid in the country where the loss occurred and the corporate tax rate is higher in the country where the payment occurs, and the payee is required to pay tax on the claim proceeds or has realized a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence, the Company will be liable for the difference in tax basis as an additional loss payment (ALP).

Financial accounting income shall be determined under generally accepted accounting principles or standards.

Financial accounting income and corporate income tax shall be determined in the local currency of the country where the loss occurred and where the loss payments are received.

The ALP will be paid only after receipt of documentation supporting the claim and a certification by the Chief Executive Officer or Chief Financial Officer of the payee that to the best of his or her knowledge, based on a review of all applicable financial and tax data:

1). The payee is required to pay tax on the claim proceeds or will realize a reduction of a tax benefit that would otherwise have been recognized in the payee's country of residence; and

2). The tax to be paid and pre-tax Financial Accounting Income data provided is accurate and complete and fairly presents in all material respects the financial results of the payee in the applicable country.

Notwithstanding the coverage for tax payment granted under this Coverage, it is understood and agreed that the Insured will cooperate with the Company in making every reasonable effort to have the amount of loss paid in the country in which the loss occurred, where permitted by law. In addition the Insured agrees to try to mitigate any loss that the Company may be responsible for under this Tax Liability Coverage.

Filed in District Co
State of Minneso
8/19/2020 11:21 /

With respect to payments made under this Coverage, the Company may examine and audit the Insured's books and records at any time up to three years after payment.

12. Any reference to **First Named Insured** shown in this policy shall be deemed to refer to the Named Insured as shown on the declarations.

**All other terms, conditions and limitations of this Policy remain unchanged.**

110

EDGE-210-D (07/16)
Page 9   of 9

State of Minnes(
8/19/2020 11:21 /



# Amendatory Endorsement - Georgia

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

> No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (24) twenty-four months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

111

Filed in District Court
State of Minnesota
8/19/2020 11:21 /



# Amendatory Endorsement - Illinois

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  SECTION VI - GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL is deleted in its entirety and replaced by the following:

**Cancellation**

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

If this Policy has been in effect for 60 days or less, except as provided below when the Policy covers real property other than residential property occupied by four families or less, the Company may cancel this Policy by mailing written notice of cancellation at least:

Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or,
Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

If this Policy has been in effect for more than 60 days, except as provided below when the Policy covers real property other than residential property occupied by four families or less, the Company may cancel this Policy only for one or more of the following reasons:

a.  Nonpayment of premium;

b.  The Policy was obtained through a material misrepresentation;

c.  The First Named Insured has violated any of the terms and conditions of the Policy;

d.  The risk originally accepted has measurably increased;

e.  Certification to the Director of Insurance of the loss by reinsurance by the insurer which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

f.  A determination by the Director that the continuation of the Policy could place the Company in violation of the insurance laws of this State.

If the Company cancels this Policy based on one or more of the above reasons except for nonpayment of premium, the Company will mail written notice at least 60 days before the effective date of cancellation.  When cancellation is for nonpayment of premium, the Company will mail written notice at least 10 days before the effective date of cancellation.

The Company will mail notice to the **First Named Insured's** last known mailing address.

Notification of cancellation will also be sent to the **First Named Insured's** broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the Policy.

Notice of cancellation will state the effective date and specific reason(s) for cancellation.  The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount.  The cancellation will be effective even if the Company has not made or offered a refund.

112

EDGE-214-C (03/18)
Page 1 of 4

State of Minnes
8/19/2020 11:21 /

If notice is mailed, then proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

The following applies only if this Policy covers property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this Policy, the Company may cancel this Policy by mailing to the First Named Insured written notice of cancellation, by both certified and regular mail, if:

a.  After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b.      The building has been occupied 60 or more consecutive days.  This does not apply to:

   (1)  Seasonal unoccupancy; or

   (2)  Buildings under repair, construction or reconstruction, if property secured against unauthorized entry.

c.  The building has:

   (1)  An outstanding order to vacate;

   (2)  An outstanding demolition order; or

   (3)  Been declared unsafe in accordance with the law.

d.     Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The Policy will terminate 10 days following receipt of the written notice by the named insured(s).

The following applies only with respect to grain in public grain warehouses:

   The First Named Insured or the Company may cancel this Policy at any time by mailing to:

   a.  The other; and

   b.  The Director of the Illinois Department of Agriculture (at its Springfield Office);

   60 days' written notice of cancellation.

Non-renewal

The Company may non-renew this Policy by mailing to all Named Insured, the Insured's last mailing address known to us, written notice of non-renewal, accompanied by the specific reason for non-renewal at least sixty (60) days prior to the expiration of this Policy.  Proof of mailing will be sufficient proof of notice.

If the Company offers to renew or continue and the First Named Insured does not accept, this Policy will terminate at the end of the current policy period.  Failure to pay the required renewal or continuation premium when due shall mean that the First Named Insured has not accepted the offer.

If the Company fails to mail proper written notice of nonrenewal and the **First Named Insured** obtains other insurance, this Policy will end on the effective date of that insurance.

Notification of nonrenewal will also be sent to the First Named Insured's broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the Policy.

2.  SECTION VI- General Policy Conditions, Loss Conditions, Suit Against The Company is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity, unless the Insured has fully complied with all the provisions of this Policy.  Legal action must be started within twelve (12) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.  However, the Company will extend this period by the number of days between the date the proof of loss is filed and the date the claim is denied in whole or in part.

113

EDGE-214-C (03/18)
Page 2 of 4

3.  SECTION VI- General Policy Conditions, Other Insurance, the following provision is deleted:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

And replaced with the following:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as pro rata contributing insurance.

4.  SECTION VI- General Policy Conditions, Suspended Property, the following provision is deleted:

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property.  This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located.  Once suspended, this insurance can be reinstated only by an endorsement.  Any unearned premium due will be returned by the Company.

And replaced with the following:

When **Covered Equipment** is found to be in, or exposed to a dangerous condition, any of the Company's representatives may immediately suspend this insurance for such **Covered Equipment,** including loss arising out of the dangerous condition of such **Covered Equipment**.  This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the **Covered Equipment** is located.  Once suspended, this insurance can be reinstated only by an endorsement.  Any unearned premium due will be returned by the Company.

**All other terms, conditions and limitations of this Policy remain unchanged.**

114

State of Minnesota
8/19/2020 11:21

Exhibit A to Complaint

EDGE-214-C (03/18)
Page 4 of 4

State of Minnes
8/19/2020 11:21 /



# Amendatory Endorsement – Indiana

**ZURICH**®

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  SECTION VI - GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

   The Company will not pay for any loss or damage in any case of:

   Concealment or misrepresentation of a material fact; or

   Fraud

   Committed by an insured at any time relating to a claim under this Policy.

   However, this does not apply when a claim is made by an **Innocent Coinsured** provided:

   The property loss or damage occurs to a the primary residence of the **Innocent Coinsured** as covered under COVERED PROPERTY.

   The **Final Settlement** for the property loss or damage is at least 60% of available insurance proceeds under the Policy.

   The following is added and supersedes provisions to the contrary:

   Any payment made pursuant to a claim made by an **Innocent Coinsured** as described above, will be for:

   The actual cost of repair or replacement of the property that is the subject of the claim if the actual cost of repair or replacement is less than or equal to the maximum limit of coverage under the Policy, or

   The maximum limit of coverage under the Policy is the actual cost of repair or replacement of the property that is the subject of the claim is greater than the maximum limit of coverage under the Policy.

   Any payment made pursuant to above, is limited to the following:

   An **Innocent Coinsured's** ownership interest in the property, less any payments the Company makes to mortgagee or other lienholder with a secured interest in the property.

   The Company will not pay another coinsured for any part of the claim for which the Company has already paid to an **Innocent Coinsured**.

   The Company will not pay an amount that is greater than the amount an **Innocent Coinsured** is entitled to under a decree of dissolution of marriage between the Innocent Coinsured and an individual described below.

   As used in this endorsement, **Innocent Coinsured** is an insured who:

   Did not have knowledge of, cooperate in, or intentionally contribute to a property loss or damage that was caused or arranged by another individual who:

   Is an insured and:

116

Exhibit A to Complaint

Died in connection with the circumstances that caused the property loss or damage; or

Has been charged with a crime based on a court finding that there is probable cause to believe that the individual committed the crime in connection with the circumstances that caused the property loss or damage;

Signs a sworn affidavit attesting that they did not have knowledge of, cooperate in, or intentionally contribute to the property loss or damage; and

Cooperates in the investigation and resolution of the claim for the property loss or damage, any police investigation related to the property loss or damage, and any criminal prosecution of the individual that caused or arranged the property loss or damage.

As used in this endorsement, **Final Settlement** is a determination:

Of the amount owed by the Company to an **Innocent Coinsured** under COVERED PROPERTY under this Policy and for property loss or damage to the **Innocent Coinsured's** primary residence; and

Made by:

Acceptance of a proof of loss by the Company;

Execution of a release by an **Innocent Coinsured**;

Acceptance of an arbitration award by the **Innocent Coinsured** and the Company; or

Judgment of a court of competent jurisdiction.

However, **Final Settlement** does not apply to loss or damage related to contents, personal property or another loss that is not covered under Covered Property under this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

117

Exhibit A to Complaint

State of Minneso
8/19/2020 11:21 /

# Amendatory Endorsement - Kansas



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1.  The following is deleted from Section VI-General Policy Conditions, Cancellation/Non-renewal, Cancellation,

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

    The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

    and replaced by the following:

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations, which shall not be less than five (5) days if the nonpayment is for a premium installment; or

    The greater of thirty (30) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

2.  Section VI-General Policy Conditions, Loss Conditions, Suit Against the Company, is deleted in its entirety and replaced by the following:

    SUIT AGAINST THE COMPANY

    No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy.   Legal action must be started within five (5) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

    If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

**All other terms, conditions and limitations of this Policy remain unchanged.**

118

Exhibit A to Complaint

State of Minnes...
8/19/2020 11:21 /



**ZURICH**®

# Amendatory Endorsement - Kentucky

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  The following section is deleted from SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL:

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

    The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

    and replaced with:

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    Fourteen (14) days before the effective date of cancellation if this Policy has been in effect for sixty (60) days or less. Cancellation can be for any reason, and the notice will state the reason for cancellation.

    For Policies in effect for more than sixty (60) days or that are a renewal of a Policy the Company issued:

    Fourteen (14) days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

    Seventy-five (75) days before the effective date of cancellation, if cancellation is for:

    Discovery of fraud or material misrepresentation made by the Insured or with the Insureds' knowledge in obtaining the Policy, continuing the Policy, or in presenting a claim under the Policy;

    Discovery of willful or reckless acts or omissions on the Insureds' part which increase any hazard insured against;

    The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

    A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

    The Company is unable to reinsure the risk covered by the Policy; or

    A determination by the commissioner that the continuation of the Policy would place the Company in violation of the Kentucky insurance code or regulations of the commissioner.

119

EDGE-218-B (01/11)
Page 1 of 2

State of Minnesot
8/19/2020 11:21 A

2.  SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Non-renewal is deleted in its entirety and replaced by the following:

Non-renewal

For the purpose of this Condition:

Any Policy period or term of less than six (6) months shall be considered to be a Policy period or term of six (6) months; and

Any Policy period or term of more than one (1) year or any Policy with no fixed expiration date shall be considered a Policy period or term of one (1) year.

If the Company elects not to renew this Policy, the Company will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to the Company, at least seventy-five (75) days before the expiration date of the Policy period.

If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing Policy period upon payment of the appropriate premium until the Insured has accepted replacement coverage with another insurer, or until the Insured has agreed to the nonrenewal.

If the Company mails or delivers a renewal notice to the first Named Insured at least thirty (30) days before the end of the Policy period, stating the renewal premium and its due date, the Policy will terminate without further notice unless the renewal premium is received by the Company or its authorized agent by the due date.

If this Policy terminates because the renewal premium has not been received by the due date, the Company will, within fifteen (15) days, mail or deliver to the first Named Insured at the last known address a notice that the Policy was not renewed and the date it was terminated.

If notice is mailed, proof of mailing is sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

120

State of Minnes
8/19/2020 11:21 A



# Amendatory Endorsement - Louisiana

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  SECTION III – PROPERTY DAMAGE, C. EXCLUSIONS, paragraph 3.03.01.01.is deleted in its entirety and replaced by the following:

    3.03.01.01.  **Contamination** or asbestos, and any cost due to **Contamination** or asbestos including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.

2.  SECTION III – PROPERTY DAMAGE, C. EXCLUSIONS, paragraph 3.03.03.03 is deleted in its entirety and replaced by the following:

    3.03.03.03   Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, regardless of who commits the act.

3.  Section VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL is deleted in its entirety and replaced with the following::

    If this Policy is cancelled, the Company will return any premium refund due.  The cancellation will be effective even if the Company has not made or offered a refund.

    1.  If the first Named Insured cancels, the refund will not be less than  90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

        We will send the refund to the first Named Insured and any mortgagee that has provided us with written notice of the percentage of the premium being funded with the mortgagee's own funds. The percentage of the unearned premium attributable to the mortgagee shall be returned to the mortgagee and the percentage of the unearned premium attributable to the first Named Insured shall be returned to the first Named Insured.

    2.  If we cancel, the refund will be pro rata and we will send the refund to the first Named Insured

    If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the **First Named Insured** at least:

    1.     10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

    2.     60 days before the effective date of cancellation, if we cancel for any other reason.

    If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the **First Named Insured** at least:

    1.  10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

    2.  30 days before the effective date of cancellation, if we cancel for any other reason.

    Cancellation of a policy in effect more than 60 days will be based on one of the following reasons:

    1.  Nonpayment of premium.

    2.  Fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining the policy, continuing the policy, or presenting a claim under the policy.

121

3. Activities or omissions on the part of the named insured change or increase any hazard insured against.

4. Change in the risk, which increases the risk of loss after coverage has been issued or renewed.

5. Determination by the Commissioner (of Insurance) that the continuation of the policy would jeopardize the solvency of the insurer or place the insurer in violation of the law.

6. Violation or breach of policy terms or conditions by the Insured.

7. Other approved reasons.

If we elect not to renew the policy, we will mail or deliver written notice of nonrenewal to the **First Named Insured** at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date. The notice will include the insured's loss run information for the period the policy has been in force, not to exceed three years.

4.   SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

This Policy will be canceled in any case of fraud by any Insured as it relates to this Policy at any time. It will also be canceled if any Insured, at any time, intentionally conceals or misrepresents a material fact, with the intent to deceive concerning:

1. This Policy;

2. The Covered Property;

3. The interest in the Covered Property; or

4. A claim under this Policy.

5.   Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUBROGATION is amended by the addition of the following:

The Company will be entitled to recovery only after the insured has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.

6.   Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL is deleted in its entirety.

7.   The following is deleted from SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

The Company has reached agreement on the amount of loss; or

and replaced by the following:

The Company has reached agreement on a portion of or the total amount of loss; or

8.   SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (24) twenty-four months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

9.   The following is deleted from SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

Any reference to " the most functionally equivalent " shall be replaced with  "of like kind and quality".

122

Exhibit A to Complaint

10. SECTION II – DECLARATIONS, Time Specifications, is deleted in its entirety and replaced by the following:

    2.03.10. Time Specifications: As follows:

| EARTH MOVEMENT Occurrence | 168 hours |
|---|---|
| NAMED STORM Occurrence | 72 hours |
| Cancellation for nonpayment of premium | 10 days |
| Cancellation for any other reason | 60 days |

11. The following is deleted from SECTION VII - DEFINITIONS

    **Contamination(Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

    and replaced by the following:

    **Contamination(Contaminated)** - Any condition of property due to the actual presence of any **Contaminant(s)**.

12. The following is deleted from SECTION VII – DEFINITIONS:

    **Contaminant(s)** - Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

    And replaced with the following:

    **Contaminant(s)** - Any solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), other hazardous substances, **Fungus** or **Spores**.

**All other terms, conditions and limitations of this Policy remain unchanged.**

123

EDGE-219-C (01/18)
Page 3 of 3

State of Minnesot
8/19/2020 11:21 A



# Amendatory Endorsement - Maryland

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  The Cancellation subsection under SECTION IV- GENERAL POLICY CONDITIONS, CANCELLATION/NON- RENEWAL is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

When this policy has been in effect for 45 days or less and is not a renewal policy, the Company may cancel this policy by mailing to the **First Named Insured**, at the last mailing address, written notice of cancellation, stating the reason for cancellation, at least:

10 days before the effective date of cancellation if the Company cancels for nonpayment of premium.

15 days before the effective date of cancellation if the Company cancels because the risk does not meet its underwriting standards.

When this policy has been in effect for more than 45 days or is a renewal policy, the Company may cancel this policy by mailing to the **First Named Insured**, at the last mailing address, written notice of cancellation at least:

10 days before the effective date of cancellation if the Company cancels for nonpayment of premium.

45 days before the effective date of cancellation if the Company cancels for a permissible reason other than nonpayment of premium, stating the reason for cancellation. The Company may cancel only for one (1) or more of the following reasons:

When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

A change in the condition of the risk that results in an increase in the hazard insured against. A matter or issue related to the risk that constitutes a threat to public safety.

If this policy is cancelled, the Company will send the **First Named Insured** any premium refund due.

The refund will be pro rata if:

The **First Named Insured** cancels or:

The policy is not a renewal policy, and the First Named Insured cancels upon receiving written notice that the Company recalculated the premium based on the discovery of a material risk factor during the first 45 days the policy has been in effect.  Other than this type of cancellation, the refund will be calculated as follows:

For policies written for one year or less, the Company will refund 90% of the pro rata unearned premium. For policies written for more than one year:

If the policy is cancelled in the first year, the Company will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

If the policy is cancelled after the first year, the Company will refund the pro rata unearned premium. 124

EDGE-221-C (08/17)
Page 1  of 2

State of Minnesota
8/19/2020 11:21

**Continuous and Annual Premium Payment Policies**

The Company will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

The Company will retain the minimum premium, except if the policy is cancelled as of the inception date.

However, if this policy is financed by a premium finance company and the Company or the premium finance company or the **First Named Insured** cancels the policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if the Company has not made or offered a refund.

The Company will send notice of cancellation to the **First Named Insured** by certificate of mail if:

The Company cancel for nonpayment of premium; or

This policy is not a renewal of a policy the Company issued and has been in effect for 45 days or less.

The Company will send notice to the **First Named Insured** by certificate of mail or by commercial mail delivery service if the Company cancels for a reason other than nonpayment of premium and this policy:

Is a renewal of a policy we issued; or

Has been in effect for more than 45 days.

The Company will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD, is deleted in its entirety.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within three (3) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4. SECTION VI – GENERAL POLICY CONDITIONS, SUSPENDED PROPERTY, is deleted in its entirety.

5. The following is added to 3.02. PROPERTY NOT COVERED:

Any property, prior to a loss, found to be in, or exposed to, a dangerous condition, by any of the Company's representatives, and the Insured is put on notice for such condition, until the dangerous condition has been corrected.

**All other terms, conditions and limitations of this Policy remain unchanged.**

125

EDGE-221-C (08/17)
Page 2 of 2

Filed in District Co...
State of Minneso...
8/19/2020 11:21 A...



# Amendatory Endorsement - Massachusetts

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

A.  The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

MASSACHUSETTS CONDITION

1.  In spite of any provision of any general or special law:

a)  The Company will not pay for loss or damage to buildings or structures caused by any **Covered Cause of Loss** if the amount of loss is $5,000 or more unless the Insured first submits a certificate of municipal liens from the collector of taxes of the city or town where the property is located.

b)  The Company will pay to the city or town any amount outstanding on the certificate of municipal liens arising from the provisions of Massachusetts General Law Chapters 40, 59, 60, 80, 83, and 164, Sections 58B through 58F.

The payment will not exceed the amount of loss payable under this Policy.

We will send the Insured and the mortgage holder proof of payment to the city or town.

c)  The claim of the city or town will have priority over the claim of any mortgage holder, assignee, Insured or any other interested party, except where otherwise provided by the laws of the United States.

d)  The Company will not be liable to any city, town, mortgage holder, assignee, Insured or any other interested party for:

1)  Amounts paid to a city or town; or

2)  Amounts not paid to a city or town based upon a certificate showing that no municipal liens exist.

This section 1. above does not apply to any owner-occupied one to four-family dwelling if the owner of the dwelling lived there when the claim for loss or damage arose.

2.  The Company will not pay any claim for:

a).  Loss, damage, or destruction of $1,000 or more to a building or structure; or

b).  Loss, damage or destruction, of any amount, that causes a building or structure to become:

1).  Dangerous to life or limb; or

2).  Unused, uninhabited or abandoned and open to the weather; as provided under Massachusetts General Law, Section 6 of Chapter 143;

c).  Without giving at least ten (10) days written notice before such payment to:

1).  The Building Commissioner or the appointed Inspector of Buildings; and

2).  The Board of Health or the Board of Selectmen of the city or town where the property is located

3.  If at any time before the Company's payment, the city or town notifies the Company by certified mail of its intent to begin proceedings designed to perfect a lien under Massachusetts General Law:

a).  Chapter 143, Section 3A or 9; or

126

EDGE-222-C (12/15)
Page 1  of 7

Filed in District Co
State of Minnes
8/19/2020 11:21 /

b).  Chapter 111, Section 127B;

The Company will not pay while the proceedings are pending.  The proceedings must be started within thirty (30) days after the Company receives the notice.

Any lien perfected under the Massachusetts General Laws referred to above, will extend to the city or town and may be enforced by it against the proceeds of this Policy.

4.  The Company will not be liable to any city, town, mortgage holder, assignee, Insured or any other interested party for:

   a)  Amounts paid to a city or town; or

   b)  Amounts not paid to a city or town under sections 2. and 3. above.

A.  The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

## STANDARD FIRE POLICY PROVISIONS

Your Policy contains LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your Policy. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions contained in your policy are void. The Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead

In consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this Company, for the term of years specified in the Declarations from inception date (At 12:01 A.M. Standard Time) to expiration date (At 12:01 A.M. Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss or the valuation terms of the policy, but in no event for more than the interest of the Insured, against all LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this Policy or pro rata for five (5) days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this Policy, but not elsewhere.

**Assignment of this Policy shall not be valid except with the written consent of this Company.**

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

**Concealment fraud.**

This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

**Uninsurable and excepted property.**

This Policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named herein in writing, bullion or manuscripts.

**Perils not included.**

This Company shall not be liable for loss by fire or other perils insured against in this Policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this Policy; (i) neglect of the Insured to use all

127

EDGE-222-C (12/15)
Page 2   of 7

State of Minnesota
8/19/2020 11:21 /

reasonable means to save and to preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises;  (j) nor shall this company be liable for loss by theft.

**Other Insurance.**

Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance.**

Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the Insured; or (b) while the Described Premises, whether intended for occupancy by owner or tenant, are  vacant or unoccupied beyond a period of sixty (60) consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only  . This paragraph does not suspend or restrict the coverage contained in the following policies: Zurich Edge Domestic Policy, Edge-100-B (12/10); Zurich Edge Global Policy, Edge-101-B (12/10); Zurich Edge Domestic Healthcare Policy, Edge-102-B (12/10); Zurich Edge Global Healthcare Policy, Edge-103-B (12/10).

**Other perils of subject.**

Any other peril to the insured against or subject of insurance to be covered in this Policy shall be by endorsement in writing hereon or added hereto.
Added provisions.

The extent of the application of insurance under this Policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this Policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this Policy is subject to change.

**Waiver provisions.**

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing hereto. No provision stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of Policy.**

This Policy shall be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this Policy, refund the excess of paid premium above the customary short rates for the expired time.  This Policy may be cancelled at any time by this Company by giving to the Insured a five (5) days written notice of cancellation, and to the mortgagee to whom this Policy is payable twenty (20) days written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instance, this Policy may be cancelled at any time by this Company by giving to the Insured a ten (10) days written notice of cancellation, and the mortgagee a twenty (20) days written notice of cancellation, with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. If notice is mailed, proof of mailing will be sufficient proof of notice.  Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this Policy has been in effect for sixty (60) days, or after sixty (60) days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the Policy, of one or more of the following:

(1) nonpayment of premium;  (2) conviction of a crime arising out of acts increasing the hazard insured against;  (3) discovery of fraud or material misrepresentation by the Insured in obtaining the Policy;  (4) discovery of willful or reckless acts or omissions by the Insured increasing the hazard insured against;  (5) physical changes in the property insured which result in the property becoming uninsurable; or (6) a determination by the commissioner that continuation of the Policy would violate or place the Insurer in violation of the law. Where the stated reason is nonpayment of premium, the Insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

**Mortgagee interests and obligations.**

128

Notwithstanding any other provisions of this Policy, if this Policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this Policy, shall render this Policy void as to such mortgagee nor affect such mortgagee !~ right to recover in case of loss on such real estate; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the Insured; and whenever this Company shall be liable to a mortgagee for any sum for loss under this Policy for which no liability exists as to the mortgagor, or owner, and this Company shall elect by itself, or with others, to pay the mortgagee, the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the Company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

**Pro rata liability**.

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

**Requirements in case loss occurs.**

The Insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the Insured shall forthwith render to this Company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the Insured the following: the time and cause of the loss, the interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all Policies and detailed estimates for repair of the damage. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

**When loss payable**.

In case of any loss or damage, the Company within thirty (30) days after the Insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may, within fifteen (15) days after such statement is submitted, notify the Insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this Policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is more over understood that there can be no abandonment of the property described to the Company, and that the Company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as provided above. The Company shall be liable for the payment of interest to the Insured at a rate of one (1) percent over the prime interest rate on the agreed figure commencing thirty (30) days after the date an executed proof of loss for such figure is received by the Company, said interest to continue so long as the claim remains unpaid.

**Appraisal.**

In case of loss under this Policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the Company and the Insured each choosing one out of three (3) persons to be named by the other, and the third being selected by the two (2) chosen, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four (4) months.

**Suit.**

129

State of Minnesd
8/19/2020 11:21 /

No suit or action against this Company for the recovery of any claim by virtue of this Policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two (2) years from the time the loss occurred; provided, however, that if, within said two (2) years, in accordance with the provisions of the preceding paragraph, the amount of loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety (90) days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this Policy is enjoined or abated, suit or action may be commenced at any time within one (1) year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

**Subrogation.**

This Company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent that payment therefore is made by this Company.

C.  The following is added to Paragraph B. Description of Special Coverages of SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS:

MASSACHUSETTS RESIDENTIAL FUEL TANKS SPILLS COVEAGE - PROPERTY REMEDIATION FOR **"RELEASE OF HEATING OIL"**

a)  With respect to the **"release of heating oil"** from a **tank**, or any piping, fuel supply lines, equipment, or systems connected to the **tank**, at a **residential property**, the Company will pay for:

1).  Reasonable response action costs the Insured incurred under chapter 21E or 21K of the Massachusetts law or applicable regulations, including costs to assess and remediate a **"release of heating oil"** impacting soil, indoor air, water and other environmental media at that **residential property**; and

2).  With respect to a **"release of heating oil"** for which response action costs are incurred and covered pursuant to 1). above, direct physical loss of or damage to **personal property** at that **residential property**.

b)  The most the Company will pay under this endorsement for a **"release of heating oil"** is the applicable limits provided in this policy or $50,000 whichever is greater, for the total of all loss, damage, or costs regardless of:

1)  The amount of time over which the **"release of heating oil"** continues and regardless of whether the release occurs in repeated intervals;

2).  The number of **policy years** during which the **"release of heating oil"** persists;

3).  Whether the heating oil is released from one or multiple outlets on the **tank** body and its related equipment;

4).  Whether there are multiple effects, such as damage to **personal property**, pollution of land and pollution of water;

5).  Whether the effects of the **"release of heating oil"** are discovered and reported once or discovered and reported over time as such effects become apparent;

6).  The number of **locations** affected by the **"release of heating oil"**; or

7).  The number of claims made.

Notwithstanding anything to the contrary in the Policy, the coverage provided by this endorsement is included within the Policy Limit.

c)  The following additional exclusions apply:

The Company will not pay:

130

1)   For any loss of business income or any expenses incurred due to interruption or reduction in business operations, including any Time Element Coverages, even if the Policy includes such coverage;

2).   For any other consequential loss, damage or costs; or

3).   To replace any heating oil that was released.

d)   The Company will not pay for loss, damage or costs under this endorsement until the amount of loss, damage or costs exceed $1,000. The Company will then pay the amount of loss, damage or costs in excess of $1,000 up to the applicable limit, subject to all applicable provisions of A. above. This deductible applies whenever there is a **"release of heating oil"** covered under this endorsement. No other deductible will apply to the coverage provided solely by this endorsement.

e)   When the **"release of heating oil"** results from a **covered cause of loss**, the following apply:

1)   If the loss or damage described in A.a. 2) above is also covered under another coverage(s) in this Policy, then such covered loss or damage will be settled in accordance with all applicable terms of that coverage and this endorsement will not apply. Any deductible applicable to that coverage that is higher than $1,000 is recoverable under this endorsement but not to exceed $50,000.

2)   With respect to pollution of land and water, the costs addressed in A.a.1) above will be settled under the terms of the Land and Water Contaminant Cleanup, Removal and Disposal Coverage and/or the Decontamination Costs Coverage, and this endorsement will apply as excess if the amount of coverage available under the Land and Water Contaminant Cleanup, Removal and Disposal Coverage and/or the Decontamination Costs Coverage is less than $50,000.

f)   Coverage applies only in response to a **"release of heating oil"** which an insured first discovers or learns of during the current **policy year** and reports to the Company as soon as practicable. If the **First Named Insured** discovers or learns of the **"release of heating oil"** during the **policy year** and reports it to the Company following the end of that **policy year**, coverage will apply, provided this endorsement was in effect when the **First Named Insured** discovered or learned of the **"release of heating oil"**, if the **First Named Insured** reported the **"release of heating oil"** to the Company as soon as practicable.

D.   The following is added to SECTION VI. GENERAL POLICY CONDITIONS, OTHER INSURANCE:
Except as provided in 1) below, if there is other insurance covering the same loss, damage or costs covered, the Company will pay only its share of the covered loss, damage, or costs. The Company's share is the proportion of the loss, damage, or costs that the amount of insurance that applies under this endorsement bears to the total amount of insurance covering such loss, damage, or costs.

1).   If there is a **service agreement** covering the same loss, damage, or costs, this insurance is excess over any other amounts payable under the **service agreement**. If there is a government fund covering the same loss, damage, or costs, the Company will pay its share of the covered loss, damage, or costs. The Company's share is the proportion of the loss, damage, or costs that the amount of insurance that applies under this endorsement bears to the total amount of insurance covering such loss, damage, or costs to the extent permitted by law.

E.   The following is added to SECTION VII. DEFINITIONS:

**Compliance** means compliance with Massachusetts's law governing release prevention, pursuant to applicable subsection (b) or (c) of section 38J of chapter 148 of the laws of Massachusetts.

**Personal property** means property owned by you.

**"Release of heating oil"** means both the release of and the threat of release of heating oil.

**Residential property** means a one (1) to four (4) unit dwelling used for living or sleeping located in the Commonwealth of Massachusetts.

**Service Agreement** means a fuel system service plan, property restoration plan, or similar service or warranty agreement, even if it is characterized as insurance

131

Filed in District Cou
State of Minnes
8/19/2020 11:21 /

**Tank** means a liquid fuel tank in which heating oil is stored and from which heating oil is delivered or pumped through a fuel supply line to a device for burning oil in heating appliances, whether located within a **residential property** or other structure and installed at or below grade level, or located outdoors.  **Tank** does not mean any underground tank, wherever located.

**All other terms, conditions and limitations of this Policy remain unchanged.**

132

EDGE-222-C (12/15)
Page 7  of 7

State of Minnesc
8/19/2020 11:21 /



# Amendatory Endorsement - Maine

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

Cancellation

1) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

2) The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation which will not be effective prior to ten (10) days after the receipt by the **First Named Insured** of the notice.

3) The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

4) Notice of cancellation will state the effective date of and reasons for cancellation. The Policy Period will end on that date.

5) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

6) A post office certificate of mailing to the **First Named Insured** at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

7) If this Policy has been in effect for sixty (60) days or more, or if it is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. Fraud or material misrepresentation made by the Insured or with the Insureds consent in obtaining the Policy, continuing the Policy or in presenting a claim under the Policy;

   c. Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

   d. Failure to comply with reasonable loss control recommendations;

   e. Substantial breach of contractual duties, conditions or warranties; or

   f. Determination by the superintendent of insurance that the continuation of a class or block of business to which this Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance laws of Maine or any other state.

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice of nonrenewal which will not be effective prior to thirty (30) days after the receipt by the **First Named Insured** of the notice. A post office certificate of mailing to the **First Named Insured** at the last known address will be conclusive proof of receipt of notice on the third calendar day after mailing.

133

Exhibit A to Complaint

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

2.  Section VI–General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

1)  CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

a.  This Policy;

b.  The Covered Property;

c.  The Insured's interest in Covered Property; or

d.  A claim under this Policy.

3.  SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy.  Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4.  SECTION VI – GENERAL POLICY CONDITIONS, JOINT LOSS, is deleted in its entirety.

**All other terms, conditions and limitations of this Policy remain unchanged.**

134

EDGE-220-B (02/11)
Page 2  of 2

State of Minnesc
8/19/2020 11:21 /



# Amendatory Endorsement - Minnesota

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  The following paragraph under SECTION VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, DUTIES IN THE EVENT OF LOSS OR DAMAGE, is deleted in its entirety:

Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records.  In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter.

and replaced by the following:

Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records.  In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter.  The Insured has the right to an attorney being present during nay examination under oath. Any answers given may be used in future civil or criminal proceedings.

All other terms, conditions and limitations of this Policy remain unchanged.

135

EDGE-224-B (01/11)
Page 1  of 1

State of Minnes
8/19/2020 11:21 /



**ZURICH**®

# Amendatory Endorsement - Mississippi

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

> No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within three (3) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

136

EDGE-225-B (02/11)
Page 1 of 1

State of Minnes
8/19/2020 11:21 /



# Amendatory Endorsement - Missouri

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  The following is deleted from SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

and replaced by the following:

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, stating the actual reason for cancellation, at least:

10 days before the effective date of cancellation if the Company cancels for nonpayment of premium;

30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

Fraud or material misrepresentation affecting this policy or a claim filed under this Policy or a violation of any of the terms or conditions of this Policy;

Changes in conditions after the effective of this Policy which have materially increased the risk assumed;

The Company becomes insolvent; or

The Company involuntarily loses reinsurance for this Policy.

60 days before the effective date of cancellation if the Company cancels for any other reason.

2.  SECTION VI – General Policy Conditions, Cancellation/Non-Renewal, Nonrenewal is deleted in its entirety and replaced by the following:

Nonrenewal

The Company may elect not to renew this policy by mailing or delivering to the **First Named Insured**, at the last mailing address known to the Company, written notice of nonrenewal, stating the actual reason for nonrenewal, at least 60 days prior to the effective date of the nonrenewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

3.  SECTION VI – General Policy Conditions, Suit Against the Company is deleted in its entirety and replaced by the following:

The action must be brought within 10 years after the date on which the loss or damage occurred.

EDGE-226-A (03/11)
Page 1  of 2

Exhibit A to Complaint

State of Minneso
8/19/2020 11:21 A

4. SECTION VI – GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment is deleted in its entirety and replaced by the following:

Loss Payment

In the event of a covered cause of loss, the Company will give the Insured notice, within 15 working days after the Company receives a properly executed proof of loss, that the Company:

Accept your claim;

Denies your claim; or

Needs more time to determine whether the Insured's claim should be accepted or denied.

If the Company denies the Insured's claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If the Company needs more time to determine whether the Insured's claim should be accepted or denied, the written notice will state the reason(s) why more time is needed.

If the Company has not completed its investigation, the Company will notify the Insured again in writing, within 45 days after the date the initial notice is sent informing the Insured that we need more time to determine whether the Insured's claim should be accepted or denied and thereafter every 45 days. The written notice shall state why more time is needed to investigate the Insured's claim.

5. The following is added to SECTION VI – GENERAL POLICY CONDITIONS, VALUATION:

If the Insured fails to notify the Company of their intent within the 2 year timeframe, such failure will not invalidate the claim unless such failure operates to prejudice the Company's rights.

6. The following is deleted from SECTION V- LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL:

When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

and the following is added:

However, when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss the maximum the Company will pay under this coverage is $25,000.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

138

Exhibit A to Complaint

Filed in District Court
State of Minnesota
8/19/2020 11:21 A



# Amendatory Endorsement - Montana

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1. Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   CANCELLATION/NON-RENEWAL

   Cancellation

   The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   Ten (10) days notice prior to the proposed cancellation date for non payment of premium; or

   Ten (10) days notice prior to the proposed cancellation date for any other reason.

   If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, prior to the expiration of the agreed term or prior to one year from the effective date of the Policy or renewal, whichever is less, only for one or more of the following reasons:

   Failure to pay a premium when due;

   Material misrepresentation;

   Substantial change in the risk assumed, except to the extent that the Company should have reasonably foreseen the change or contemplated the risk in writing the contract;

   Substantial breaches of contractual duties, conditions or warranties;

   Determination by the Commissioner of Insurance that continuation of the Policy would place us in violation of the Montana Insurance Code; or

   Such other reasons that are approved by the Commissioner of Insurance. If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by providing Ten (10) days notice before the effective date of cancellation.

   The Company may cancel any Policy with a term of more than one (1) year by mailing or delivering to the **First Named Insured** written notice of cancellation at least forty-five (45) days before the anniversary date of the Policy, such cancellation will be effective on the policy anniversary date.

   The Company will mail or deliver notice to the **First Named Insured's** last mailing address known.

   Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

   If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. However, when a financed

139

EDGE-227-B (12/10)
Page 1  of 2

Filed in District Co...
State of Minnes...
8/19/2020 11:21 /

insurance Policy is cancelled, the Company will send any refund due to the premium finance company on a pro rata basis.

Non-Renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, at the last known address, of non-renewal at least forty-five (45) days before the expiration of this Policy. This Policy has been written for a term of more than one year.

This non-renewal provision does not apply if the Insured has purchased insurance elsewhere, accepted replacement coverage, requested or agreed to non-renewal, or this Policy is expressly designated as nonrenewable.

2.  Section VI–General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following::

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

1. This Policy;

2. The Covered Property;

3. The Insured's interest in Covered Property; or

4. A claim under this Policy.

3.  SECTION VI–GENERAL POLICY CONDITIONS, CONFORMITY TO STATUTES, is amended by the addition of the following and supersede anything to the contrary:

Any provisions required by Montana law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by Montana law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

**All other terms, conditions and limitations of this Policy remain unchanged.**

140

Exhibit A to Complaint

Filed in District Co
State of Minness
8/19/2020 11:21 A



# Amendatory Endorsement - Nebraska

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1.  SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

    CANCELLATION/NON-RENEWAL

    Cancellation

    a)  The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

    b)  If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, stating the reasons for cancellation at least:

        1)  Ten (10) days notice prior to the proposed cancellation date for non payment of premium; or

        2)  Sixty (60) days notice prior to the proposed cancellation date for any other reason.

    c)  If this Policy has been in effect for sixty (60) days or more, or if this is a renewal, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation, only for one or more of the following reasons:

        1)  Nonpayment of premium;

        2)  The Policy was obtained through material misrepresentation;

        3)  Any Insured has submitted a fraudulent claim;

        4)  Any Insured has violated the terms and conditions of this Policy;

        5)  The risk originally accepted has substantially increased;

        6)  Certification to the Director of Insurance of the Company's loss of reinsurance which provided coverage for all or a substantial part of the underlying risk insured; or

        7)  The determination by the Director of Insurance that the continuation of the Policy could place the Company in violation of the Nebraska Insurance Laws.

        If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by providing: Ten (10) days notice prior to the proposed cancellation date for non payment of premium or Sixty (60) days notice prior to the proposed cancellation date for any other reason.

    d)  The Company may cancel any Policy with a term of more than one (1) year by mailing or delivering to the **First Named Insured** written notice of cancellation at least forty-five (45) days before the anniversary date of the Policy, such cancellation will be effective on the policy anniversary date.

    e)  The Company will mail notice by first class mail to the **First Named Insured's** last mailing address known. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

    f)  Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

141

EDGE-232-B (02/11)
Page 1 of 3

g) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

Non-Renewal

The Company may non-renew this Policy. Written notice will be by first class mail to the **First Named Insured**, at the last known address. Notice of non-renewal will be at least sixty (60) days before the expiration of this Policy. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

2. SECTION VI – GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

MISREPRESENTATION OR BREACH OF CONDITION OR WARRANTY

A misrepresentation or warranty made by the Insured or on the Insured's behalf in the negotiation of or application for this coverage will void this Policy if:

1) It is material;

2) It is made with the intent to deceive to the Company's injury;

3) The Company relies on it; and

4) The Company is deceived to the Company's injury.

A breach of warranty or condition will void the Policy if such breach exists at the time of loss and contributes to the loss.

3. SECTION VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety and replaced by the following:

APPRAISAL

If the Insured and the Company fail to agree on the value of the property or the amount of loss, upon mutual agreement, each will select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

The Insured and the Company will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

142

EDGE-232-B (02/11)
Page 2 of 3

State of Minnes
8/19/2020 11:21 /

4.   The following is added to SECTION VI –GENERAL POLICY CONDITIONS, VALUATION:

When this policy is written to insure any real property in Nebraska against loss by fire, tornado, windstorm, lightning or explosion and the property insured shall be wholly destroyed, without criminal fault on the part of the Insured or the Insured assignee, the amount of the insurance written on such real property shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages

**All other terms, conditions and limitations of this Policy remain unchanged.**

143

EDGE-232-B (02/11)
Page 3  of 3

Exhibit A to Complaint

State of Minneso
8/19/2020 11:21 /

# Amendatory Endorsement - Nevada



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

    1).  The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation. The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

        a.   Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

        b.   Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

    The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

    Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

    If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount.  The cancellation will be effective even if the Company has not made or offered a refund.

    If notice is mailed, proof of mailing will be sufficient proof of notice.

    If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

    2).  If this Policy has been in effect for seventy (70) days or more, or if it is a renewal of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

        a.   Nonpayment of premium;

        b.   Conviction of the Insured of a crime arising out of acts increasing the hazard insured against;

        c.
        c.   Discovery of fraud or material misrepresentation in obtaining the Policy or in presenting a claim thereunder;

        d.   Discovery of an act or omission or a violation of any condition of the Policy which occurred after the first effective date of the current Policy, and substantially and materially increases the hazard insured against;

        e.   A material change in the nature or extent of the risk occurring after the first effective date of the current Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;
        d.
        f.   A determination by the commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of the Company's Policyholders, creditors or the public, or

        g.   A determination by the commissioner that the continuation of the Policy would violate, or place the Company in violation of, any provision of the code.

    3).  If this Policy is written for a term longer than one year, the Company may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the First Named Insured at the last known mailing address 144

EDGE-229-B (02/11)
Page 1 of 2

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

least sixty (60) days before the anniversary date. Notice of cancellation or non-renewal will be mailed, first class or certified, or delivered to the **First Named Insured** at the last known mailing address and will state the reason for cancellation or nonrenewal. The Company will also provide a copy of the notice of cancellation to the agent who wrote the Policy.

4). Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice at least sixty (60) days before the agreed expiration date. This non-renewal provision does not apply if the Insured has: accepted replacement coverage, requested or agreed to non-renewal, or this Policy is expressly designated as nonrenewable. If notice is mailed, proof of mailing will be sufficient proof of notice.

145

State of Minnes...
8/19/2020 11:21 A...



# Amendatory Endorsement - New York

**THIS ENDORSEMENT CHANGES THE POLICY AND APPLIES TO THOSE RISKS IN NEW YORK. PLEASE READ IT CAREFULLY.**

1. The following paragraph is deleted from Section III-property damage, exclusions:

   Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

   and replaced by the following:

   Any weapon of war employing atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

2. SECTION VI – GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

   Cancellation

   a) The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   b) For Policies in Effect Sixty (60) Days or Less, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   1) Thirty (30) days before the effective date of cancellation if the Company cancels for any reason not included in paragraph 2) below.

   2) Fifteen (15) days before the effective date of cancellation if the Company cancels for any of the following reasons:

   i) Nonpayment of premium;

   ii) Conviction of a crime arising out of acts increasing the hazard insured against;

   iii) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim;

   iv) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current Policy period;

   v) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with the Company objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

   vi) Required pursuant to a determination by the Superintendent that the continuation of the Company's present premium volume would jeopardize the Company's solvency or be hazardous to the interest of the Company's policyholders, creditors or the public;

146

Exhibit A to Complaint

State of Minnesc
8/19/2020 11:21 /

vii) A determination by the superintendent that the continuation of the Policy would violate, or would place the Company in violation of any provision of the Insurance Code; or

viii) Where the Company has reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the Insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If the Company cancels for this reason, the Insured may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review the cancellation decision. Also, the Company will simultaneously send a copy of this cancellation notice to the Insurance Department.

If notice of cancellation is due to nonpayment of premium, then the notice shall state the amount of premium that must be paid in order to avoid cancellation of the policy.

c) For Policies in effect for more than sixty (60) days, or if this Policy is a renewal or continuation of a Policy the Company issued, the Company may cancel this Policy only for any of the reasons listed in paragraph 2) above, provided the Company mails the **First Named Insured** written notice at least fifteen (15) days before the effective date of cancellation. If notice of cancellation is due to nonpayment of premium, then the notice shall state the amount of premium that must be paid in order to avoid cancellation of the policy.

d) The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the authorized agent or broker.

e) Notice of cancellation will state the effective date of and the reason for cancellation. The Policy Period will end on that date.

f) If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the Company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if the Company has not made or offered a refund.

g) If notice is mailed, proof of mailing will be sufficient proof of notice.

**Non-renewal**

a) The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice along with the reason for non-renewal.

b) The Company may condition renewal this Policy upon:

   1) Change of limits;

   2) Change in type of coverage;

   3) Reduction of coverage;

   4) Increased deductible;

   5) Addition of exclusion; or

   6) Increased premiums in excess of 10% exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit.

c) If the Company decides to non-renew this Policy or to conditionally renew this Policy as provided in paragraph b)., the Company will mail or deliver written notice to the **First Named Insured** shown in the Declarations at least sixty (60) days but not more than one hundred twenty (120) days before:

   1) The expiration date; or

147

Exhibit A to Complaint

2)   The anniversary date, if this is a continuous Policy.

d)   The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto and to the authorized agent or broker.

e)   Notice will include the specific reason(s) for non-renewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

f)   If notice is mailed, proof of mailing will be sufficient proof of notice.

If the Company violates any of the provisions above by sending the **First Named Insured** an incomplete or late conditional renewal notice or a late non-renewal notice coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the **First Named Insured**, during this 60 day period, has replaced the coverage or elects to cancel.

The Company will not send the Insured notice of non-renewal or conditional renewal if the Insured, the authorized agent or broker or another insurer of the Insured mails or delivers notice that the Policy has been replaced or is no longer desired.

3.   SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

4.   SECTION II – DECLARATIONS - POLICY LIMITS OF LIABILITY, Causation Definition is deleted in its entirety.

5.   SECTION VI- General Policy Conditions, Suspended Property, the following provision is deleted:

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

And replaced with the following:

When **Covered Equipment** is found to be in, or exposed to a dangerous condition, any of the Company's representatives may immediately suspend this insurance for such **Covered Equipment**, including loss arising out of the dangerous condition of such **Covered Equipment**. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the **Covered Equipment** is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

6.   SECTION VII-DEFINITIONS,  The following are deleted and replaced:

**Flood** - A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

The unusual and rapid accumulation or runoff of surface waters, waves,     tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

Mudflow or mudslides caused by accumulation of water on or under the ground.

**Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

148

EDGE-233-B (02/11)
Page 3  of 4

Filed in District Court
State of Minnesota
8/19/2020 11:21 AM

**Flood** also includes **Storm Surge** if shown on the declarations as part of **Flood**.

And replaced with:

> **Flood** - A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:
>
> > a).  The unusual and rapid accumulation or runoff of surface waters, waves,     tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or
> >
> > b).  Mudflow or mudslides caused by accumulation of water on or under the ground.
>
> **Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

> **Named Storm** - Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.
>
> **Named Storm** also includes **Storm Surge** if shown on the declarations as part of **Named Storm**.

And replaced with:

> **Named Storm -** Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

7.  SECTION VII- DEFINITIONS the following is deleted in its entirety:

> **Storm Surge** - A general and temporary condition of partial or complete inundation by salt water, caused by wind driven waves that result from a **Named Storm**, of normally dry land areas or structure(s) in coastal areas, bays or inland waters connected to an ocean or sea.

**All other terms, conditions and limitations of this Policy remain unchanged.**

State of Minnesc
8/19/2020 11:21 /

# Amendatory Endorsement - Ohio


**ZURICH**®

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

1.   SECTION VI - GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

Cancellation

The First Named Insured shown in the policy declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

If the Insured's policy has been in effect for more than 90 days, or is a renewal of a policy we issued, the Company may cancel this policy only for one or more of the following reasons:

Nonpayment of premium;

Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

Discovery of a moral hazard or willful or reckless acts or omissions on an Insured's part which increases any hazard insured against;

The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed, except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

Failure of an Insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

The Company will mail written notice of cancellation to the First Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

The Company will mail notice of cancellation at least:

10 days before the effective date of cancellation, if the Company cancel for nonpayment of premium; or

30 days before the effective date of cancellation, if the Company cancels for any other reason.

The notice of cancellation will:

State the effective date of cancellation. The policy period will end on that date.

150

Contain the date of the notice and the policy number, and will state the reason for cancellation.

Policies written for a term of more than one year or on a continuous basis may be cancelled by the Company for any reason at an anniversary date, upon 30 day's written notice of cancellation.

If this policy is cancelled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company have not made or offered a refund.

Nonrenewal

If the Company elects not to renew this policy, the Company will mail written notice of nonrenewal to the First Named Insured, and agent if any, at the last mailing addresses known to the Company. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

The Company will mail the notice of nonrenewal at least 30 days before the expiration date of the policy. Proof of mailing will be sufficient proof of notice.

2.  **SECTION VI - GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, LOSS PAYMENT**, the following is added:

The Company will give you notice, within 21 days after the Company receives a properly executed, sworn statement of loss, that the Company:

Accepts the Insured's claim;

Denies the Insured's claim; or

Needs more time to investigate the Insured's claim.

If the Company needs more time to investigate the Insured's claim, the Company will provide an explanation for the Company's need for more time. The Company will continue to notify the Insured again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

The Company will pay for covered cause of loss of or damage to covered property within:

Ten (10) days after the Company accepts your claim if such acceptance occurs within the first 21 days after the Company receives a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

Five (5) days after the Company accepts your claim if such acceptance occurs more than 21 days after the Company receives a properly executed proof of loss, and

An appraisal award has been made; or

The Company has reached an agreement with you on the amount of loss that was in dispute.

3.  **SECTION VII – DEFINITIONS, Terrorist Activity** is deleted in its entirety and replaced by the following:

For the purposes of this endorsement Terrorist Activity shall include the following:

1.  "Certified act of terrorism" which means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

151

Exhibit A to Complaint

a.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b.   The act resulted in damage:

(1)   Within the United States (including its territories and possessions and Puerto Rico); or

(2)   Outside of the United States in the case of:

(a)   An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b)   The premises of any United States mission; and

c.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.   "Non-Certified act of terrorism" which means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

3.   **Terrorist Activity** which constitutes   "Certified acts of terrorism" is not excluded in this policy, unless otherwise endorsed.

4.   **Terrorist Activity** which constitutes   "Non-Certified acts of terrorism" is not excluded in this policy, when it occurs in the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico.

**All other terms, conditions and limitations of this Policy remain unchanged.**

152



# Amendatory Endorsement - Oklahoma

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1. SECTION VI — GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted and replaced by the following:

   1). The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

   The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

   a.   Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

   b.   Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

   The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

   Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

   If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount.  The cancellation will be effective even if the Company has not made or offered a refund.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

   If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

   2). If this Policy has been in effect for forty-five (45) business days or more, or after the effective date of a renewal of this Policy, the Company may cancel this Policy only for one or more of the following reasons:

   a.   Nonpayment of premium;

   b.   Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

   c.   Discovery of willful or reckless acts or omissions by the Insured that increase any hazard insured against;

   d.   The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

   e.   A violation of any local fire, health, safety, building, or construction regulation or ordinance, with respect to any covered property or its occupancy, that substantially increases any hazard insured against;

   f.   A determination by the Insurance Commissioner that the continuation of the Policy would place the Company in violation of the insurance laws of this state;

   g.   The Insured's conviction of a crime having, as one of its necessary elements, an act increasing any hazard insured against; or

   h.   Loss of or substantial changes in applicable reinsurance.

153

3).  Non-renewal

    a.  If the Company decides to non-renew this Policy, the Company will mail or deliver written notice to the First Named Insured shown in the Declarations at least forty-five (45) days before:

        i). The expiration date; or

        ii).  The anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

    a.  The Company will mail or deliver notice to the **First Named Insured's** mailing address known to the Company.

    b.  If notice is mailed, proof of mailing will be sufficient proof of notice. It will be considered to have been given to the **First Named Insured** on the day it is mailed.

    c.  If notice of non-renewal is not mailed or delivered at least forty-five (45) days before the expiration date or an anniversary date of this Policy, coverage will remain in effect until forty-five (45) days after notice is given.

    d.  Earned premium for such extended period of coverage will be calculated pro rata, based on the rates applicable to the expiring Policy.

    e.  The Company will not provide notice of nonrenewal if the Company another company within the same insurance group, has offered to issue a renewal Policy, or the Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

    f.  If the Company has provided the required notice of non-renewal as described in a). above, and thereafter extends the Policy for a period of ninety (90) days or less, the Company will not provide an additional non-renewal notice with respect to the period of extension.

    g.  If the Company elects to renew this Policy, the Company will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the **First Named Insured**, at the last mailing address known to the Company.

        i).  Any such notice will be mailed or delivered to the First Named Insured at least forty-five (45) days before the expiration date of this Policy or the anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

        ii).  If notice is mailed, proof of mailing will be sufficient proof of notice. It will be considered to have been given to the First Named Insured on the day it is mailed.

        iii).  If the First Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

        iv).  If notice is not mailed or delivered at least forty-five (45) days before the expiration date or anniversary date of this Policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

            a.)  Forty-five (45) days after notice is given; or

            b.)  The effective date of replacement coverage obtained by the Insured; whichever occurs first. If the **First Named Insured** then elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

    h.  The Company will not provide notice of the following:

154

Exhibit A to Complaint

State of Minneso
8/19/2020 11:21 /

    i). Changes in a rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act and applicable to an entire class of business; or

    ii). Changes based upon the altered nature of extent of the risk insured; or

    iii). Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

2.  The following is added to SECTION VI –GENERAL POLICY CONDITIONS:

FRAUD WARNING

    1). Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

3.  SECTION VI. - GENERAL POLICY CONDITIONS, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

This Policy is voidable as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It is also voidable if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

This Policy;

The Covered Property;

The Insured's interest in Covered Property; or

A claim under this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

155

EDGE-237-B (02/11)
Page 3 of 3

State of Minnesota
8/19/2020 11:21 A


**ZURICH**®

# Amendatory Endorsement - Rhode Island

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  SECTION VI - General Policy Conditions, Cancellation/Non-Renewal, Cancellation, is deleted in its entirety and replaced by the following:

Cancellation

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

The Company may cancel this Policy by mailing or delivering to the **First Named Insured** and agent, if any, written notice of cancellation at least:

The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

The Company will mail or deliver notice to the **First Named Insured's** and agent's, if any, mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due.  The Company will compute the return premium pro rata and round to the next higher whole dollar if:

The Policy is cancelled at the Company's request; or

The Policy is cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

If the **First Named Insured** cancels, the Company will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. The cancellation will be effective even if the Company has not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

**All other terms, conditions and limitations of this Policy remain unchanged.**

156

EDGE-240-A (12/10)
Page 1  of 1

Filed in District Co...
State of Minneso...
8/19/2020 11:21 /



# Amendatory Endorsement - South Carolina

**ZURICH**®

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1. The following is deleted from SECTION VI-CANCELLATION/NON-RENEWAL:

   The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

   and replaced by the following:

   The Company will mail or deliver notice to the **First Named Insured's** and agent's last known mailing address.

2. The following is added to SECTION VI-CANCELLATION/NON-RENEWAL:

   If this Policy has been in effect one hundred and twenty (120) days or more, or is a renewal or continuation of a Policy the Company issued, the Company may cancel this Policy only for one or more of the following reasons:

   1) Nonpayment of premium;

   2) Material misrepresentation of a fact, which, if known to the Company, would have caused the Company not to issue the Policy;

   3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy;

   4) Substantial breaches of contractual duties, conditions or warranties; or

   5) Loss of reinsurance covering all or a significant portion of the particular Policy insured, or where continuation of the Policy would imperil the Company's solvency or place the Company in violation of the insurance laws of South Carolina.

   Prior to cancellation for reasons permitted in item 5). above, the Company will notify the Commissioner, in writing, at least sixty (60) days prior to such cancellation and the Commissioner will, within thirty (30) days of such notification, approve or disapprove such action.

   Any notice of cancellation will state the precise reason for cancellation.

3. SECTION VI-CANCELLATION/NON-RENEWAL, Non-Renewal is deleted in its entirety and replaced by the following:

   Non-Renewal

   The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** and the agent, written notice, at the last known address, of non-renewal at least:

   Sixty (60) days if non-renewal is effective between November 1 and May 31; or

   Ninety (90) days if non-renewal is effective between June 1 and October 31;

   before:

   The expiration date of this Policy, if the Policy is written for a term of one year or less; or
   An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term.

157

EDGE-241-B (02/11)
Page 1 of 2

Filed in District Court
State of Minnesota
8/19/2020 11:21 A

However, the Company will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration. Any notice of non-renewal will state the precise reason for non-renewal. If notice is mailed, proof of mailing will be sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

158

EDGE-241-B (02/11)
Page 2  of  2

State of Minnesc
8/19/2020 11:21 A



# Amendatory Endorsement - South Dakota

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

1.  The following is deleted from SECTION VI–GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

    > The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

    > The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

    and replaced with:

    The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least the greater of:

    > Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

    > Twenty (20) days or the number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

2.  SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety.

3.  SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

    SUIT AGAINST THE COMPANY

    > No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within seventy-two (72) months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

Exhibit A to Complaint

EDGE-242-C (02/11)
Page 1 of 1

State of Minnesota
8/19/2020 11:21 A

# Amendatory Endorsement - Tennessee



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  The following is added to Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL:

    1).  If this Policy has been in effect for sixty (60) days or more, or if this Policy is a renewal of a Policy the Company issued, this Policy may be cancelled only for one or more of the following reasons:

        a.  Nonpayment of premium, including any additional premium, calculated in accordance with the Company's current rating manual, justified by a physical change in the insured property or a change in the insured property or a change in its occupancy or use;

        b.  The Insured's conviction of a crime increasing any hazard insured against;

        c.  Discovery of fraud or material misrepresentation on the part of either of the following;

            i).  The Insured or Insured representative in obtaining this insurance; or

            ii).  The Insured in pursuing a claim under this Policy.

        d.  Failure to comply with written loss control recommendations;

        e.  Material change in the risk which increases the risk of loss after the Company issued or renewed insurance coverage;

        f.  Determination by the insurance commissioner that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Tennessee or any other state;

        g.  The Insured's violation or breach of any Policy terms or conditions; or

        h.  Other reasons that are approved by the insurance commissioner. Notice of Cancellation will state the reason for cancellation.

2.  Section VI-General Policy Conditions, CANCELLATION/NON-RENEWAL, Non-renewal is deleted in its entirety and replaced by the following:

    1).  If the Company decides not to renew this Policy, the Company will mail or deliver written notice of non-renewal to the first Named Insured and agent, at least sixty (60) days before the expiration date unless:

        a.  The Company has offered to issue a renewal Policy; or

        b.  The Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

        c.  Any notice of non-renewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the Policy.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**All other terms, conditions and limitations of this Policy remain unchanged.**

160

EDGE-243-B (02/11)
Page 1  of  1

State of Minnesc
8/19/2020 11:21 /



# Amendatory Endorsement – Vermont

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.  SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, is deleted in its entirety and replaced by the following:

CANCELLATION/NON-RENEWAL

Cancellation

a)  The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

b)  If this Policy has been in effect for less than sixty (60) days and this Policy is not a renewal of a Policy the Company issued, the Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

1)  Fifteen (15) days notice prior to the proposed cancellation date for non payment of premium or substantial increase in hazard; or

2)  Forty-five (45) days notice prior to the proposed cancellation date for any other reason.

c)  If cancellation is for nonpayment of premium, written notice may be sent by certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

d)  If this Policy has been in effect for sixty (60) days or more, or if this is a renewal of a Policy the Company issued, the Company may cancel this Policy only for one or more of the following reasons:

1)  Nonpayment of premium;

2)  Fraud or material misrepresentation affecting this Policy or in the presentation of claims under this Policy;

3)  Violation of any provisions of this Policy; or

4)  Substantial increase in hazard, provided the Company has secured approval for the cancellation from the commissioner of insurance.

If the Company cancels this Policy for one of the reasons specified above, the Company may cancel this Policy by mailing or delivering at least:

1)  Fifteen (15) days notice before the effective date of cancellation for nonpayment of premium; or

2)  Forty-five (45) days notice before the effective date of cancellation for any other reason.

e)  Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

f)  If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata but no less than the customary short rate amount. The cancellation will be effective even if the Company has not made or offered a refund.

g)  If notice is mailed, proof of mailing will be sufficient proof of notice.

161

EDGE-246-B (02/11)
Page 1  of 2

CASE 0:20-cv-01998-NEB-HB   Doc. 1-1   Filed 09/18/20   Page 183 of 201

Filed in District Co...
State of Minnesot...
8/19/2020 11:21 A...

Non-Renewal

a)  The Company may non-renew this Policy by mailing, certified mail, or delivering to the **First Named Insured** written notice, at the last known address, of non-renewal at least forty-five (45) days before the expiration of this Policy or the anniversary date of this Policy, if this Policy has been written for a term of more than one year.

This non-renewal provision does not apply if the Company has indicated a willingness to renew, in case of nonpayment of premium, or if the Insured does not pay any advance premium required for renewal.

If the Company fails to mail or deliver proper notice of non-renewal, this Policy will end on the effective date of any other Policy with respect to property designated in both policies.

b)  If the Company elects to renew this Policy and has the necessary information to issue a renewal Policy, the Company will confirm in writing at least forty-five (45) days before the Policy expires the intention to renew this Policy and the premium at which this Policy will be renewed.

If the Company fails to comply with this provision, the Insured will have renewal coverage. The renewal coverage will be at the rates in effect under the expiring or expired Policy or in effect on the expiration date, that have been approved by the Commissioner, whichever are lower. This renewal coverage will be on a pro rata basis and will continue for forty-five (45) days after the Company confirms renewal coverage and premium. If the Insured accepts this renewal Policy, this paragraph does not apply.

2.  Section VI-General Policy Conditions, CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted in its entirety and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

The Company does not provide coverage to one or more Insureds who at any time engage in fraudulent conduct as it relates to this Policy. The Company also does not provide coverage to one or more Insureds, who at any time intentionally conceal or misrepresent a material fact or make a false statement concerning:

a)  This Policy;

b)  The Covered Property;

c)  The Insured's interest in Covered Property; or

d)  A claim under this Policy.

3.  The following is added to SECTION VI –GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY:

The Insureds' right to bring legal action against the Company is not conditioned upon compliance with the Appraisal Condition of this Policy.

4.  The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

and replaced by the following:

We will pay for covered loss or damage within ten (10) working days after we receive the sworn statement of loss, if you have complied with all the terms of this Policy; and

**All other terms, conditions and limitations of this Policy remain unchanged.**

162

EDGE-246-B (02/11)
Page 2  of 2

Filed in District Court
State of Minnesota
8/19/2020 11:21 AM



# Amendatory Endorsement - Virginia

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1. SECTION V-FIRE DEPARTMENT SERVICE CHARGE is replaced by the following:

The Company will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department is called to save or protect Covered Property from a **Covered Cause of Loss** at an Insured Location. The Fire Department Service Charges are those assumed by contract or agreement prior to loss or damage or required by local ordinance.

If the charges are billed to the Insured by a volunteer fire department, the Company will pay for the volunteer fire department service charges, provided that the volunteer fire department is not fully funded by real estate taxes or other property taxes.

The most the Company will pay under this Additional Coverage at any one covered property, in any year beginning on the date coverage for such covered property was effective, is the greater of $250 or the Limit of Insurance shown in the Declarations for Fire Department Service Charge. The Limit for this Additional Coverage is in addition to the applicable Limit of Insurance shown in the Declarations for that covered property.

**All other terms, conditions and limitations of this Policy remain unchanged.**

163

EDGE-252-A VA (05/13)
Page 1  of  1

State of Minneso
8/19/2020 11:21 /



# Amendatory Endorsement - Washington

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1. The following is deleted from SECTION III - PROPERTY DAMAGE, EXCLUSIONS:

3.03.03.     This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

and replaced with:

3.03.03.     The Company will not pay for loss or damage caused by any excluded event described below.  Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in loss or damage; or initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

2. When the following appears in CONTINGENT TIME ELEMENT, FINE ARTS, LAND IMPROVEMENTS,OFF PREMISES SERVICE INTERUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS, TENANTS PROHIBITED ACCESS and **NEW CONSTRUCTION AND ADDITIONS**, it will be deleted.

"regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss."

and replaced with:

The Company will not pay for loss or damage caused by an excluded event described below.  Loss or damage will be considered to have been caused by such excluded event if the **occurrence** of that event directly and solely results in loss or damage; or initiates a sequence of events in loss or damage, regardless of the nature of intermediate or final event in that sequence.

3. The following is added to SECTION III - PROPERTY DAMAGE, EXCLUSIONS, 3.03.03.04.:

This exclusion does not apply to acts of direct physical loss or damage resulting from an act of domestic abuse caused by another insured under the policy if such loss is an otherwise covered property loss and the insured making claim: files a police report, cooperates with any law enforcement investigation relating to the act of domestic abuse and did not cooperate in or contribute to the creation of the loss.

4. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

and replaced with:

The **First Named Insured** shown in the Declarations may cancel this Policy.  The insured may provide notice before the effective date of cancellation using one of these methods:

(i) Written notice of cancellation to the insurer or producer by mail, fax or e-mail;

164

EDGE-248-B (02/11)
Page 1  of 3

(ii) Surrender of the policy or binder to the insurer or producer; or

(iii) Verbal notice to the insurer or producer.

If the insurer receives notice of cancellation from the insured, it must accept and promptly cancel the policy or any binder issued as evidence of coverage effective the later of:

(i) The date notice is received; or

(ii) The date the insured requests cancellation.

5. The following is added to SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL, Cancellation:

Notice of cancellation will state the reason for cancellation.

The Company will send written notice of cancellation to each mortgagee, pledge or other person shown by the Policy to have an interest in any loss which may occur.

6. SECTION VI-GENERAL POLICY CONDITIONS, CANCELLATION/NON-RENEWAL,  Non-renewal is deleted in its entirety and replaced by the following:

Non-renewal

The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, Forty-Five (45) days before the non-renewal.  Notice of non-renewal will state the reason for non-renewal.

7. The following is added to SECTION VI-GENERAL POLICY CONDITIONS, INSPECTIONS AND SURVEYS:

However, this condition does not apply to any inspections, surveys, reports or recommendations the Company may make relative to certification under state or municipal statutes, ordinances or regulations referenced above.

8. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, OTHER INSURANCE:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

and replaced with:

The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as pro rata contributing insurance.

9. The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, VALUATION:

The basis of adjustment is on a replacement cost basis unless a specific valuation applies.  Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than  the lesser of:

and replaced by the following:

165

Filed in District Court
State of Minnesot
8/19/2020 11:21 /

The basis of adjustment is on a replacement cost basis unless a specific valuation applies.  Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with new materials of like kind, quality and capacity at the same or another site, but no more than  the lesser of:

9.  Section VI-General Policy Conditions, LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS is deleted in its entirety.

10.  The following is deleted from SECTION VI-GENERAL POLICY CONDITIONS, APPRAISAL:

The Company further retains its right to deny the claim in whole or in part.

**All other terms, conditions and limitations of this Policy remain unchanged.**

166

EDGE-248-B (02/11)
Page 3  of 3

State of Minnesoc
8/19/2020 11:21 /



# Amendatory Endorsement - West Virginia

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1. SECTION VI - GENERAL POLICY CONDITIONS, LOSS CONDITIONS, APPRAISAL, is deleted in its entirety and replaced by the following:

   APPRAISAL

   In case the Insured and the Company fails to agree as to the actual cash value of the amount of loss, then on the written demand of either party, each shall select a competent and disinterested appraiser and notify the other appraiser selected within twenty (20) days of such demand.  The appraiser shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon such umpire, then either on the Insured's or the Company's request, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.  The appraisers shall then appraise the loss, stating separately actual cash value and loss as to each item; and, failing to agree, shall submit their differences only, to the umpire.  An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the parties equally.

2. The following is deleted from SECTION VI - GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

   The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

   The Company has reached agreement on the amount of loss; or

   An appraisal award has been made...

   and replaced by the following:

   The Company will pay for loss of or damage to Covered Property within fifteen (15) days after we receive the signed, sworn statement of loss if the Insured has complied with all the terms of this Policy and the Company has reached agreement with the Insured on the amount of loss.

3. SECTION VI – GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUIT AGAINST THE COMPANY, is deleted in its entirety and replaced by the following:

   No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within two (2) years after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

**All other terms, conditions and limitations of this Policy remain unchanged.**

167

EDGE-249-A (02/11)
Page 1  of  1

Filed in District Co
State of Minnes¢
8/19/2020 11:21 ₄



# Amendatory Endorsement - Wisconsin

**ZURICH**®

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  Section VI-General Policy Conditions, Loss Conditions, Subrogation, is deleted in its entirety and replaced by the following:

SUBROGATION

The Insured is required to cooperate in any subrogation proceedings.  To the extent of the Company's payment, the Insured's rights of recovery against any party are transferred to the Company.

The Company acquires no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

The Company will be entitled to any recovery from subrogation proceedings only after the **First Named Insured** has been fully compensated for Damages.

**All other terms, conditions and limitations of this Policy remain unchanged.**

168

Exhibit A to Complaint

State of Minnes~
8/19/2020 11:21 /

# Amendatory Endorsement – Wyoming



**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.   SECTION VI - General Policy Conditions, Suit Against The Company is replaced in its entirety by the following:

No one may bring a legal action against the Company under this Policy unless:

All of its terms have been complied with; and, the action is brought within 4 years beginning from the date on which the direct physical loss or damage was discovered.

2.   Section VI-GENERAL POLICY CONDITIONS, LOSS CONDITIONS, SUBROGATION is amended by the addition of the following:

The Company will be entitled to recovery only after the insured has been fully compensated for the deductible amount, without any deduction for expenses of collection, out of any recovery on the subrogated claim, before any part of the recovery is applied to any other use. If the amount of the deductible exceeds the recovery, the insurer shall pay only the amount of the recovery to the insured.

3.   The following is deleted from Section VI-GENERAL POLICY CONDITIONS, SETTLEMENT OF CLAIMS, Loss Payment:

The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

And replaced with:

The Company will pay for the undisputed covered loss or damage within forty-five (45) days, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

169

EDGE-251-A (02/11)
Page 1  of  1

State of Minnesc
8/19/2020 11:21 /

# Change Endorsement

**Limited Coverage for Electronic Data, Programs or Software**
**Certificates of Insurance**
**Loss Adjustment/Payable**



**ZURICH**®

| Insured Name<br>Life Time, Inc. | Policy Number | Effective Date<br>12/15/2019 | Endorsement Number<br>01 |
|---|---|---|---|

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This Endorsement modifies insurance provided under the Policy identified above.

A.  Section 5.02.04.01.01 is deleted.
B.  Clause  CERTIFICATES OF INSURANCE is deleted and replaced with the following:

### CERTIFICATES OF INSURANCE

Any certificate of insurance issued in connection with this Policy is provided solely as a matter of convenience or information for the addressee(s) or holder(s) of such certificate of insurance, except as provided under the Policy when a Loss Payee(s) or Mortgagee(s) are named. The certificate of insurance does not amend, extend or alter the coverage afforded by the Policy.

In the event this Policy is cancelled pursuant to the Cancellation subsection other than for nonpayment of premium, and except as provided otherwise, the Company shall provide a notice to those entities set out in the certificates of insurance, that have been provided to the Company in accordance with this Endorsement, within 30 days after notifying the **First Named Insured** that the Policy has been cancelled. Such entities will be provided to the Company, in the format requested by the Company within 10 days of such request, by the Producer. However, in no event will failure to provide notice to entities set out in any certificate of insurance provide such entities with rights broader than those of the Named Insured.

The Company hereby authorizes the Producer named on the Policy to issue certificates of insurance consistent with the foregoing.

C.  Clause LOSS ADJUSTMENT/PAYABLE is deleted and replaced with the following:

### LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured**.

When a Lender or Mortgagee is named in the certificates of insurance on file with the Company, the Lender or Mortgagee will be included in loss payment as their interests may appear.

When a Loss Payee is named in the certificates of insurance on file with the Company, the Loss Payee will be included in loss payments made to the insured as their interests may appear. The Loss Payee has no other rights under the policy.

When an additional insured is named in the certificates of insurance on file with the Company, the additional insured will be included in loss payment as their interests may appear.

**All other terms, conditions and limitations of this Policy remain unchanged.**

**170**

EDGE-309-A (03/12)
Page 1 of 1

State of Minnesc
8/19/2020 11:21 /

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM



**ZURICH**®

| Insured Name<br>Life Time, Inc. | Policy Number | Effective Date<br>12/15/2019 | Endorsement Number<br>02 |
|---|---|---|---|

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

**A. Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B. Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit A to Complaint

U-GU-767-B CW (01/15)
Page 1  of  1

# Life Time, Inc

## Statement of Values - Operational Properties/Fully Completed @ 12.15.19

*December 15, 2019/20 Policy Term*

| Location Status | Location Name | Address | City | State | Zip Code | County | Country | Business Interruption |
|---|---|---|---|---|---|---|---|---|
| Operational | Vestavia Hills | 3051 Healthy Way | Vestavia Hills | AL | 35243 | Jefferson | US | $5,772,786 |
| Operational | Palm Valley | 14540 West McDowelll Road | Goodyear | AZ | 85338 | Maricopa | US | $5,112,594 |
| Operational | Tempe | 1616 W. Ruby Dr | Tempe | AZ | 85284 | Maricopa | US | $6,281,676 |
| Operational | Tempe | 2502 E Camelback Road | Phoenix | AZ | 85016 | Maricopa | US | $5,000,000 |
| Builder's Risk Completed by 12.15.19 | Phoenix (Biltmore) | 381 E. Warner Road | Gilbert | AZ | 85296 | Maricopa | US | $5,221,431 |
| Operational | Gilbert | 6850 East Chauncey Lane | Phoenix | AZ | 85054 | Maricopa | US | $9,490,905 |
| Operational | Scottsdale | 9399 South Priest Drive | Tempe | AZ | 85284 | Maricopa | US | $10,000 |
| Operational | Red Rock (Lease) | | | | | | | $5,000,000 |
| Builder's Risk Completed by 12.15.19 | Rancho San Clemente Tennis & Fitness Club | 101 West Avenida Vista Hermosa Suite#505 | San Clemente | CA | 92672 | Orange | US | $5,000,000 |
| Operational | Folsom | 110 Serpa Way | Folsom | CA | 95630 | Sacramento | US | $5,000,000 |
| Operational | Roseville | 1435 East Roseville Parkway | Roseville | CA | 95661 | Placer | US | $5,000,000 |
| Operational | Laguna Nigel | 25600 Rancho Niguel Road | Laguna Niguel | CA | 92677 | Orange | US | $3,172,852 |
| Operational | Laguna Niguel | 25600 Rancho Niguel Road | Laguna Niguel | CA | 92037 | Orange | US | $0 |
| Builder's Risk Completed by 12.15.19 | La Jolla | 7863 Girard Avenue Suite 101 | La Jolla | CA | 80461 | San Diego | US | $5,000,000 |
| Operational | Leadville | 135 E. 6th Street | Leadville | CO | 80461 | Lake | US | $10,000 |
| Operational | Louisville | 1795 Dogwood Street Suite 400 | Louisville | CO | 80027 | Boulder | US | $2,000,000 |
| Operational | Athletic Events | 201 and 213 Harrison Ave | Leadville | CO | 80461 | Lake | US | $30,000 |
| Operational | Leadville Office Space | 300 Summit Blvd | Broomfield | CO | 80021 | Broomfield | US | $5,000,000 |
| Operational | Flat Iron | | Leadville | CO | 80461 | Lake | US | $30,000 |
| Operational | Leadville (we own) | 316 Harrison Ave | Leadville | CO | 80601 | Adams | US | $6,750,682 |
| Operational | Westminster | 399 w. 148th Avenue | Westminster | CO | 80920 | El Paso | US | $2,970,000 |
| Operational | Colorado Springs | 4410 Royal Pine Drive | Colorado Springs | CO | 80246 | Arapahoe | US | $5,000,000 |
| Operational | Cherry Creek Athletic Club | 500 S Cherry Street | Denver | CO | 80015 | Arapahoe | US | $4,249,454 |
| Operational | Centennial | 5000 E Dry Creek Rd. | Centennial | CO | 80015 | Arapahoe | US | $5,000,000 |
| Operational | Centennial Tennis | 5000 E Dry Creek Rd. | Centennial | CO | 80136 | Douglas | US | $57,016,973 |
| Operational | Parker | 9250 Crown Crest Boulevard | Parker | CO | 33431 | Palm Beach | US | $3,580,967 |
| Operational | Boca Raton | 1499 Yamato Road | Boca Raton | FL | 33607 | Hillsborough | US | $3,054,061 |
| Operational | Tampa | 2223 Westshore Blvd | Tampa | FL | 33176 | Dade | US | $10,000 |
| Operational | Miami Events Office | 8879 SW 131st Street | Miami | FL | 33431 | Palm Beach | US | $0 |
| Operational | Boca Raton | 1499 Yamato Road | Boca Raton | FL | 30097 | Gwinnett | US | $6,817,939 |
| Operational | Johns Creek | 11555 John's Creek Pkwy | Johns Creek | GA | 30188 | Cherokee | US | $5,717,193 |
| Operational | Mountain Brook/Woodstock | 14200 Highway 92 | Woodstock | GA | 30043 | Gwinnett | US | $8,384,311 |
| Operational | Sugarloaf | 1823 North Brown Road | Lawrenceville | GA | 30342 | Fulton | US | $2,970,000 |
| Operational | Sandy Springs | 5580 Roswell Rd | Sandy Springs | GA | 30092 | Gwinnett | US | $250,000 |
| Operational | Tennis Atlanta | 6350 Courside Drive | Peachtree | GA | 30005 | Fulton | US | $8,696,163 |
| Operational | Alpharetta | 855 North Point Parkway | Alpharetta | GA | 50323 | Polk | US | $4,615,659 |
| Operational | Urbandale, IA | 11911 Hickman Road | Urbandale | IA | 60062 | Cook | US | $5,000,000 |
| Operational | Northbrook | 1000 Skokie Boulevard | Northbrook | IL | 60046 | Will | US | $7,285,519 |
| Operational | Romeoville | 1220 Lakeview Drive | Romeoville | IL | 60467 | Cook | US | $7,647,119 |
| Operational | Orland Park | 16333 S LaGrange Rd | Orland Park | IL | 60555 | DuPage | US | $8,846,518 |
| Operational | Warrenville | 28141 Diehl Road | Warrenville | IL | 60102 | McHenry | US | $7,142,361 |
| Operational | Algonquin | 451 Rolls Drive | Algonquin | IL | 60108 | DuPage | US | $7,578,093 |
| Operational | Bloomingdale | 455 Scott Drive | Bloomingdale | IL | | | | |

Operational

172

Exhibit B to Complaint

CASE 0:20-cv-01998-NEB-HB   Doc. 1-1   Filed 09/18/20   Page 194 of 201

Filed in District Co...
State of Minnesota
8/19/2020 11:21 A...

# Life Time, Inc

## Statement of Values - Operational Properties/Fully Completed @ 12.15.19

*December 15, 2019/20 Policy Term*

| Location Status | Location Name | Address | City | State | Zip Code | County | Country | Business Interruption |
|---|---|---|---|---|---|---|---|---|
| Operational | Old Orchard | 5300 Old Orchard Road | Skokie | IL | 60077 | Cook | US | $13,071,119 |
| Operational | Burr Ridge | 601 Burr Ridge | Burr Ridge | IL | 60521 | DuPage | US | $10,891,208 |
| Operational | Vernon Hills | 680 Woodlands Pkwy | Vernon Hills | IL | 60061 | Lake | US | $8,967,817 |
| Operational | Schaumburg | 900 East Higgins Rd | Schaumberg | IL | 60173 | Cook | US | $7,819,200 |
| Operational | Fishers | 11691 Fishers Corner Blvd | Fishers | IN | 46038 | Hamilton | US | $1,000,000 |
| Operational | Castle Creek | 8705 Castle Creek Pkwy East Dr | Indianapolis | IN | 46250 | Marion | US | $3,277,693 |
| Operational | North Meridian | 9525 Meridian Street | Indianapolis | IN | 46260 | Marion | US | $1,000,000 |
| Operational | Dirty Kanza | 11 W 8th Avenue | Emporia | KS | 66801 | Lyon | US | $10,000 |
| Operational | Lenexa | 16851 west 90th Street | Lenexa | KS | 66215 | Johnson | US | $4,644,651 |
| Operational | Overland Park | 6800 W 138th St | Overland Park | KS | 66213 | Johnson | US | $7,093,759 |
| Operational | Burlington | 186 Middlesex Turnpike | Burlington | MA | 01803 | Middlesex | US | $5,000,000 |
| Operational | Chestnut Hill | 300 Boylston Street | Chestnut Hill | MA | 02467 | Middlesex | US | $5,000,000 |
| Operational | Westwood | 44 Harvard Street | Westwood | MA | 02090 | Norfolk | US | $5,000,000 |
| Operational | Framingham | 490 Old Connecticut Path | Framingham | MA | 01701 | Middlesex | US | $5,000,000 |
| Operational | Gaithersburg | 10121 Washingtonian Blvd | Gaithersburg | MD | 20878 | Montgomery | US | $5,000,000 |
| Operational | Gaithersburg | 10121 Washingtonian Blvd | Gaithersburg | MD | 20878 | Montgomery | US | $0 |
| Operational | Rockville | 1151 Seven Locks Road | Rockville | MD | 20854 | Montgomery | US | $5,892,040 |
| Operational | Columbia | 7220 Lee Forest Drive | Columbia | MD | 21046 | Howard | US | $10,205,481 |
| Operational | Shelby | 14843 Lakeside Boulevard | Shelby | MI | 48315 | Macomb | US | $6,992,668 |
| Operational | Canton Township | 1700 Haggerty Road N | Canton Township | MI | 48188 | Wayne | US | $6,532,833 |
| Operational | Rochester Hills | 200 W. Avon Road | Rochester Hills | MI | 48307 | Oakland | US | $8,037,357 |
| Operational | Commerce | 2901 Commerce Crossing Blvd | Commerce | MI | 48382 | Oakland | US | $6,837,601 |
| Operational | Novi | 40000 High Pointe Blvd | Novi | MI | 48375 | Oakland | US | $5,466,134 |
| Operational | Bloomfield | 4106 Telegraph Road | Bloomfield Township | MI | 48302 | Oakland | US | $3,054,061 |
| Operational | Troy | 4700 Investment Drive | Troy | MI | 48098 | Oakland | US | $6,675,929 |
| Operational | Center for Yoga | 555 South Old Woodward Ave | Birmingham | MI | 48009 | Oakland | US | $77,000 |
| Operational | Bloomington South | 1001 West 98th Street | Bloomington | MN | 55431 | Hennepin | US | $2,117,015 |
| Operational | Minnetonka, MN | 11300 K-Tel Drive | Minnetonka | MN | 55343 | Hennepin | US | $2,000,000 |
| Operational | Champlin | 11989 Champlin Drive | Champlin | MN | 55316 | Hennepin | US | $1,563,111 |
| Operational | Moore Lake | 1200 NE East Moore Lake Dr | Fridley | MN | 55432 | Anoka | US | $4,215,999 |
| Operational | Oakdale Village Tennis | 1201 Ford Road | Minnetonka | MN | 55305 | Hennepin | US | $417,170 |
| Operational | Maple Grove | 12601 82nd Ave North | Maple Grove | MN | 55369 | Hennepin | US | $3,922,120 |
| Operational | Eagan | 1565 Thomas Center Dr | Eagan | MN | 55122 | Dakota | US | $4,244,888 |
| Operational | Lakeville | 18425 Dodd Blvd. | Lakeville | MN | 55044 | Dakota | US | $6,520,175 |
| Operational | Coon Rapids | 2100 Northdale Blvd NW | Coon Rapids | MN | 55433 | Anoka | US | $2,291,013 |
| Operational | Highland Park | 2145 Ford Pkwy | Highland Park | MN | 55116 | Ramsey | US | $0 |
| Operational | Highland Park Club and Office Building | 2145 Ford Pkwy | Highland Park | MN | 55116 | Ramsey | US | $2,442,571 |
| Operational | BIG Warehouse | 2410 Galpin Court | Chanhassen | MN | 55317 | Carver | US | $2,000,000 |
| Operational | Roseville | 2480 Fairview Avenue N | Roseville | MN | 55113 | Ramsey | US | $348,174 |
| Operational | Chanhassen | 2901 Corporate Place | Chanhassen | MN | 55317 | Carver | US | $5,772,786 |
| operational | Chanhassen office | 2932 Water Tower Place | Chanhassen | MN | 55317 | Carver | US | $250,000 |
| Operational | Edina | 2990 Southdale Center | Edina | MN | 55435 | Hennepin | US | $5,000,000 |

Builder's Risk Completed by 12.15.19

Exhibit B to Complaint

Operational

Filed in District Co
State of Minnesota
8/19/2020 11:21 A

# Life Time, Inc

**Statement of Values - Operational Properties/Fully Completed @ 12.15.19**

*December 15, 2019/20 Policy Term*

| Location Status | Location Name | Address | City | State | Zip Code | County | Country | Business Interruption |
|---|---|---|---|---|---|---|---|---|
| Builder's Risk Completed by 12.15.19 | Edina MN LT Sport/LT Works | 2990 Southdale Center | Edina | MN | 55435 | Hennepin | US | $1,000,000 |
| Operational | Minnetonka | 3310 County Rd 101 S | Minnetonka | MN | 55305 | Hennepin | US | $2,334,084 |
| Operational | Hangar 3 | 3600 East 70th Street | Minneapolis | MN | 55450 | Hennepin | US | $500,000 |
| Operational | Plymouth | 3600 Plymouth Blvd | Plymouth | MN | 55446 | Hennepin | US | $6,061,778 |
| Operational | Corporate Office 5 | 363 East 82nd Street | Chaska | MN | 55317 | Carver | US | $2,000,000 |
| Operational | Life Time Construction Millwork | 4200 Norex Drive | Chaska | MN | 55318 | Carver | US | $3,000,000 |
| Operational | New Hope | 4239 Winnetka Ave N | New Hope | MN | 55427 | Hennepin | US | $1,463,450 |
| Operational | Signature Concepts | 4777 Shady Oak Road | Minnetonka | MN | 55343 | Hennepin | US | $2,000,000 |
| Operational | White Bear Lake | 4800 White Bear Parkway | White Bear Lake | MN | 55110 | Ramsey | US | $3,172,852 |
| Operational | Bloomington North | 5250 West 84th Street | Bloomington | MN | 55437 | Hennepin | US | $1,462,173 |
| Operational | St. Louis Park | 5525 Cedar Lake Road | St. Louis Park | MN | 55416 | Hennepin | US | $7,096,208 |
| Operational | St. Louis Park | 5525 Cedar Lake Road | St. Louis Park | MN | 55416 | Hennepin | US | $0 |
| Operational | Apple Valley | 5995 149th St W, Ste 107-108 | Apple Valley | MN | 55124 | Dakota | US | $236,352 |
| Operational | Target Center | 600 First Avenue North | Minneapolis | MN | 55403 | Hennepin | US | $800,872 |
| Operational | Minneapolis Athletic Club | 615 2nd Avenue South | Minneapolis | MN | 55402 | Hennepin | US | $2,309,719 |
| Operational | Crosstown | 6233 Baker Road | Eden Prairie | MN | 55346 | Hennepin | US | $4,615,659 |
| Operational | Savage | 6554 Loftus Lane | Savage | MN | 55378 | Scott | US | $3,480,033 |
| Operational | Woodbury | 675 Commons Drive | Woodbury | MN | 55125 | Washington | US | $4,106,387 |
| Operational | Eden Prairie | 755 Prairie Center Drive | Eden Prairie | MN | 55344 | Hennepin | US | $5,139,281 |
| Operational | LT Vision Studio | 7623 Anagram Drive | Eden Prairie | MN | 55344 | Hennepin | US | $10,000 |
| Operational | Swim School–Maple Grove | 8001 Forestview Lane N | Maple Grove | MN | 55369 | Hennepin | US | $500,000 |
| Operational | LT Sport Winter Park (Outdoor Sport) | 9520 Viking Drive | Eden Prairie | MN | 55344 | Hennepin | US | $10,000 |
| Operational | Massage Retreat–Shoreview | 1021 Fox Road #140 | Shoreview | MN | 55126 | Ramsey | US | $1,000,000 |
| Operational | LT Work SLP | 1600 Utica Ave S Suite 900 | St Louis Park | MN | 55416 | Hennepin | US | $100,000 |
| Builder's Risk Completed by 12.15.19 | Corporate Office–Garage | 2900 Corporate Place | Chanhassen | MN | 55317 | Carver | US | $100,000 |
| Operational | Chanhassen Corporate Office | 2902 Corporate Place | Chanhassen | MN | 55317 | Carver | US | $10,000 |
| Operational | Massage Retreat - Plymouth | 4445 Nathan Lane N | Plymouth | MN | 55442 | Hennepin | US | $10,000 |
| Operational | Massage Retreat - Edina | 6811 York Avenue S | Edina | MN | 55435 | Hennepin | US | $10,000 |
| Operational | Massage Retreat - Woodbury | 7066 Valley Creek Plaza | Woodbury | MN | 55125 | Washington | US | $10,000 |
| Operational | Massage Retreat - Savage | 7705 Egan Drive | Savage | MN | 55378 | Scott | US | $10,000 |
| Operational | Massage Retreat–Eden Prairie | 8248 Commonwealth Drive | Eden Prairie | MN | 55344 | Hennepin | US | $5,954,689 |
| Operational | West County (Ellisville) | 3058 Clarkson Road | Ellisville | MO | 63017 | St. Louis | US | $5,000,000 |
| Operational | Frontenac | 80 Plaza Frontenac | St Louis | MO | 63131 | St Louis | US | $1,000,000 |
| Builder's Risk Completed by 12.15.19 | Apex | 1040 Vision Drive | Apex | NC | 27523 | Wake | US | $5,000,000 |
| Operational | Charlotte | 11220 Golf Links Drive | Charlotte | NC | 28277 | Mecklenburg | US | $9,410,494 |
| Operational | Cary | 1700 Regency Parkway | Cary | NC | 27511 | Wake | US | $5,000,000 |
| Operational | Six Forks | 601 E Six Forks Road | Raleigh | NC | 27609 | Wake | US | $1,000,000 |
| Operational | Plantation Point | 6461 Triangle Plantation Drive | Raleigh | NC | 27616 | Wake | US | $1,000,000 |
| Operational | University | 8514 University Blvd | Charlotte | NC | 28213 | Mecklenburg | US | $5,000,000 |
| Operational | Raleigh | 8515 Falls of Neuse Road | Raleigh | NC | 27615 | Wake | US | $1,000,000 |
| Operational | Matthews | 9915 East Independence Blvd | Matthews | NC | 28105 | Mecklenburg | US | $1,000,000 |
| Operational | Omaha | 17007 Elm Plaza | Omaha | NE | 68130 | Douglas | US | $6,902,119 |

Operational

Exhibit B to Complaint

174

# Life Time, Inc

## Statement of Values - Operational Properties/Fully Completed @ 12.15.19

*December 15, 2019/20 Policy Term*

| Location Status | Location Name | Address | City | State | Zip Code | County | Country | Business Interruption |
|---|---|---|---|---|---|---|---|---|
| | Bergen County | 10 Van Riper Road | Montvale | NJ | 07677 | Bergen | US | $5,762,786 |
| Operational | Bergen County | 10 Van Riper Road | Montvale | NJ | 07677 | Bergen | US | $0 |
| Operational | Berkeley Heights | 100 Oak Way | Berkeley Heights | NJ | 07922 | Union | US | $12,490,115 |
| Operational | Florham Park | 14 Fernwood Road | Florham Park | NJ | 07932 | Morris | US | $11,987,688 |
| Operational | Florham Park | 145 Commons Way | Bridgewater | NJ | 08807 | Somerset | US | $5,000,000 |
| Operational | Bridgewater | 3939 Church Road | Mount Laurel | NJ | 8054 | Burlington | US | $5,000,000 |
| Operational | Mount Laurel | 7 Forrestal Road South | Plainsboro | NJ | 08540 | Middlesex | US | $5,000,000 |
| Operational | Princeton | 10721 W. Charleston Blvd | Summerlin | NV | 89135 | Clark | US | $2,970,000 |
| Operational | Summerlin | 10721 W. Charleston Blvd. | Summerlin | NV | 89135 | Clark | US | $0 |
| Operational | Summerlin | 121 Carnegie Street | Henderson | NV | 89052 | Clark | US | $4,615,659 |
| Operational | Green Valley | 1 Westchester Park Drive | Harrison | NY | 10604 | Westchester | US | $8,037,357 |
| Operational | Harrison | 350 Robbins Lane | Syosset | NY | 11791 | Nassau | US | $2,970,000 |
| Operational | Syosset | 480 Bedford Road | Chappaqua | NY | 10514 | Westchester | US | $5,000,000 |
| Operational | Chappaqua | 60 East 42nd Street, Suite #2007 | New York | NY | 10165 | New York | US | $10,000 |
| Operational | LTF Media Office Space (lease) | 605 W 42nd Street | Manhattan | NY | 10036 | Queens | US | $10,000 |
| Operational | Manhattan | 750 Zeckendorf Blvd | Garden City | NY | 11530 | Nassau | US | $5,000,000 |
| Operational | Westbury, NY | 750 Zeckendorf Blvd | Garden City | NY | 11530 | Nassau | US | $0 |
| Operational | Westbury | 1520 Stonecreek Drive South | Pickerington | OH | 43147 | Fairfield | US | $1,000,000 |
| Operational | Pickerington | 1860 Henderson Road | Columbus | OH | 43220 | Franklin | US | $1,000,000 |
| Operational | Henderson | 3825 Hard Road | Dublin | OH | 43016 | Franklin | US | $5,970,559 |
| Operational | Dublin | 3850 Richmond Road | Beachwood | OH | 44122 | Cuyahoga | US | $7,710,554 |
| Operational | Beachwood | 3900 Easton Station | Columbus | OH | 43219 | Franklin | US | $3,628,099 |
| Operational | Easton | 8310 Wilkens Blvd | Mason | OH | 45040 | Warren | US | $5,049,119 |
| Operational | Deerfield | 10642 S Memorial Road | Tulsa | OK | 74133 | Tulsa | US | $5,000,000 |
| Operational | Tulsa | 2563 West Memorial Road | Oklahoma City | OK | 73134 | Oklahoma | US | $5,000,000 |
| Operational | Oklahoma City | 100 Beck Crescent | Ajax | ON | L1Z0B6 | Durham Region | Canada | $5,449,500 |
| Operational | Ajax | 3055 Pepper Mill Road | Mississauga | ON | L5L 4X5 | Ontario | Canada | $2,970,000 |
| Operational | Mississauga | 7405 Weston Road | Vaughan | ON | L4L 8B2 | York Region | Canada | $5,000,000 |
| Operational | Vaughan | 375 Commerce Drive | Upper Doublin Township | PA | 19034 | Huntingdon | US | $5,000,000 |
| Operational | Fort Washington | 40 East Montgomery Ave | Ardmore | PA | 19003 | Dry/Delaware | US | $5,000,000 |
| Operational | Ardmore | 750 Swedesford Road | Valley Forge | PA | 19406 | York | US | $8,541,185 |
| Operational | King of Prussia | 3470 Houston Levee Road | Collierville | TN | 38103 | Shelby | US | $5,000,000 |
| Operational | Collierville | 5020 Carothers Pkwy | Franklin | TN | 37067 | Williamson | US | $5,000,000 |
| Operational | Franklin | 10761 Founders Way | Fort Worth | TX | 76177 | Tarrant | US | $5,000,000 |
| Operational | Fort Worth | 11 Greenway Plaza Suite #110 | Houston | TX | 77046 | Harris | US | $7,305,456 |
| Builder's Risk Completed by 12.15.19 | Houston-Greenway | 1221 Church Street | Colleyville | TX | 76034 | Tarrant | US | $7,066,615 |
| Operational | Colleyville | 1331 Highway 6 | Sugar Land | TX | 77478 | Fort Bend | US | $5,726,190 |
| Operational | Sugar Land | 13600 Will Clayton Pkwy | Humble | TX | 77346 | Harris | US | $6,251,685 |
| Operational | Lake Houston | 13725 R M 620 | Austin | TX | 78717 | Williamson | US | $5,325,901 |
| Operational | North Austin | 1551 E. Debbie Lane | Mansfield | TX | 76063 | Tarrant | US | $8,435,987 |
| Operational | Mansfield | 18510 US 281 North | San Antonio | TX | 78258 | Bexar | US | $8,435,987 |
| Operational | San Antonio | 19250 Gulfbrook Drive | Friendswood | TX | 77546 | Harris | US | $5,000,000 |
| Operational | Baybrook | | | | | | | |

Exhibit B to Complaint

Operational

175

Filed in District Co
State of Minnesota
8/19/2020 11:21 /

# Life Time, Inc

**Statement of Values - Operational Properties/Fully Completed @ 12.15.19**

*December 15, 2019/20 Policy Term*

| Location Status | Location Name | Address | City | State | Zip Code | County | Country | Business Interruption |
|---|---|---|---|---|---|---|---|---|
| Operational | | 20114 Pinehurst Trail Dr | Humble | TX | 77346 | Harris | US | $1,000,000 |
| Operational | Life Time Racquet Club of Kingwood | 20515 W. Lake Houston Pkwy | Humble | TX | 77346 | Harris | US | $660,000 |
| Operational | Kingwood (acquired 5/27/10) | 23211 Cinco Ranch Blvd | Katy | TX | 77450 | Harris | US | $8,878,865 |
| Operational | Cinco Ranch | 3100 Churchill Drive | Flower Mound | TX | 75028 | Denton | US | $5,222,238 |
| Operational | Flower Mound | 3419 Trinity Mills Road | North Dallas | TX | 75287 | Collin | US | $1,783,761 |
| Operational | North Dallas | 4210 W Braker Lane | Austin | TX | 78759 | Austin | US | $2,000,000 |
| Operational | Quarry Lake | 5015 Westheimer Road Suite 4020 | Houston | TX | 77056 | Harris | US | $5,000,000 |
| Operational | Galleria Tennis & Athletic Club (GTAC) | 5602 Naaman Forest Blvd | Garland | TX | 75044 | Dallas | US | $4,635,200 |
| Operational | Garland | 5639 Worth Parkway | San Antonio | TX | 78257 | Bexar | US | $6,555,874 |
| Operational | NW San Antonio | 5910 N. Central Expressway | Dallas | TX | 75206 | Collin | US | $3,054,061 |
| Operational | Dallas Premier | 7100 Preston Road | Plano | TX | 75024 | Collin | US | $5,762,833 |
| Operational | Plano | 7100 Preston Road | Plano | TX | 75024 | Collin | US | $1,000,000 |
| Operational | Plano Tennis | 7101 S. MoPac Expy NB | Austin | TX | 74749 | Williamson | US | $8,387,833 |
| Operational | South Austin | 7717 Willowchase Blvd | Houston | TX | 77070 | Harris | US | $4,218,360 |
| Operational | Champions | 815 Town & Country | Houston | TX | 77024 | Harris | US | $7,734,120 |
| Operational | City Center Houston | 8700 Crownhill, Suite 110 | San Antonio | TX | 78209 | Bexar | US | $55,000 |
| Operational | HealthCheck Office Space | 907 W 5th Street #201 | Austin | TX | 78703 | Austin | US | $2,000,000 |
| Operational | Town Lake | 971 State Highway 121 | Austin | TX | 75013 | Collin | US | $7,330,350 |
| Operational | Allen | 9922 Fry Road | Allen | TX | 77433 | Harris | US | $5,000,000 |
| Operational | Cypress | 10996 South River Front Pkwy | Cypress | UT | 84095 | Salt Lake | US | $4,131,832 |
| Operational | South Jordan | 1757 Business Center Drive | South Jordan | VA | 20190 | Fairfax | US | $5,772,786 |
| Operational | Reston | 44610 Prentice Drive | Reston | VA | 44610 | Loudoun | US | $7,145,222 |
| Operational | Loudoun County | 5900 Trinity Parkway | Sterling | VA | 20121 | Fairfax | US | $9,728,671 |
| Operational | Centreville | 7801 Limestone Drive | Centreville | VA | 20155 | Prince William | US | $5,000,000 |
| Operational | Gainesville | 9602 Main Street | Gainesville | VA | 22031 | Fairfax | US | $5,981,571 |
| Operational | Fairfax | NE 8th Street | Fairfax | WA | 98004 | King | US | $5,000,000 |
| Operational | Bellevue | 13460 Spruce Street | Bellevue | WI | 54821 | Bayfield | US | $0 |
| Operational | Chequamegon Fat Tire | 17585 Golf Parkway | Cable | WI | 53005 | Waukesha | US | $5,000,000 |
| Builder's Risk Completed by 12.15.19 | Brookfield | | Brookfield | | | | | $804,505,950 |

Operational

**Exhibit B to Complaint**

176

Filed in District Co
State of Minnesc
8/19/2020 11:21 /

# Policy Changes Endorsement



**ZURICH**

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Life Time, Inc. | ██████████ | 12/15/2019 | 03 |

| PRODUCER NO. | X | NO CHANGE IN PREMIUM | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|
| ██████████ | ☐ | TO ADJUST PREMIUM AT AUDIT | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the policy as indicated below. The modification(s) may result in a change in the premium as indicated above.

| Type(s) of Change(s) | | | |
|---|---|---|---|
| ☐ | Name of Insured | ☐ | Mailing Address of Insured |
| ☐ | Policy Number | ☐ | Company |
| ☐ | Effective/Expiration Date | ☐ | Legal Status of Insured/Business of Insured |
| ☐ | Payment Plan | ☐ | Premium Determination |
| ☐ | Additional Interested Parties | ☐ | Coverage Forms and Endorsements |
| X | Limits/Exposures | ☐ | Deductibles |
| ☐ | Covered Property/Location Description | ☐ | Classification/Class Codes |
| ☐ | Rates | ☐ | Underlying Insurance |

### CHANGE (S)

The following is added to SECTION V- Special Coverages & Described Causes of Loss

## INTERRUPTION BY COMMUNICABLE DISEASE

The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.

This Policy also covers the reasonable and necessary cost incurred for the cleanup, removal and disposal of the actual not suspected presence of substances(s) causing the spread of such communicable disease and to restore the locations in a manner so as to satisfy such authorized governmental agency.

This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section.  If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

This Coverage will not apply to loss or damage that is payable under any other provision in this Policy.

177

Exhibit C to Complaint

U-ZPP-128-A (09/03)
Page 1 of 1

Filed in District Co...
State of Minneso...
8/19/2020 11:21 /

# Policy Changes Endorsement



## ZURICH

| Insureds Name | | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|---|
| Life Time, Inc. | | ██████████ | 12/15/2019 | 04 |

| PRODUCER NO. | X | NO CHANGE IN PREMIUM | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|
| ██████████ | ☐ | TO ADJUST PREMIUM AT AUDIT | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the policy as indicated below. The modification(s) may result in a change in the premium as indicated above.

| Type(s) of Change(s) | | | | |
|---|---|---|---|---|
| ☐ | Name of Insured | ☐ | Mailing Address of Insured | |
| ☐ | Policy Number | ☐ | Company | |
| ☐ | Effective/Expiration Date | ☐ | Legal Status of Insured/Business of Insured | |
| ☐ | Payment Plan | ☐ | Premium Determination | |
| ☐ | Additional Interested Parties | ☐ | Coverage Forms and Endorsements | |
| X | Limits/Exposures | ☐ | Deductibles | |
| ☐ | Covered Property/Location Description | ☐ | Classification/Class Codes | |
| ☐ | Rates | ☐ | Underlying Insurance | |

## CHANGE (S)

The following is added to SECTION V- Special Coverages & Described Causes of Loss

**Crisis Event Management**

The Company will pay for **Crisis Event Expense** and for **Crisis Event Time Element Loss** (collectively "Crisis Event Coverage") arising out of a **Crisis Event**.

The Period of Liability for **Crisis Event Time Element Loss** is the period of time:
1. commencing with the time an order of civil or military authority prohibits access to the Insured **Location**; and
2. ending the earlier of:
   a. when the order prohibiting access to the Insured **Location** is no longer in effect; or
   b. 30 days.

**Crisis Event** Coverage excludes:
1. Any loss or damage that is payable elsewhere in the Policy
2. Any loss or damage payable to an employee of the Insured by a Worker's Compensation Insurance Policy or Program.
3. A **Crisis Event** initiated by the Insured.

178

EDGE 303-A (06/08)
Page 1 of 3

State of Minneso
8/19/2020 11:21 /

4. Medical or hospital expense except for psychological counseling.
5. Any loss or damage or damage that is payable under any other insurance.

<u>Definitions:</u>

**Crisis Event** is:
A **Violent Crime** or Suicide or Attempted Suicide, at an insured **Location,** that:
1. Results  in an order of civil or military authority that prohibits access to the insured **Location**; or
2. The Insured  reasonably believes threatens or impairs the reputation or goodwill of the Insured.

**Crisis Event Expense** is:
1. The reasonable and necessary expenses incurred by the Insured in the 30 consecutive days after  a **Crisis Event** for:
   a. public relations firm;
   b. a professional communications firm;
   c. a crisis management firm;
   d. printing advertising or mailing materials to manage the reputation or goodwill of  the Insured  concerning a **Crisis Event**;
   e. psychological counseling:
      i. for persons injured in a crisis event;
      ii. for immediate family members of persons injured in,  or who die from injuries suffered in, the **Crisis Event**;
   f. funeral expenses for persons who die from injuries suffered in a **Crisis Event**;
   g. travel expenses:
      i. for persons injured in a **Crisis Event**;
      ii. for immediate family members of persons injured in a **Crisis Event**;
   h. temporary lodging and meals, not including hospital or medical expense,:
      i. for persons injured in a **Crisis Event**;
      ii. for immediate family members of persons injured in a **Crisis Event**;
   j. facilitating the evacuation of customers, patients, guests, employees, and workers from the insured **Location** during or after a **Crisis Event**.
2. If the Insured is in the business of providing public lodging, **Crisis Event Expense** includes the reasonable and necessary expenses incurred by the Insured during the Period of Liability plus 72 hours for:
   a. temporarily relocating guests from the insured **Location** involved in the Crisis Event to alternative lodging facilities;
   b. waiving lodging charges for guests at the insured **Location** involved in the Crisis Event;
   c. lodging expenses for relocated guests at alternative lodging facilities in excess of those that would have been charged at the insured **Location** involved in the Crisis Event.
3. If the Insured is in the business of providing healthcare with on-site overnight accommodation for patients and the Insured has in force with the Company Protection of Patients Coverage for the insured **Location** involved in the **Crisis Event**, **Crisis Event Expense** includes the reasonable and necessary expenses during the Period of Liability plus 72 hours for:
   a. removing patients from the insured **Location** involved in the Crisis Event to another health care facility;
   b. moving patients from a temporary health care facility:
      i. back to  the insured **Location** health care facility; or ii.   to another health care facility.

**Crisis Event Time Element Loss** is the actual loss the Insured sustains:
1. for Gross Earnings during the Period of Liability due to the necessary Suspension of the Insured's business activities at the Insured **Location** because of  an order of civil or military authority that prohibits access to the Insured **Location** as a direct result of a **Crisis Event**; and

Exhibit D to Complaint

EDGE 303-A (06/08)
Page 2 of 3

2.    for **Crisis Event Time Element Extra Expense.**

**Crisis Event Time Element Extra Expense** is the reasonable and necessary expenses incurred by the Insured, during the Period of Liability, over and above the expenses the Insured would have normally incurred had there been no **Crisis Event** , to resume and continue as nearly as practicable the Insured's normal business activities, that otherwise would be necessarily suspended  because of  an order of civil or military authority that prohibits access to the Insured **Location** as a direct result of a **Crisis Event**.  **Crisis Event Time Element Extra Expense** does not include:

1.    any expense to repair or replace direct physical loss to real or personal property;
2.    **Crisis Event Expense.**

**Violent Crime** means:

1.    Murder and non-negligent manslaughter
2.    Criminal Sexual Assault
3.    Aggravated Assault
4.    Robbery
5.    Hostage-taking
6.    Bombing
7.    **Terrorist Activity** if the Insured has **Terrorist Activity** Coverage with the Company that applies to the Insured Location.
8.    Criminal use of a firearm

All other terms, conditions and limitations of this Policy remain unchanged.

**Zurich Edge, Limits for Crisis Event Management Coverage are in addition to any other applicable policy limits, unless otherwise stated.**

The most the Company will pay for this added coverage in excess of the deductible is $1,000,000 per occurrence.

The deductible applying to this coverage is $100,000.

No coverage is provided under this endorsement if provided elsewhere in the policy.

**All other terms, conditions and limitations of this Policy remain unchanged.**

| Signature of Authorized Representative |
| X |

180

EDGE 303-A (06/08)
Page 3 of 3