UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LIFE TIME, INC.; LTF CLUB OPERATIONS COMPANY, INC.; LTF OPERATIONS HOLDINGS, INC.; LTF CLUB MANAGEMENT COMPANY, LLC; and BLOOMINGDALE LIFE TIME FITNESS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-CV-1998 (NEB/HB)<br><br><br><br>ORDER ON MOTION TO REMAND AND MOTION TO DISMISS |

Plaintiffs filed this action against Zurich American Insurance Company ("Zurich") in Minnesota state court, asserting that Zurich breached the terms of an insurance policy, among other claims. (ECF No. 1-1 at 1–21 ("Compl.").) Zurich removed the action to federal court based on diversity jurisdiction, and now moves to dismiss Plaintiff Bloomingdale Life Time Fitness, LLC ("Bloomingdale LT"). (ECF Nos. 1, 6.) Plaintiffs oppose Zurich's motion and move to remand the action to Minnesota state court. (ECF No. 17.) For the reasons that follow, the Court grants the motion to remand and denies as moot the motion to dismiss.

## BACKGROUND

Plaintiffs operate nearly 150 health and fitness centers throughout the United States. (Compl. ¶ 33.) Due to the spread and threat of the COVID-19 pandemic, state and local governments executed orders prohibiting access to all or portions of these fitness centers, causing Plaintiffs to lose over $200 million in interruption losses and damages. (*Id.* ¶ 2.)

Plaintiffs filed a claim for coverage under the Interruption by Communicable Disease ("ICD") endorsement of their EDGE Global insurance policy (the "Policy") issued by Zurich. (*Id.* ¶¶ 4–5.) The Complaint alleges that the ICD endorsement, which provides $1 million in coverage, is per "Insured Location," rather than aggregated for all locations. (*Id.* ¶¶ 5–6.) The parties' current motions focus on whether Bloomingdale LT is a real party in interest and has standing to sue as an insured under the Policy.

### I.   The Parties

The case is in this Court based on diversity jurisdiction, so the citizenship of the parties is central to the dispute. Defendant Zurich is a citizen of Illinois. (Compl. ¶ 11.) Plaintiffs Life Time, Inc. ("Life Time"), LTF Club Operations Company, LLC, and LTF Holdings, Inc., are citizens of Minnesota, and LTF Club Management Company, LLC, is a citizen of Minnesota and Delaware. (*Id.* ¶¶ 8–9.)

Plaintiff Bloomingdale LT owns the Bloomingdale Life Time fitness center in Bloomingdale, Illinois ("Bloomingdale Center"). (Compl. ¶ 10; ECF No. 20 ("Reding

2

Decl.") ¶¶ 10, 12.)[1] Bloomingdale LT is a joint venture with three members: Life Time, Bloomingdale Sport Center Land Company ("BSC Land"), and an affiliate of Central DuPage Health ("CD Health"). (Compl. ¶ 10.) It is the only joint venture to own a Life Time fitness center. (Reding Decl. ¶ 12.) Each member owns one-third of Bloomingdale LT. (Compl. ¶ 10; Reding Decl. ¶ 11.) Based on the citizenship of its members, (Compl. ¶ 10), Bloomingdale LT is a citizen of Illinois and the party that destroys complete diversity.

## II. The Policy

Zurich issued the Policy at issue to Life Time. (ECF No. 1-1 at 22–201 ("Policy").) The Policy defines the "Insured" to include Life Time, any subsidiary of Life Time, and Life Time's "interest in any partnership, joint venture or other legal entity in which [Life Time] has management control or ownership as now constituted or hereafter is acquired." (*Id.* at 36.)[2] The Policy also provides for "additional insureds":

> When any Insured described above is a party to a written contract or agreement on file, that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to

---

[1] "[W]hen a plaintiff challenges jurisdiction on a motion to remand, the district court may consider sworn affidavits submitted by the parties to resolve whether it has federal subject matter jurisdiction." *McGill v. Conwed Corp.*, No. 17-CV-1047 (SRN/HB), 2017 WL 4534827, at *1 (D. Minn. Oct. 10, 2017) (citing *Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016)). Courts have examined material beyond the complaint's allegations to determine if factual support exists in fraudulent joinder cases. *E.g., Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011).

[2] Citations to the Policy refer to ECF page numbers.

3

insured property which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any Time Element Coverage to the legal entity, except as provided under Leasehold Interest Coverage of this policy or as specifically endorsed to the policy.

(*Id.*)

The Policy's ICD endorsement is business interruption coverage that covers actual loss of gross earnings for a period of time while access to an Insured Location is prohibited by an authorized governmental order. (*Id.* at 198.) The Bloomingdale Center—which Bloomingdale LT owns—is an "Insured Location" under the terms of the Policy. (*Id.* at 37, 193.)

### III.     Bloomingdale LT's Operating Agreement

Life Time, BSC Land, and CD Health, as the three members of Bloomingdale LT, are parties to an Operating Agreement,[3] which sets forth the terms and conditions of their membership and the operations of Bloomingdale LT. (Reding Decl., Ex. B.) The Operating Agreement states that Bloomingdale LT "will obtain insurance" and that such insurance will "name the Members and the Partnership as additional insureds." (*Id.* § 6.10.) The Operating Agreement also provides that Life Time will manage Bloomingdale LT, and that as the manager, Life Time is obligated to distribute insurance proceeds to Bloomingdale LT and its members. (Reding Decl. ¶¶ 13–18; *id.*, Ex. B §§ 3.5.3, 6.1.3(a).)

---

[3] Life Time is the successor to Life Time Fitness, Inc., the company that entered into the Operating Agreement. (Reding Decl. ¶ 6.)

### IV. Bloomingdale LT's Management Agreement

Life Time manages the Bloomingdale Center under a separate Management Agreement, to which BSC Land and CD Health are also parties.[4] The Management Agreement provides that "[Life Time], on behalf of [Bloomingdale LT], shall procure and maintain adequate and required insurance to cover the Property and its employees." (Reding Decl., Ex. A § 3(b).) It also states:

> [Bloomingdale LT] shall obtain and keep in force adequate insurance, and name each Member as an Additional Insured as required by the Operating Agreement against physical damage and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Property. [Life Time] shall be covered as an additional insured on all liability insurance maintained with respect to the Property. [Bloomingdale LT] agrees to furnish [Life Time] with certificates evidencing such insurance within five (5) business days of a written request by [Life Time]. At the written direction of [Bloomingdale LT], [Life Time] may purchase said policies or pay the premiums with funds from the Operating Account. The policies shall provide that notice of default or cancellation shall be sent to [Life Time] as well as [Bloomingdale LT].

(*Id.*, § 15.)

### V. Procedural History

Plaintiffs filed their complaint in Minnesota state court, seeking a declaratory judgment and alleging claims for breach of contract and breach of the covenant of good faith and fair dealing against Zurich for refusing to provide Life Time with $1 million in

---

[4] Life Time is the successor to Life Time Fitness, Inc., the company that entered into the Management Agreement. (Reding Decl. ¶ 6.)

5

ICD coverage for each Insured Location. Zurich removed the case to federal court asserting that Bloomingdale LT was not a real party in interest and was fraudulently joined to prevent Zurich from removing the action to federal court. (ECF No. 1 ¶ 26.) Once in federal court, Zurich filed a motion to dismiss Bloomingdale LT under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motion to dismiss and move to remand the action to state court.

## ANALYSIS

### I. Plaintiffs' Motion to Remand

A defendant's removal of a case to federal court is appropriate only if the action could have been filed there originally. *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444 (8th Cir. 2010) (citations omitted). The court must remand the case if it determines that it lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c); *Junk*, 628 F.3d at 444–45. The burden of proving federal jurisdiction always remains "on the party seeking to establish it." *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (citation omitted). In reviewing a motion to remand, the court must resolve all doubts about federal jurisdiction in favor of remanding to state court.[5] *Junk*, 628 F.3d at 446; *Hubbard*, 799 F.3d at 1227.

---

[5] The Court declines Zurich's invitation to extend *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), to this case. In *Dart Cherokee,* the Supreme Court rejected the presumption against removal in Class Action Fairness Act cases, but specifically declined to "decide whether such a presumption is proper in mine-run diversity cases." *Id.* at 89.

Plaintiffs move to remand this case to state court for lack of diversity jurisdiction. Title 28 U.S.C. Section 1332(a)(1) vests district courts with "original jurisdiction" over civil cases where the amount in controversy exceeds $75,000 and the case is between citizens of different states. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires "complete diversity," which means that no defendant holds citizenship in the same state where any plaintiff holds citizenship. *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (citing *Junk*, 628 F.3d at 445). Here, Bloomingdale LT and Zurich are both Illinois citizens. Zurich's argument for jurisdiction in federal court lies under two theories: first, that Bloomingdale LT is not a real party in interest; and second, that Bloomingdale LT was fraudulently or improperly joined to prevent removal to federal court.[6] (ECF No. 1 ¶ 26.)

---

Since *Dart Cherokee*, the Eighth Circuit has continued to hold that "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court." *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015).

[6] The Court uses the term "improper joinder" to replace the term "fraudulent joinder," because it better reflects the nature of the procedure in the absence of allegations of deceptive behavior. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc) (adopting the term " 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder'," noting "there is no substantive difference between the two terms"); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 n.9 (7th Cir. 2009) (noting that "the term 'fraudulent joinder' is a bit of a misnomer—the doctrine requires neither fraud nor joinder"); *Beattie v. Wells Fargo Bank, N.A.*, No. 4:09-CV-00037-JEG, 2009 WL 10703097, at *3 n.4 (S.D. Iowa July 2, 2009) (adopting the term "improper joinder") (citing *Smallwood*, 385 F.3d at 571 n.1).

7

As to the first argument, where a nondiverse plaintiff is not a "real party in interest," and is merely a nominal party, the court is to disregard its presence in determining jurisdiction. *Cascades Dev. of Minn.*, 675 F.3d at 1098 (citing *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977)). A "real party in interest" is a person entitled to enforce a right asserted under governing substantive law; in a diversity case, the governing substantive law is ordinarily state law.[7] *Id.* "The fact that a plaintiff's claim may lack legal or factual merit does not necessarily mean that he lacks standing to assert the claim as a real party in interest." *Iowa Pub. Serv.*, 556 F.2d at 405 (holding plaintiff satisfied the "real party in interest" requirement where all plaintiffs were "beneficially interested" in the contract at issue and would suffer if defendants were "able to take the dispute about price to arbitration and obtain a price increase").

As to the second argument, joinder is improper where "there exists no reasonable basis in fact and law supporting a claim" against the defendant. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (citation omitted).[8] But there is no improper joinder if the

---

[7] The parties do not dispute that Minnesota law governs Bloomingdale LT's claims against Zurich. (*See, e.g.*, ECF No. 19 at 21–22 (relying on Minnesota law); ECF No. 27 at 13–14 (same).)

[8] Although parties more commonly argue improper joinder of a defendant, at least one other district court in this Circuit has considered whether a nondiverse plaintiff is both a real party in interest and improperly joined. *See Foslip Pharms., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 904 (N.D. Iowa 2000) (applying "real party in interest" test and fraudulent joinder test of "no possibility that the plaintiff would be able to establish a cause of action against the defendant in state court" to nondiverse plaintiff).

8

claim is "colorable," *i.e.*, "if the state law *might* impose liability on the resident defendant under the facts alleged." *Id.* (emphasis in original); *see Junk*, 628 F.3d at 447 (concluding that an "arguably reasonable basis for predicting that the state law might impose liability based upon the facts involved . . . is all that is required to defeat a fraudulent joinder challenge") (cleaned up; citations omitted). For the reasons below, the Court finds that Bloomingdale is a real party in interest and was not improperly joined, and thus, remand is necessary.

### A. *Coverage Under the Policy*

In determining whether Plaintiffs raise a colorable claim, this Court must analyze the claim's merits—here, analysis of (1) whether Bloomingdale LT is insured under the Policy, and (2) even if it is insured, whether ICD coverage applies based on the language of the Policy.

### 1. *Additional Insured Provision.*

Under Minnesota law, a court is to interpret an insurance policy consistent with general principles of contract construction, giving effect to the intent of the parties. *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)). Plaintiffs allege that Bloomingdale LT is an "additional insured" under the terms of the Policy, and that Bloomingdale LT has an undivided interest in the Bloomingdale Center, which is listed an Insured Location under the Policy. (Compl. ¶¶ 18, 21.) The Policy covers additional insureds when "[1] any

9

Insured . . . is a party to a written contract or agreement on file, that [2] requires a legal entity to be identified as an additional insured . . . ." (Policy at 36.) Zurich does not dispute that Life Time is a party to the Management Agreement, which is a written "agreement on file." Zurich also acknowledges that the Policy insures Life Time's one-third interest in Bloomingdale LT. (ECF No. 27 at 19; *see* Policy at 36.) But, Zurich maintains, that coverage does not extend to Bloomingdale LT because neither the Management Agreement nor the Operating Agreement require *Life Time* to acquire insurance for Bloomingdale LT.

Under the Operating Agreement, Bloomingdale LT is required to obtain insurance and name its members, including Life Time, as additional insureds. (Reding Decl., Ex. B § 6.10.) The Management Agreement similarly states that Bloomingdale LT "shall obtain and keep in force adequate insurance, and name each Member as an Additional Insured as required by the Operating Agreement against physical damage and against liability for loss, damage, or injury to property or persons . . . ." (*Id.*, Ex. A § 15.) Life Time, as manager, "shall be covered as an additional insured on all liability insurance maintained with respect to the Property." (*Id.*) According to Zurich, both agreements provide that Bloomingdale LT (not Life Time) was to procure insurance and add its members as additional insureds to those policies "in its own name," rather than requiring Bloomingdale LT to be added as an additional insured to Life Time's Policy (which is what transpired here). (ECF No. 27 at 15–16.)

10

Neither agreement specifically states that Bloomingdale LT must buy the insurance in its own name. Section 3(b) of the Management Agreement states that Life Time, on behalf of Bloomingdale LT, "shall procure and maintain adequate and required insurance" to cover the Bloomingdale Center. (Reding Decl., Ex. A at § 3(b).) Section 15 provides that, at the written direction of Bloomingdale LT, Life Time "may purchase said policies or pay the premiums with funds from the Operating Account" to cover the Bloomingdale Center. (*Id.*, Ex. A § 15.) Both provisions seem to indicate that Life Time, as manager, was to purchase the insurance on behalf of Bloomingdale LT. *See Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 181 n.8 (Minn. 2004) ("[C]ontract construction compels [courts] to determine that the more specific language takes precedence over the more general language."). Resolving all doubts about federal jurisdiction in favor of remand, the Court concludes that Plaintiffs offer a reasonable basis for predicting that a Minnesota court would find Bloomingdale LT to be an additional insured under the Policy.

*2. ICD Coverage.*

Zurich contends that even if the Management Agreement required Life Time to add Bloomingdale LT as an additional insured to the Policy, the agreement only requires insurance for "physical damage," and not business interruption insurance, including ICD coverage. It also maintains that the ICD coverage does not apply to additional insureds under the Policy because it was not "specifically endorsed."

11

*"Physical damage."* The Management Agreement requires Life Time to obtain property insurance "against physical damage;" it does not specifically address business interruption insurance. (Reding Decl., Ex. A § 15.) According to Zurich, because the ICD coverage does not cover physical damage to an Insured Location, ICD Coverage is not the type of insurance "against physical damage" the Management Agreement requires. (ECF No. 27 at 18.) Plaintiffs respond that the Management Agreement does not purport to specify the full scope of the coverage, and that nothing precluded the procurement of insurance for the Bloomingdale Center that was broader than set forth in that agreement. (ECF No. 31 at 9–11.) They claim that business interruption coverage fits within Management Agreement section 3(b), which states that Life Time is to procure and purchase "insurance to cover the Property" on behalf of Bloomingdale LT, and section 15, which states that Bloomingdale LT "shall obtain and keep in force adequate insurance . . . against physical damage." (Reding Decl., Ex. A §§ 3(b), 15.)

Plaintiffs also assert that the Policy, rather than the Management Agreement, governs the scope of insurance coverage. (ECF No. 31 at 10.) The Policy applies to additional insureds where the underlying agreement "requires a legal entity to be identified as an additional insured under this Policy," *"for physical damage to insured property . . . and does not provide any Time Element Coverage to the legal entity, except . . . as specifically endorsed* to the policy." (Policy at 36 (emphasis added).) The Policy's ICD endorsement covers actual gross earnings loss sustained by the insured for a period of

12

time while access to an "Insured Location" is prohibited by governmental order. (Policy at 198.) Plaintiffs maintain that this policy language provides coverage to Bloomingdale LT for physical damage to insured property because the Bloomingdale Center is an Insured Location, and Bloomingdale LT alleges "physical damage to insured property" including "expenses to clean and remediate the Insured Locations." (Compl. ¶ 38; *see* Policy at 36, 193; Reding Decl. ¶¶ 14, 16, 19, 27–34 (attesting to a Bloomingdale Center member testing positive for COVID-19).)

Minnesota courts have held that "direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way." *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (citation omitted) (holding court did not err in finding "an impairment of function and value sufficient to support a finding of physical damage" where insured was unable to sell or use its products because of legal regulations); *see Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, No. 97-CV-2185 (JRT/FLN), 2002 WL 31185884, at *3 (D. Minn. Sept. 27, 2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004) ("Minnesota courts have held that direct physical loss to property under an all-risk insurance policy can exist in the absence of structural damage to the insured property. It is sufficient to show that the insured property is injured in some way.") (collecting cases). But, to the Court's knowledge, Minnesota state courts have not yet addressed the issue of whether allegations regarding COVID-19 adequately allege

13

physical damage for purposes of insurance coverage.[9] Where the sufficiency of the complaint against a nondiverse defendant is doubtful, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." *Filla*, 336 F.3d at 811 (quoting *Iowa Pub. Serv.*, 556 F.2d at 406 n.6). The Court will follow this better practice and leave this question for Minnesota courts to decide.

*"Specifically endorsed."* Plaintiffs also assert that the additional insured provision provides coverage to Bloomingdale LT because ICD coverage is "specifically endorsed" to the Policy. (ECF No. 31 at 10–11 (citing Policy at 36).) The Policy states that it "does not provide any Time Element Coverage to [additional insureds], *except* [1] as provided under Leasehold Interest Coverage of this policy or [2] *as specifically endorsed to the policy*." (Policy at 36 (emphasis added).) According to Plaintiffs, the ICD endorsement is Time

---

[9] Other courts have come to different conclusions as to whether COVID-19 caused physical loss or damage. *E.g., Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 802 (W.D. Mo. 2020) (finding plaintiffs "plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable," and thus adequately alleged direct physical loss under the policies at issue); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, *4 n.2 (S.D. Cal. Sept. 11, 2020) (distinguishing *Studio 417,* where plaintiffs "expressly allege that COVID-19 did not cause physical loss of or damage to their properties, alleging and arguing only that [] the government orders themselves constitute direct physical loss or damage to the properties").

14

Element Coverage[10] specifically endorsed to the Policy, (Compl. ¶¶ 44, 51), and includes earnings losses arising from the closure of Plaintiffs' Insured Locations (*i.e.*, the Bloomingdale Center) and expenses to clean and remediate those locations. (*Id.* ¶ 38; *see* Reding Decl. ¶¶ 27–34.) Zurich disagrees with Plaintiffs' interpretation, arguing that the phrase "except as . . . specifically endorsed to the policy," requires the legal entity, rather than the coverage, to be specifically endorsed. And because the ICD endorsement does not explicitly cover additional insureds, it only covers insureds. Having considered the parties' differing interpretation of this provision, the Court finds that Plaintiffs' interpretation is at least colorable.

Resolving all doubts in favor of remand, the Court finds that Bloomingdale LT raises a colorable claim against Zurich such that Minnesota law "*might* impose liability" on Zurich under the facts alleged, and thus joinder was not improper.[11] *Filla*, 336 F.3d at 810 (emphasis in original). The Court also finds that Bloomingdale LT is a real party in interest in this action. *See Iowa Pub. Serv.*, 556 F.2d at 405 (noting that a plaintiff's claim may lack legal or factual merit, but that "does not necessarily mean that he lacks standing

---

[10] The Policy does not define "Time Element Coverage." For the purpose of these motions, the parties and the Court assume that IDC coverage is Time Element Coverage, but Plaintiffs question this assumption. (ECF No. 31 at 12 & n.8.)

[11] Because the Court finds that Bloomingdale LT was not improperly joined under the additional insured theory, it need not address Plaintiffs' argument that Bloomingdale LT is a third-party beneficiary under the Policy. In addition, the Court expresses no opinion as to whether Bloomingdale LT's claims would survive a motion to dismiss or motion for summary judgment.

to assert the claim as a real party in interest"). Because Bloomingdale LT's presence destroys complete diversity, the Court lacks subject-matter jurisdiction over this case and must remand the case to Minnesota state court pursuant to 28 U.S.C. Section 1447(c).

### B. Request for Attorneys' Fees and Costs

Plaintiffs request attorneys' fees and costs in connection with bringing the motion to remand. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Court finds that Zurich had an objectively reasonable basis for removing the action to federal court. Therefore, the Court declines Plaintiffs' request for attorneys' fees and costs. *See generally Tenenbaum v. Bialick*, No. 19-CV-0212 (WMW/BRT), 2019 WL 3822311, at *3 & n.7 (D. Minn. Aug. 15, 2019) (granting motion to remand where defendant failed to show party had been fraudulently joined, and denying plaintiffs' request for attorneys' fees and costs).

## II. Zurich's Motion to Dismiss

Because the Court grants Plaintiffs' motion to remand, it does not address the merits of Zurich's motion to dismiss and denies the motion as moot. *See All. Energy Servs., LLC v. Kinder Morgan Cochin LLC*, 80 F. Supp. 3d 963, 973 (D. Minn. 2015) (declining to address motion to dismiss after granting motion to remand) (citing *Vincent v. Dakota*,

16

*Minn. & E. R.R. Corp.*, 200 F.3d 580, 582 (8th Cir. 2000)); *Vincent*, 200 F.3d at 582 (explaining that "because the district court remanded for a lack of subject matter jurisdiction, it lacked jurisdiction to make any substantive rulings, and, thus, 'no rulings of the federal court have any preclusive effect on the substantive matters before the state court'") (citing *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 624 (8th Cir. 1997)).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion to Remand (ECF No. 17) is GRANTED; and

2. Defendant's 12(b)(1) Motion to Dismiss the Claims of Plaintiff Bloomingdale Life Time Fitness, LLC (ECF No. 6) is DENIED AS MOOT.

Dated: February 25, 2021                                BY THE COURT:

                                                        s/Nancy E. Brasel
                                                        Nancy E. Brasel
                                                        United States District Judge